## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA MCCOWAN, et al.,**<br>**Plaintiffs,**<br><br>*v.*<br><br><br>**CITY OF PHILADELPHIA, et al.,**<br>**Defendants.** | **Civil Action**<br><br><br><br><br>**No. 2:19-cv-03326-KSM** |

### ANSWERS AND OBJECTIONS TO REQUESTS FOR ADMISSIONS DIRECTED TO RICHARD ROSS, JR. –FIRST SET

1. Admit in October 2008 Ms. McCowan was transferred to work in the Police Board of Inquiry (PBI).

   **Answer: Admitted.**

2. Admit in October 2008 your rank was Deputy Commissioner of the Philadelphia Police Department.

   **Answer: Admitted.**

3. Admit in October 2008 Police Officer (now Sergeant) Derrick Lyles worked as your personal driver and aide.

   **Answer: Admitted.**

4. Admit in 2009 you directed Officer Lyles to call Ms. McCowan for the purpose of introducing you to her.

   **Answer: Objection. This alleged fact, is not proportional to the needs of the case as these alleged facts will not resolve the factual and legal issues pled against Mr. Ross. Fed. R. Civ. P. 26(b)(1), which claim that he discriminated against McCowan based on race under 42 U.S.C. Section 1981 (Counts VIII, IX, X, XI, XII, 42 U.S.C. Section 1983 Equal Protection (Counts XII); 42 U.S.C. Section 1983 (First Amendment); Pennsylvania Whistleblower Statute (Count XIV); Intentional Infliction of Emotional Distress (Count XV).  The actual events leading up to the undisputed consensual relationship Ms. McCowan and Mr. Ross  will not tend to prove or disprove that Mr. Ross discriminated against Ms. McCowan based on race, whether the claim is framed under Section 1981 or Section 1983.  Moreover, the alleged events leading up to the relationship will not tend to prove or disprove that Mr. Ross retaliated against her, giving rise to a cause of action under the First**

**Amendment or the Pennsylvania Whistleblower Statute.  And, any facts which predate the complaint by two years fall outside of the applicable statute of limitations, especially for the state law claim of Intentional Infliction of Emotion Distress. (Count XV). Without waiving said objection, Mr. Ross has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

5. Admit after Officer Lyles introduced you to Ms. McCowan over the telephone, you told Ms. McCowan you were concerned that racial discrimination was affecting PBI board decisions.

   **Answer: See objection and answer to #4.**

6. Admit you asked Ms. McCowan if she would be your "eyes and ears in the office" and directed her to notify you personally if she noticed racial discrimination in the PBI office.

   **Answer: See objection and answer to #4.**

7. Admit in 2009 you gave Ms. McCowan your office telephone number.

   **Answer: Denied.**

8. Admit in 2009 you gave Ms. McCowan your BlackBerry phone number.

   **Answer: Admitted as to providing the phone number.  As to timing, Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny the time period.**

9. Admit in October 2009 you started a romantic relationship with Ms. McCowan.

   **Answer: Objection. This alleged fact, is not proportional to the needs of the case as these alleged facts will not resolve the factual and legal issues pled against Mr. Ross. Fed. R. Civ. P. 26(b)(1), which claim that he discriminated against McCowan based on race under 42 U.S.C. Section 1981 (Counts VIII, IX, X, XI, XII, 42 U.S.C. Section 1983 Equal Protection (Counts XII); 42 U.S.C. Section 1983 (First Amendment); Pennsylvania Whistleblower Statute (Count XIV); Intentional Infliction of Emotional Distress (Count XV).  Without waiving said objection, admitted as to only being in a consensual romantic relationship. As to timing, Mr. Ross, has no recollection of this purported fact (exact timing) and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny the time period.**

10. Admit in 2009 you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116 during work hours.

    **Answer: Objection. This alleged fact, is not proportional to the needs of the case as these alleged facts will not resolve the factual and legal issues pled against Mr.**

**Ross. Fed. R. Civ. P. 26(b)(1), which claim that he discriminated against McCowan based on race under 42 U.S.C. Section 1981 (Counts VIII, IX, X, XI, XII, 42 U.S.C. Section 1983 Equal Protection (Counts XII); 42 U.S.C. Section 1983 (First Amendment); Pennsylvania Whistleblower Statute (Count XIV); Intentional Infliction of Emotional Distress (Count XV).  The alleged events during the time period of the undisputed consensual relationship (2009 to 2011) will not tend to prove or disprove that Mr. Ross discriminated against Ms. McCowan based on gender or race.  Likewise, the alleged events during the relationship will not tend to prove or disprove that Mr. Ross retaliated against her, giving rise to a cause of action under the First Amendment or the Pennsylvania Whistleblower Statute.  And, any facts which predate the complaint by two years fall outside of the applicable statute of limitations.**

11. Admit whenever you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116, you always met at the same hotel room on the ground level.

