IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA MCCOWAN, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **CITY OF PHILADELPHIA, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 2:19-cv-03326-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                                                                         **July 9, 2020**

Plaintiffs Audra McCowan and Jennifer Allen bring multiple counts against the City of Philadelphia and eleven individually-named defendants. In their Second Amended Complaint, Plaintiffs jointly allege against all Defendants claims of discrimination, retaliation, and hostile work environment arising under Title VII, Section 1981, Section 1983, the Pennsylvania Human Relations Act, the Philadelphia Fair Practices Ordinance, the Family and Medical Leave Act, and Pennsylvania's Whistleblower law. (Doc. No. 49.) Plaintiffs also jointly allege claims of intentional infliction of emotional distress against all Defendants and assault and battery against Defendant Curtis Younger. (*Id.*) In addition, Plaintiff Allen alleges violations of the Fair Labor Standards Act's ("FLSA") protections for nursing mothers and FLSA retaliation against all Defendants. (*Id.*)

Plaintiffs presently seek to depose Mayor James Kenney, a non-party. (Doc. No. 65, p. 6.) Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Michael McCarrick, Timothy McHugh, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons (collectively "Defendants") filed a Motion for a Protective Order Precluding the

Deposition of Mayor Kenney. (Doc. No. 57.) Plaintiffs then filed their opposition. (Doc. No. 65.) For the reasons discussed below, the Court will grant Defendants' motion, without prejudice.

I.

Defendants argue that the Court should preclude the deposition of Mayor Kenney because (1) Mayor Kenney was not involved in any decisions allegedly impacting Plaintiffs; (2) Mayor Kenney has no personal knowledge of any material fact relevant to adjudicating Plaintiffs' sexual harassment and discrimination claims; and (3) Mayor Kenney is a high ranking government official entitled to limited immunity from being deposed concerning matters about which he has no unique personal knowledge. (Doc. No. 57, p. 3.)

Plaintiffs oppose Defendants' motion, claiming that Mayor Kenney "has unique personal knowledge of the [Philadelphia] Police Department's policy or custom of discriminating against black female cops." (Doc. No. 65, p. 6.) Plaintiffs allege that Mayor Kenney's announcement regarding the City Controller Office's 2018 audit of the City's sexual misconduct policies, procedures and payouts ("2018 Audit"), and the Mayor's announcement of the resignation of Defendant Richard Ross, Jr. as Police Commissioner following the filing of this lawsuit, are sufficient evidence that Mayor Kenney has "unique personal knowledge" justifying his deposition. (*Id.* at pp. 3–11.)

II.

The court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden of showing that "good cause" exists. *Tomaszewski v. City of Phila.*, No. 17-4675, 2018 WL 6590826, at *3 (E.D. Pa. Dec. 14, 2018).

When a party seeks to depose a "high ranking government official," courts often find that good cause exists to preclude the deposition. *Id.* (internal citations omitted). "High ranking government officials are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge." *Id.* (internal citations and quotations omitted). "The logic behind the limited immunity . . . is that high ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* (internal citations and quotations omitted). A mayor is considered a "high ranking government official" who receives this limited immunity. *Id.* ("[D]istrict courts have routinely found that a mayor is sufficiently high ranking to trigger the limited immunity from a deposition about matters on which they lack unique personal knowledge."); *see also Brennan v. City of Phila.*, 388 F. Supp. 3d 516, 520 (E.D. Pa. 2019).

Thus, to overcome this "limited immunity," the party requesting the deposition of a mayor "must show that the proposed deposition is: (1) likely to lead to the discovery of admissible evidence; (2) is essential to that party's case; and (3) that this evidence is not available through any alternative source or less burdensome means." *Tomaszewski*, 2018 WL 6590826, at *3; *see also Hankins v. City of Phila.*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996). We address each requirement in turn.

III.

"The first requirement — that [the mayor's] testimony is likely to lead to the discovery of admissible evidence — requires something greater than the normal Rule 26 relevancy standard." *Robinson v. City of Phila.,* No. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006)

3

(internal citations and quotations omitted). Plaintiffs must make an "actual showing" that Mayor Kenney "possesses personal knowledge relevant to the litigation." *Id.*

To support their assertion that Mayor Kenney has unique personal knowledge of "the City's official policy or custom of discriminating against black female cops, including Plaintiffs,"[1] Plaintiffs rely on the Mayor's announcement of Defendant Ross's resignation as Police Commissioner. (Doc. No. 65, pp. 9, 10.) But the Mayor's remarks do not indicate that he had any unique personal knowledge. Indeed, Plaintiffs themselves suggest that they cannot meet their burden, as Plaintiffs state "Mayor Kenney *may have* unique direct personal knowledge of the Police Department's policy or custom of discriminating against black female cops, including Plaintiffs." (*Id.* at p. 7 (emphasis added).) Such speculation does not rise to the level of an *actual* showing of the Mayor's unique personal knowledge.[2] *Robinson*, 2006 WL 1147250, at *2. Under these circumstances, the Court cannot find that Plaintiffs met the requirement of showing that the Mayor actually has unique personal knowledge.