    **Answer: See response to #10.**

12. Admit whenever you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116, you instructed her not to enter the hotel using the main door, but rather to use a side entrance.

    **Answer: See response to #10.**

13. Admit whenever you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116 you did not want anyone to see you meeting her there.

    **Answer: See response to #10.**

14. Admit whenever you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116, you drove an unmarked car.

    **Answer: See response to #10.**

15. Admit whenever you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116, you instructed her not to open the window curtains in your hotel room.

    **Answer: See response to #10.**

16. Admit you told Ms. McCowan you were concerned about the two of you being followed or watched by Internal Affairs.

    **Answer: See response to #10.**

17. Admit the attached document marked McCOWAN 0351 is a photograph of the pool located directly outside the room at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116 where you would meet Ms. McCowan.

   **Answer: See response to #10.**

18. Admit whenever you met Ms. McCowan at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116, she would bring you lunch from McDonald's—a 10-piece Chicken McNuggets meal with sweet and sour sauce and a diet coke.

   **Answer: See response to #10**.

19. Admit the room at Ramada Inn (now Motel 6) located at 11580 Roosevelt Boulevard, Philadelphia, PA 19116 where you met Ms. McCowan contained one king size bed and a small table and chair set that the two of you would use to eat your lunch.

   **Answer: See response to #10.**

20. Admit between 2010 and 2011 you met Ms. McCowan at her home in Overbook Park.

   **Answer: See response to #10.**

21. Admit the attached document marked McCOWAN 0350 is a photograph of the marked Dodge Charger (Car 2) that you drove whenever you met Ms. McCowan at her home in Overbrook Park.

   **Answer: See response to #10.**

22. Admit whenever you met Ms. McCowan at her home in Overbook Park you parked your marked Dodge Charger (Car 2) on 76th Street.

   **Answer: See response to #10.**

23. Admit whenever you met Ms. McCowan at her home in Overbook Park you would exit through the back door and the driveway.

   **Answer: See response to #10.**

24. Admit whenever you met Ms. McCowan at her home in Overbook Park you did not want anyone to see you meeting her there.

   **Answer: See response to #10.**

25. Admit between 2010 and 2011 you spoke with Ms. McCowan on the phone almost every morning until 8:10 a.m. when you had to be on the morning conference call.

    **Answer: See response to #10.**

26. Admit between 2009 and 2011 you would take Ms. McCowan to lunch at the Chops steakhouse formerly located at 700 Walnut Street, Philadelphia, PA 19106.

    **Answer: See response to #10.**

27. Admit whenever you met Ms. McCowan at the Chops steakhouse formerly located at 700 Walnut Street, Philadelphia, PA 19106 she would walk to meet you there for lunch.

    **Answer: See response to #10.**

28. Admit whenever you met Ms. McCowan at the Chops steakhouse formerly located at 700 Walnut Street, Philadelphia, PA 19106, after lunch you would drive her part of the way back to police headquarters in your marked Dodge Charger (Car 2) and she would get out at 7th and Market Streets, and walk the rest of the way back to Police Headquarters.

    **Answer: See response to #10.**

29. Admit whenever you met Ms. McCowan at the Chops steakhouse formerly located at 700 Walnut Street, Philadelphia, PA 19106 you did not want anyone to see her getting out of your marked Dodge Charger (Car 2).

    **Answer: See response to #10.**

30. Admit between 2009 and 2011 you would also take Ms. McCowan to lunch at McCormick & Schmick's located at 1 South Broad Street, Philadelphia, PA 19107.

    **Answer: See response to #10.**

31. Admit whenever you met Ms. McCowan at McCormick & Schmick's located at 1 South Broad Street, Philadelphia, PA 19107 you would sit on the second floor in a booth that could be enclosed by curtains and was overlooking the first floor of the restaurant.

    **Answer: See response to #10.**

32. Admit whenever you met Ms. McCowan at McCormick & Schmick's located at 1 South Broad Street, Philadelphia, PA 19107 you did not want anyone to see you meeting her there.

    **Answer: See response to #10.**

33. Admit on July 7, 2010 you were with Ms. McCowan at her home in Overbrook Park when you were notified of the fatal "duck boat" crash in the water near Penn's Landing and you left from her house to go to the scene.

   **Answer: See response to #10.**

34. Admit between 2009 and 2011 you would ask Ms. McCowan to meet you in the stairwell of Police Headquarters to see what she wore to work that day and give her a kiss.

   **Answer: See response to #10.**

35. Admit between 2009 and 2011 you would also ask Ms. McCowan to "accidentally" run into you in the hallway so you could see her.