As for the second requirement, Plaintiffs must "show that the proposed deposition is essential to [Plaintiffs'] case." *Tomaszewski*, 2018 WL 6590826, at *4. Here, Plaintiffs contend that the Mayor's testimony is essential to show "the City and the [Philadelphia Police Department's] failure to take the necessary actions to address the underlying cultural issues that too often negatively impact women—especially women of color." (Doc. No. 65, p. 10 (internal

---

[1] To the extent Plaintiffs are relying on the Mayor's joint announcement with the City Controller regarding the 2018 Audit to show that the Mayor has unique personal knowledge, the Court does not agree. The City Controller, whose office was responsible for conducting the 2018 Audit, would appear to have the relevant firsthand knowledge and as such, Plaintiffs cannot argue that the Mayor's knowledge of this report, or any city-policies or customs, is in any way "unique."

[2] To the extent Plaintiffs replace their admitted and telling speculation that the Mayor "may have" unique knowledge with a more decided assertion that the Mayor "has personal knowledge" (*e.g.*, Doc. No. 65, p. 10), Plaintiffs' wordplay is inadequate to meet their burden. Plaintiffs simply conclude, without sufficient explanation, that the Mayor's announcement of Defendant Ross's resignation as Police Commissioner shows he has unique, personal knowledge of relevant information.

4

quotations omitted).) Plaintiffs again rely on the limited comments Mayor Kenney made when he announced Defendant Ross's resignation last summer. (*Id.* at pp. 6–7, 10.)

But again, apart from their conclusory assertions, Plaintiffs fail to show how the Mayor's deposition is essential to their case. Simply asserting that the deposition is essential, as Plaintiffs do, is insufficient to meet their burden. Moreover, Plaintiffs fail to address how the Mayor's deposition is essential despite the plethora of depositions Plaintiffs are taking in this case and the extensive amounts of documents Plaintiffs have already received. *See, e.g.*, *Tomaszewski*, 2018 WL 6590826, at *5 (opining that the mayor's deposition would be duplicative, and thus not "essential to plaintiff's case," because the plaintiff had already received a significant amount of discovery documents and taken numerous depositions regarding the mayor's administration).

Here, Plaintiffs have noticed the depositions of fourteen City employees, including five Police Sergeants, a Police Lieutenant, a Police Inspector, a Police Chief Inspector, a Deputy Police Commissioner, a Police Safety Officer, a Former Police Commissioner, the Police Human Resources Director, and the City Controller. (Doc. No. 57, pp. 4–5; Doc. No. 65, p. 6.) Further, Defendants assert in their motion, and Plaintiffs do not dispute, that Defendants have responded to Plaintiffs' requests for the production of documents, and nothing produced in the "thousands of pages of responsive documents" demonstrates any unique, independent, or personal knowledge held by the Mayor that is relevant to Plaintiffs' claims. (Doc. No. 57, p. 5.)

In light of this extensive discovery, Plaintiffs do not assert any facts illustrating that a deposition of the Mayor is "essential" to their case. Plaintiffs appear to argue that the Mayor's testimony is essential to proving their Section 1983 claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (Doc. No. 65, pp. 7–9.) Yet Plaintiffs' singular reliance on Mayor Kenney's limited remarks during the press conference concerning Defendant

5

Ross's resignation, and his joint announcement concerning the 2018 Audit, is insufficient to show that Mayor Kenney has unique personal knowledge of a City policy or custom of discrimination. Rather, it is premature to conclude, before at least the fourteen depositions of City employees have occurred (including the deposition of the City Controller), that deposing Mayor Kenney is essential to Plaintiffs' claims.[3]

Third, Plaintiffs must show that the sought-after evidence in the Mayor's deposition is not available through any alternative source or less burdensome means. *Tomaszewski*, 2018 WL 6590826, at *5; *Hankins,* 1996 WL 524334, at *1. Plaintiffs fail to meet this burden. Plaintiffs simply conclude that "the evidence Plaintiffs seek through Mayor Kenney's deposition 'is not available through any alternative source or less burdensome means.'" (Doc. No. 65, p. 11.) This conclusory statement, without more, is insufficient. While Plaintiffs also allege that Mayor Kenney has knowledge of relevant facts, and thus "may be able" to address Plaintiffs' claims and "potentially discuss Defendant Ross's involvement," Plaintiffs' arguments—even if true—do not address whether this evidence can be achieved through less burdensome means. (*Id.*)

Indeed, Plaintiffs fail to address the less burdensome and alternative means of information at their disposal. For example, taking the deposition of the City Controller, whose office conducted the 2018 Audit, certainly should allow Plaintiffs to obtain the sought-after information related to the audit's findings. In addition, taking the depositions of multiple high-ranking members of the Police Department, as well as the Human Resources Director and Defendant Ross himself, will also allow Plaintiffs to obtain the information sought in this action. Further, Plaintiffs may serve on Defendants interrogatories and requests for admission asking specific questions about the

---

[3] The Court notes that depositions are not the only means of obtaining relevant information through discovery. Thus, the fact that Plaintiffs may still have questions even after these fourteen depositions does not automatically entitle Plaintiffs to depose Mayor Kenney.

policies of Mayor Kenney's administration. *See, e.g.*, *Tomaszewski*, 2018 WL 6590826, at *5. Consequently, Plaintiffs fail to show that the Mayor's information is not available from other sources or that there is no less burdensome means for obtaining the information.

IV.

Plaintiffs do not meet the requirements necessary to overcome the limited immunity high ranking government officials, such as Mayor Kenney, are entitled to when a party seeks to depose them. The Court thus finds that good cause exists at this time to grant Defendants' motion for a protective order. This order is without prejudice. If Plaintiffs conclude after additional discovery that the deposition of the Mayor is necessary, Plaintiffs may file a motion to reconsider.

An appropriate Order follows.