   **Answer: See response to #10.**

36. Admit you purchased Ms. McCowan gifts.

   **Answer: See response to #10.**

37. Admit you purchased Ms. McCowan a watch dressed in Swarovski crystals.

   **Answer: See response to #10.**

38. Admit you purchased Ms. McCowan diamond bracelets.

   **Answer: See response to #10.**

39. Admit you purchased Ms. McCowan a necklace.

   **Answer: See response to #10.**

40. Admit you paid Ms. McCowan's PECO gas bill.

   **Answer: See response to #10.**

41. Admit before the Police Department's command staff switched to Samsung phones, they (including you) had BlackBerry phones.

   **Answer: See objection as set forth in #10. Without waiving objection, admitted.**

42. Admit when you had a BlackBerry phone you instructed Ms. McCowan to also purchase a BlackBerry phone so you could communicate via BlackBerry PIN-to-PIN messaging.

   **Answer: See response to #10.**

43. Admit you asked Ms. McCowan to communicate with you via BlackBerry PIN-to-PIN messaging because you wanted your relationship to remain secret.

   **Answer: See response to #10.**

44. Admit you communicated with Ms. McCowan via BlackBerry PIN-to-PIN messaging for a period between 2009 and 2011.

   **Answer: See response to #10.**

45. Admit between 2009 and 2011 you obtained a personal phone number and instructed Ms. McCowan to use that number to contact you.

   **Answer: See response to #10.**

46. Admit in 2011 Ms. McCowan stopped calling you every morning.

   **Answer: See response to #10.**

47. Admit in 2011 when Ms. McCowan stopped calling you every morning you asked what was "wrong."

   **Answer: See response to #10.**

48. Admit in 2011 when Ms. McCowan stopped calling you every morning you asked if there was "someone else."

   **Answer: See response to #10.**

49. Admit that in 2011 Ms. McCowan said she wanted to find someone she "could settle down and grow with."

   **Answer: See response to #10.**

50. Admit in 2011 Ms. McCowan ended the romantic relationship between you.

   **Answer: See response to #10.  Without waiving said objection, it is admitted that the relationship ended.  As to timing, Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny the exact date in 2011. Mr. Ross believes that the relationship ended in 2011.**

51. Admit when Ms. McCowan ended the romantic relationship in 2011 you became agitated and repeatedly stated, "I have more to lose than you do."

   **Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

52. Admit when Ms. McCowan ended the romantic relationship in 2011 you told Ms. McCowan, "I don't want anything about us getting out."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

53. Admit when Ms. McCowan ended the romantic relationship in 2011 you threatened that if anyone found out about your relationship with Ms. McCowan you would "deny it."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

54. Admit after Ms. McCowan ended the relationship in 2011 you did not speak to her for a period.

**Answer: Mr. Ross, has no recollection of this purported fact because the request is vague and does not provide a specific time period, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

55. Admit after Ms. McCowan ended the relationship in 2011 you would look at her with disgust when you walked past her in the workplace.

**Answer: Denied.**

56. Admit in late 2011 you became aware that Ms. McCowan had started dating a single man who worked in the Homicide Unit.

**Answer: Admitted in part.  Denied in part.  It is a dismissed that Mr. Ross became aware of McCowan's dating a person who was assigned to the Homicide Unit.  As to time period, Mr. Ross has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission**.

57. Admit in late 2011 after you became aware that Ms. McCowan had started dating a single man who worked in the Homicide Unit you referred to the man as Ms. McCowan's "little friend from Homicide."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission**.

58. Admit in late 2011 after you became aware that Ms. McCowan had started dating a single man who worked in the Homicide Unit you stated, "I'm going down to Homicide to meet with Captain Clark and to check out your new boo."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

59. Admit in late 2011 after you became aware that Ms. McCowan had started dating a single man who worked in the Homicide Unit, she told you she was fearful you were going to ruin her relationship because of jealousy.

**Answer: Denied.**

60. Admit in 2013 Ms. McCowan informed you that she had recently started dating her now-husband and asked you "not to mess with him because he is a really good guy."

**Answer: Denied.**

61. Admit in 2013 Ms. McCowan said she was afraid you would ruin her relationship with her now-husband because of how you acted when she had the relationship with the man who worked in the Homicide Unit.

**Answer: Denied.**

62. Admit in 2013 during the conversation about Ms. McCowan's now-husband you said to Ms. McCowan, "I have more to lose than you do."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

63. Admit in 2013 during the conversation about Ms. McCowan's now-husband you also said to Ms. McCowan, "I don't want anyone to find out about us."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

64. Admit in 2013 during the conversation about Ms. McCowan's now-husband you again said to Ms. McCowan that if anyone found out about your romantic relationship with her you would "deny it."

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

65. Admit in 2013 during the conversation about Ms. McCowan's now-husband you told Ms. McCowan not to tell him about your romantic relationship with her.

**Answer: Mr. Ross, has no recollection of this purported fact, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

9

66. Admit during your employment with the Philadelphia Police Department you maintained a cell phone associated with the telephone number 215-287-3511.

**Answer: Admitted.**

67. Admit during your employment with the Philadelphia Police Department you maintained a cell phone associated with the telephone number 215-964-0515.

**Answer: Admitted.**

68. Admit during your employment with the Philadelphia Police Department you maintained the email address rjr219@hotmail.com.

**Answer: Admitted.**

69. Admit you served as Commissioner of the Philadelphia Police Department from January 2016 to August 2019.

**Answer: Admitted.**

70. Admit from 2009 to 2019 Ms. McCowan was your subordinate.

**Answer:  Denied as Ms. McCowan was not in his direct chain of command.  By way of further denial, as Commissioner, all officers are below his rank and thus this question, as worded is confusing and misleading.**

71. Admit in February 2019 Ms. McCowan contacted you on your personal cell phone associated with the telephone number 215-287-3511 and informed you that she had been experiencing sexual harassment and a hostile work environment in the Delaware Valley Intelligence Center.

**Answer: Admitted.**

72. Admit that in February 2019 Ms. McCowan also informed you that she had been punished for reporting sexual harassment and a hostile work environment in the Delaware Valley Intelligence Center.

**Answer: Denied.**

73. Admit that after Ms. McCowan informed you that she had been experiencing sexual harassment in the Delaware Valley Intelligence Center you suggested, "So why don't you just order his dumb ass to go sit down and get out of your face 'Officer.'"

**Answer: Admitted in part, denied in part.  It is admitted that Ms. McCowan informed me that she had been experiencing sexual harassment in the Delaware Valley Intelligence Center.  As to remaining statements, Mr. Ross, has no recollection of the remaining  purported facts as set forth, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

74.    Admit that after Ms. McCowan informed you that she had been experiencing sexual harassment in the Delaware Valley Intelligence Center you said, "I know you don't like for me to be straight with you, largely because 'two rams always seems to butt heads' . . . but I want to offer you some sage advice as a friend," and when Ms. McCowan asked you to share your advice you responded, "No, not the time based on your frame of mind."

**Answer: Admitted in part, denied in part.  It is admitted that Ms. McCowan informed me that she had been experiencing sexual harassment in the Delaware Valley Intelligence Center.  As to remaining statements, Mr. Ross, has no recollection of the remaining  purported facts as set forth, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

75.    Admit that after Ms. McCowan informed you that she had been experiencing sexual harassment in the Delaware Valley Intelligence Center you said you were going to "school" Ms. McCowan on sexual harassment.

**Answer: Admitted in part, denied in part.  It is admitted that Ms. McCowan informed me that she had been experiencing sexual harassment in the Delaware Valley Intelligence Center.  As to remaining statements, Mr. Ross, has no recollection of this purported fact as set forth, and after reasonable inquiry, is unaware of, and not in possession of any information, that would permit him to admit or deny this request for admission.**

76.    Admit that on Friday, May 10, 2019 you attended a meeting with Deputy Coulter and 1st Deputy Patterson where you decided to disapprove Ms. McCowan's Hardship Memo dated May 6, 2019.

**Answer: Denied.**

77.    Admit that you stated your reason for disapproving Ms. McCowan's Hardship Memo dated May 6, 2019 was because you thought she was "making it up."

**Answer: Denied.**

78.    Admit you retaliated against Ms. McCowan for ending the two-year romantic relationship you had with her.

**Answer: Denied.**

Date: May 26, 2020

/s/ Jeffrey M. Scott

_____

Jeffrey M. Kolansky
Lloyd Freeman
Jeffrey M. Scott
Archer & Greiner, P.C.
1717 Arch Street, Suite 3500
Philadelphia, PA 19107
Counsel for Richard Ross, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2020, I served Answers and Objections to Requests for Admissions Directed to Richard Ross, Jr. –first set via email and first class mail, postage prepaid to counsel of record.

Daniel R. Unterburger
Erica Kane
Assistant City Solicitor
Labor & Employment Unit
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA  19102

Amy C. Lachowicz
Daniel J. McGravey
Lauri A. Kavulich
Clark Hill PLC
2001 Market Street
Two Commerce Square
Suite 2620
Philadelphia, PA 19103

Ian M. Bryson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
ian@dereksmithlaw.com

/s/ Jeffrey M. Scott
_____

Jeffrey M. Kolansky
Lloyd Freeman
Jeffrey M. Scott
Archer & Greiner, P.C.
1717 Arch Street, Suite 3500
Philadelphia, PA 19107
Counsel for Richard Ross, Jr.

218569210v1

13