# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDRA McCOWAN *and* JENNIFER ALLEN, | : Civil Action No. 19-cv-3326-KSM |
| Plaintiffs, | : |
| | : |
| | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, | : |
| | : |
| COMMISSIONER RICHARD ROSS JR., | : |
| DEPUTY COMMISSIONER CHRISTINE COULTER, | : |
| CHIEF INSPECTOR DANIEL MacDONALD, | : |
| INSPECTOR MICHAEL McCARRICK, | : |
| LIEUTENANT TIMOTHY McHUGH, | : |
| SERGEANT BRENT CONWAY, | : |
| SERGEANT ERIC WILLIFORD, | : |
| SERGEANT KEVIN O'BRIEN, | : |
| SERGEANT TAMIKA ALLEN, | : |
| SERGEANT HERBERT GIBBONS *and* | : |
| OFFICER CURTIS YOUNGER, | : |
| | : |
| Defendants. | : |

## JOINT RULE 26(f) REPORT

Following a fulsome discussion, as contemplated by Fed. R. Civ. P. 26(f), the Parties aver as follows:

**I.    Counsel**

    A.  Lead counsel for Plaintiff(s):    Ian M. Bryson, Esquire
                                          *Attorney for Plaintiffs*

    B.  Lead counsel for Defendant(s):  Daniel R. Unterburger, Esquire
                                            Erica Kane, Esquire
                                          *Attorneys for Defendants City of Philadelphia, Commissioner Richard Ross, Jr., Deputy Commissioner Christine Coulter, Chief INspetor Daniel McDonald, Lt. Timothy McHugh, Insp. Michael McCarrick, Sgt. Brent Conway, Sgt. Eric*

> *Williford, Sgt. Kevin O'Brien, Sgt. Tamika Allen, Sgt.*
> *Herbert Gibbons*
> Lauri A. Kavulich, Esquire
> *Attorney for Defendant Younger*

C.   Counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):

Ian M. Bryson, Esq.

D.   Counsel who participated in Rule 26(f) conference on behalf of Defendant(s):

Daniel R. Unterburger, Esq.
Erica Kane, Esq.
Lauri A. Kavulich, Esq.

## II.   Description of Claims and Defenses

**<u>Plaintiffs' Claims</u>:**

Plaintiffs' Verified Amended Complaint demonstrates how Defendants, acting together and in concert, willfully violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") (Counts I-III); the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA") (Counts IV-V); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA") (Counts VI-VII); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") (Counts VIII-X); Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983") (Counts XI-XIII); the Pennsylvania Whistleblower Law, 43 Pa.C.S. §§ 1421-1428 ("PWL") (Count XIV); and Pennsylvania common law for Intentional Infliction of Emotional Distress ("IIED") (Count XV) and Assault and Battery (Count XVI).

Counts I-III are brought by both Plaintiffs against the City; Counts IV-V are brought by Plaintiff Allen against all Defendants; Counts VI-XV are brought by both Plaintiffs against all Defendants; and Count XVI is brought by both Plaintiffs against Defendant Younger. In response to Defendants' Motions to Dismiss Plaintiff's Amended Complaint, Plaintiffs have agreed to dismissal with prejudice of their claims asserted against Defendant Younger *only* under the FLSA (Counts IV and V), Section 1981 (Counts VIII-X), Section 1983 (Counts XI-XIII), and the Pennsylvania Whistleblower Law (Count XV).

The factual basis for Plaintiffs' statutory and common law claims is set forth in detail in paragraphs 36 through 280 of their Verified Amended Complaint. (Verified Amended Complaint at ¶¶ 36-280). Plaintiffs' allegations can be summarized by the descriptive point headings assigned to their chronological version of events set forth in their Verified Amended Complaint, which are outlined below:

**A.     Introduction and Background**

Ms. McCowan and Ms. Allen, both women of color, have been employed by the Philadelphia Police Department ("PPD") each for over fifteen years, and both recently worked in special units in the PPD's Delaware Valley Intelligence Center ("DVIC"). (Id. at ¶¶ 36-40).

**B.     The PPD's well-settled custom of sexual harassment permeates all 21 police districts, leaving its 6300-member force, including Plaintiffs, vulnerable to unchecked civil rights violations.**

A 2018 audit of the City's implementation of its sexual misconduct policies determined that the City has "a broken system for reporting, investigating and resolving sexual misconduct complaints"—illustrated in this case by the PPD's failure to address Plaintiffs' numerous complaints about being unwittingly grabbed and groped by coworkers and supervisors over their collective thirty years of dutiful service to the Philadelphia Community. (Id. at ¶¶ 41-45).

**C.     In Spring 2014, Plaintiff Allen rejected the first of many unrelenting inappropriate sexual advances from Defendant Younger.**

Defendant Younger's harassment of Ms. Allen started in Spring 2014 when he called her personal cell phone after business hours and said, "I have a crush on you," "I like you," and "I'm interested in you." (Id. at ¶ 46).

**D.     Beginning in Fall 2018, Plaintiffs were denied equal employment opportunity in their duty stations in the DVIC.**

Between October 2018 and December 2018, Ms. Allen and Ms. McCowan—the only women of color in their respective jobs at the DVIC—were denied favorable assignments, schedules and training otherwise freely given to their male and white female counterparts. (Id. at ¶¶ 47-57). Ms. Allen was the only cop at the DVIC rotating between two different units—Analysis & Investigations ("A&I") and Juvenile Enforcement Team ("JET")—and was denied special training needed to succeed in the A&I unit. (Id. at ¶¶ 47-53). Ms. McCowan, who was assigned to the High Intensity Drug Trafficking Area ("HIDTA") unit in the DVIC upon her promotion to Corporal, was moved from HIDTA to A&I so the PPD could give her job to a less-qualified male counterpart. (Id. at ¶¶ 54-57). In A&I, neither Ms. Allen nor Ms. McCowan were given trained or given work. (Id. at ¶¶ 47-57).

**E.     In December 2018, Plaintiffs complained to Defendant Williford about the denial of equal employment opportunity in the DVIC, which he agreed was motivated by their race and gender.**

In early-December 2018, Plaintiffs complained to Defendant Williford and Defendant MacDonald's aide that their male supervisors, Defendants MacDonald, McCarrick, McHugh and O'Brien treated Plaintiffs less favorably than their male and white female coworkers. (Id. at ¶¶ 58-60). Defendant Williford said the issue stemmed from "white bosses looking out for their own." (Id. at ¶ 59).

**F.     The severity of Defendant Younger's inappropriate and unwelcome sexual verbal conduct toward Plaintiff Allen escalated.**

During the week of December 10, 2018, Defendant Younger, who worked with Plaintiffs in A&I, made hostile sex- and gender-based comments to Ms. Allen, stating "I'm going to come to your house and handle your husband"; "my daughter is gay, and I don't like her girlfriend and I purposely hit her in the head with a tailgate and we got into an argument"; and "you're one sexy motherfucker." (Id. at ¶¶ 61-63).

**G.     Plaintiff McCowan rejected similar inappropriate advances from Defendant Younger.**

On January 3, 2019, Defendant Younger called Ms. McCowan on her personal cell phone and said, "I have a crush on you" (similar to his call to Ms. Allen); and made similar comments throughout the month of January, such as "Damn, you sexy"; "You gonna have to stay away from me"; "Are you sure there's no room for me to slide in"; and sexually-suggestive sounds like "Mmm, Mmm, Mmm." (Id. at ¶¶ 64-69). Ms. McCowan reported Defendant Younger's harassing comments one of Plaintiffs' male supervisors in the DVIC, Defendant McHugh. (Id. at ¶¶ 66).

**H.     Defendants continued to deny Plaintiffs equal employment opportunity in the DVIC through January 2019.**

Through January 2019, Ms. McCowan and Ms. Allen, continued to be excluded from training and office meetings with their male and white female coworkers, even though Plaintiffs had been complaining about the difference in treatment since October. (Id. at ¶¶ 70-79).

**I.     Plaintiffs' work environment became increasingly sexually hostile when Defendant Williford joked about Plaintiff Allen's breast milk being stolen from the refrigerator in the break room in the DVIC.**

On January 10, 2019, Ms. Allen (whose infant baby was breastfeeding) noticed that 4 of 5 ounces of expressed milk that she had pumped in the DVIC bathroom earlier that day were missing from the 5-ounce bottle she had stored in the DVIC refrigerator. (Id. at ¶¶ 80-81). Ms. Allen reported the incident to Defendants McHugh and Williford, who promised to "write an email to address it," but never did; and over the next several weeks, Defendant Williford about Ms. Allen's milk being stolen, and made comments about "wanting chocolate milk" or "needing milk." (Id. at ¶¶ 82-85).

**J.     Defendant Younger's sexual harassment of Plaintiff Allen escalated from verbal conduct to physical touching.**

In mid-January 2019, at a morning prayer circle in the DVIC cafeteria, Defendant Younger placed his hands around Ms. Allen's waist, and said, "You're so small!" And picked her up off the ground in an embrace. (Id. at ¶¶ 86-87).

**K.**     **Plaintiffs observed officers and supervisors forge attendance sheets at a mandatory sexual harassment training.**

On January 17, 2019, Plaintiffs attended a mandatory sexual harassment training in the DVIC where Ms. Allen watched Defendant MacDonald's aide—Officer Dawson—mark several officers who were absent as "present" on the attendance sheet, alternating between black and blue pens for each name. (Id. at ¶¶ 88-91). Defendants McHugh and O'Brien were present and knew the attendance sheet was forged because Officer Shawn Hagan's name was signed between theirs, but Officer Hagan was absent. (Id. at ¶ 91).

After the sexual harassment class, Defendant Younger told Ms. Allen, "That class was bullshit!". (Id. at ¶ 92). Later in January, Defendant Younger made other sexually-harassing comments including pointing to Ms. Allen's breasts and stating, "It looks like you need to go pump because they are looking big"; and "You lost your ass after having the baby." (Id. at ¶¶ 93-95).

**L.**     **Defendant Younger's sexual harassment of Plaintiff McCowan also escalated from verbal conduct to physical touching.**

On January 21, 2019, Defendant Younger called Ms. McCowan "Babe" in front of Defendant McHugh. (Id. at ¶ 96). On January 28, 2019, Defendant Younger approached Ms. McCowan at her desk, pointed to her family photos and commented on her "smile," and "big forehead"; pointed to a wedding photo and asked if she was, "pregnant in that picture"; and pointed to several pictures of her husband and said, "You have pictures of this motherfucker all over your desk. My wife doesn't have pictures like this on her desk." (Id. at ¶¶ 97-98).

Defendant Younger then gripped Ms. McCowan's left hand and tried to forcibly remove her wedding band from her ring finger, and over her pleas to "stop!" Defendant Younger laughed and asked, "You don't take them off when you sleep?" (Id. at ¶¶ 99-99).

Defendant Younger's sexually harassing conduct continued through the end of the month forcing Ms. McCowan to call out sick and report the conduct to her family doctor on January 29, 2019. (Id. at ¶¶ 100-103). The harassment was so open and obvious Ms. McCowan's coworkers left sympathy cards on her desk. (Id. at ¶¶ 100-102).

**M.**     **Plaintiffs complained to Defendant Williford about ongoing sex- and race-based discrimination at the DVIC.**

On January 29, 2019, Plaintiffs complained again about the ongoing denial of training and assignments that were otherwise freely given to their male and white female counterparts in A&I since October 2018. (Id. at ¶¶ 104-105).

**N.**     **Defendant Williford tried to stop Plaintiffs from reporting Defendant Younger's workplace sexual harassment to Defendant MacDonald.**

On January 29, 2019, Plaintiffs wrote separate harassment complaints against Defendant Younger, which Ms. McCowan attempted to hand-deliver to Defendant MacDonald on January

30th. (Id. at ¶¶ 106-107). Defendant Williford stopped Ms. McCowan from complaining to Defendant MacDonald, stating, "You don't want to be labeled a troublemaker." (Id. at ¶¶ 108-114).

The same day, after Plaintiffs' unsuccessful attempt at complaining to Defendant MacDonald, Plaintiffs verbally complained to Defendant Allen (another supervisor in the DVIC) who also failed to act on their complaints. (Id. at ¶¶ 115). Plaintiff Allen was forced to take sick and reported the conduct to her primary care doctor. (Id. at ¶¶ 116-117).

**O.   Plaintiff McCowan emailed Plaintiffs' complaints directly to Defendant MacDonald, and texted a summary of their complaints to Defendant Ross; thus initiating a cascade of retaliatory employment actions against Plaintiffs.**

*i.   Report to Defendant MacDonald*

On January 30, 2019, Ms. McCowan emailed Plaintiffs' complaints to Defendant MacDonald, who did not respond. (Id. at ¶ 119). Instead, word about Plaintiffs' complaints spread among their coworkers; and on February 4, 2019, Defendants MacDonald, McCarrick, McHugh and Allen moved Ms. Allen's desk and changed her unit assignment and hours of work. (Id. at ¶¶ 120-125). Ms. McCowan's family doctor took her out of work from February 1 to February 6, 2019.

*ii.   Report to Defendant Ross*

In early- to mid-February 2019, Ms. McCowan texted and called Defendant Ross, former Police Commissioner, on his personal cell phone to report sexual harassment and retaliation Plaintiffs had been suffering at the DVIC; and Defendant Ross declined to act on her report, stating, "Why don't you just order [Younger's] dumb ass to go sit down and get out of your face 'Officer.'" (Id. at ¶¶ 126-127). Defendant Ross also said he was going to "school" Ms. McCowan on sexual harassment and indicated that he harbored a grudge and was getting in the way of redressing her complaints in retribution for her breaking off their two-year affair, which lasted from 2009 to 2011 while Ms. McCowan was his subordinate. (Id. at ¶ 128).

**P.   Defendant Conway failed to conduct a prompt, thorough and impartial investigation of Plaintiffs' internal discrimination complaints, and failed to take appropriate disciplinary and corrective measures where necessary to resolve the problems and prevent harassment from happening again.**

On February 6 and February 8, 2019, Defendant Conway called Ms. Allen and Ms. McCowan to Internal Affairs where he belittled and insulted them; accused Plaintiffs of "waiting too long" to report the sexual harassment; and indicated that Plaintiffs would be "held liable for failing to properly report this because the City is tired of paying out settlement money." (Id. at ¶¶ 129-132).

Between February 8 and February 21, 2019, following Plaintiffs' meetings with Defendant Conway, they were increasingly ostracized in the DVIC; Defendant MacDonald went out of his

way to compliment Defendant Younger for "doing a great job"; Plaintiff Allen's duty assignment was changed on a near-daily basis; Defendant Allen routinely interrupted Plaintiff Allen while she was pumping in the DVIC locker room; Defendants McHugh and O'Brien made disparaging remarks about other women of color; and Defendant Younger said to Plaintiff McCowan "I have some meatballs for you" in reference to his genitals. (Id. at ¶¶ 133-154). Plaintiffs were forced to take additional sick leave; Ms. Allen suffered documented weight loss and Ms. McCowan suffered documented high blood pressure. (Id.).

**Q.     Defendants continued to deny Plaintiff Allen her rights as a nursing mother.**

In late-February, Ms. Allen asked Defendant Allen to provide a private, sanitary place to pump at work other than the DVIC bathroom (where Plaintiffs was frequently interrupted). (Id. at ¶¶ 155-160). In retaliation for her various complaints, Ms. Allen's schedule was changed from steady daywork to rotating day and night shifts; her annual vacation request was denied; Defendant Allen threatened to "take time away" from Plaintiff Allen if she didn't pump in the DVIC bathroom. (Id. at ¶¶ 155-163).

On February 27, 2019, Defendant Allen told Ms. Allen that if she didn't want to use the DVIC bathroom to pump, then "use the interview room," an unheated room with a large window on the door that was freezing in the middle of winter. (Id. at ¶¶ 164-167). Ms. Allen was forced to use sick leave to pump at home. (Id. at ¶¶ 168-169). She also sought therapy and counseling. (Id. at ¶¶ 155-157).

**R.     Plaintiff McCowan filed another complaint and Defendants said she would be punished for doing so.**

Between February 25 and March 6, 2019, gossip about Plaintiffs' complaints continued to spread around the DVIC; Defendants Williford and McCarrick made belittling remarks to Ms. McCowan about "inappropriate touching"; and Defendant McCarrick referred to Ms. McCowan's black coworker as "the guy with the afro." (Id. at ¶¶ 170-173).

On March 6, 2019, Ms. McCowan wrote a second complaint detailing the ongoing hostile work environment in the DVIC and requested to be detailed out of the building, which she submitted to Defendant Coulter, then-Deputy Commissioner of Organizational Services. (Id. at ¶ 174). After Ms. McCowan's second complaint remained unaddressed for several days, she was forced to take additional sick leave to see her primary care doctor, who prescribed Effexor XR 37.5, an antidepressant, and Lorazepam 0.5, an antianxiety medication; she also sought emergency room treatment at Riddle Hospital. (Id. at ¶¶ 175-177).

In mid-March 2019, Defendant Conway called Ms. McCowan to Internal Affairs for a 2-hour interrogation where he implied Plaintiffs were lying and threatened disciplinary action against Ms. McCowan. (Id. at ¶¶ 178-188).

**S.      Defendants detailed Plaintiff McCowan to Police Radio as punishment for her complaints.**

On March 12, 2019 (the same day as Ms. McCowan's second Internal Affairs interview with Defendant Conway), Defendant McHugh yelled at Ms. McCowan from across main floor at the DVIC, stating effective "tomorrow," she was reassigned to Police Radio and her hours of work were changed from daywork/weekends-off (her schedule for the past 11 years) to alternating daytime/nighttime shifts with alternating days off. (Id. at ¶¶ 189-191). The following day, Ms. McCowan reported to Police Radio (one of the most-hated jobs within the PPD), where she was given a lonely desk with no computer in an unheated "tape room" among the building's computer servers, where the temperature regularly dropped below 50 degrees requiring Plaintiff to wear a winter coat to stay warm. (Id. at ¶¶ 190-192).

For the next several months, Ms. McCowan was not given any work to do; she was denied training required by the state to work on the radio floor; her daily attendance was routinely inputted incorrectly for payroll; she was denied access to the payroll system; she was informed by civilian in Defendant Coulter's office that "they talk openly about your situation in Deputy Coulter's office"; and she was forced to seek additional psychiatric treatment. (Id. at ¶¶ 193-209).

In May 2019, the FOP filed a union grievance on Ms. McCowan's behalf; and she personally filed another written complaint with Defendant Coulter detailing the hardship that her recent schedule change (with less than 24 hours' notice) had on her family and health. (Id. at ¶¶ 207-211).

On May 13, 2019, Defendant Coulter disapproved Ms. McCowan's hardship request; on May 14th, John McGrody, the FOP Vice President, told Ms. McCowan "Deputy Coulter said that there was a meeting on Friday, May 10, 2019, with Commissioner Ross, 1st Deputy Patterson, and Deputy Coulter, and they all decided to disapprove your hardship memo"; and on May 29th, a civilian in Defendant Coulter's office told Ms. McCowan she "saw Sergeant Jann from the Commissioner's office go into Deputy Coulter's office with a memo in her hand, mention Ms. McCowan's name, and say, "Well that's what happens when you have a reputation." (Id. at ¶¶ 211-215).

On June 5, 2019, Ms. McCowan presented for a third interrogation with Defendant Conway, and immediately after that she was told to "sit in the hallway" in the common area at Police Headquarters for the next several months. (Id. at ¶¶ 216-219). On June 21, 2019, she was informed by John McGrody, "Between you and me, this is all coming from Commissioner Ross, who said he was mad because he thinks you're making all this up." (Id. at ¶ 220).

Ms. McCowan was forced to go out on FMLA (her Sergeant texted her the following month stating "No one seems to know anything about your FMLA status. Checked with personnel and they don't have anything.") (Id. at ¶¶ 221-227).

**T.** **Plaintiff Allen was also forced to take extended medical leave to treat her severe emotional distress, and she was punished for doing so immediately upon returning to work.**

*i.* *Plaintiff Allen's doctor took her out of work for four weeks.*

Ms. Allen's family doctor took her out of work from late-February through late-March 2019 so she could attend therapy. (Id. at ¶¶ 228-236).

*ii.* *Defendants punished Plaintiff Allen for reporting and seeking medical treatment for unlawful workplace discrimination and harassment.*

On March 27, 2019, the day Ms. Allen returned from leave, Defendant Allen wrote her up for "insubordination" and transferred her out of the building to the Neighborhood Services Unit ("NSU"). (Id. at ¶¶ 237-254).

**U.** **Defendants continued to deny Plaintiff Allen her rights as a nursing mother.**

From late-March (when Ms. Allen arrived in NSU) through late-April 2019, Ms. Allen's new supervisor, Defendant Gibbons, refused to provide Plaintiff and another nursing mother, Officer Janelle Newsome, with a private, sanitary place to pump—he instructed them to do so in the break room during lunch hour where they were frequently harassed by coworkers. (Id. at ¶¶ 255-271).

**V.** **Plaintiffs' families have been significantly impacted by Defendants' unlawful employment actions.**

As a result of the above, Plaintiffs' young children were affected in various ways. (Id. at ¶¶ 272-275).

**W.** **After Plaintiffs filed this lawsuit, Defendants retaliated by significantly changing Plaintiff Allen's job assignment and hours of work and taking adverse action against Plaintiff Allen's husband for accompanying her to her deposition on his day off.**

*i.* *Change in Plaintiff Allen's job assignment and hours of work*

On July 29, 2019, Plaintiffs filed their Verified Complaint, which they served on Defendants the same day via email. (Id. at ¶ 276). On July 30, 2019, the morning after Defendants became aware of the suit, the PPD changed Plaintiff Allen's was reassigned from NSU to "Police Tow Squad" and her hours were changed from steady daywork with weekends off to rotating daytime and nighttime shifts with rotating days off "effective immediately." (Id. at ¶¶ 277 - 280). Ms. Allen's supervisor, Lieutenant Waters, said the reassignment came from "Deputy Commissioner [Coulter's] office." (Id. at ¶ 280). Ms. Allen's family doctor prescribed Prozac 20 mg. (Id. at ¶ 281).

### ii.     *Retaliatory adverse employment actions against Plaintiff Allen's husband*

On August 14, 2019, Ms. Allen's husband, Edward Allen, who is also a Philly cop, accompanied Ms. Allen to a deposition in this case at the City Solicitor's office (Mr. Allen had the day off from work) and he was disciplined for doing so. (Id. at ¶¶ 282 - 290).

**X.     As a result of Plaintiffs' Complaints, Defendant Ross—who oversaw and took part in the discrimination and retaliation that Plaintiffs suffered—resigned from his position as Philadelphia Police Commissioner.**

On August 20, 2019 Philadelphia Mayor Jim Kenney announced the abrupt resignation of Police Commissioner Richard Ross Jr. amid Plaintiffs' reports of discrimination within the police department:

> Last summer, the City implemented a new sexual harassment prevention policy and a series of internal reforms designed to prevent workplace discrimination and harassment throughout the government. While rolling out a new policy understandably takes time, I do not believe the Police Department has taken the necessary actions to address the underlying cultural issues that too often negatively impact women . . .

See Office of the Mayor, Mayor Announces Resignation of PPD Commissioner Richard Ross, Jr., https://www.phila.gov/2019-08-20-mayor-announces-resignation-of-ppd-commissioner-richard-ross-jr/.

**Y.     Defendants' retaliation against Plaintiffs has continued; and Plaintiff McCowan was constructively terminated.**

On October 2, 2019, Ms. McCowan was forced to resign from employment pursuant to her doctor's orders due to the detrimental impact that Defendants' ongoing retaliation was having on her physical and mental health. At the time of her resignation, Ms. McCowan had been employed by the PPD for approximately 15 years, had received consistent promotions throughout her tenure including achieving the rank of Corporal, and was earning approximately $85,000.00 per year. After her resignation, Ms. McCowan took a job at the Clerk of Courts in Chester County, Pennsylvania, where she has been employed for approximately 2 months as a "MJ Clerk 1" working full time earning only $28,000.00 per year.

Ms. Allen remains employed by the PPD but continues to suffer retaliatory hostility from Defendants on a regular basis. Examples of Defendants' continued hostility toward Ms. Allen include Ms. Allen receiving a phone call from the PPD claiming it had not received the paperwork for her restricted duty status and that she would have to begin using her own time (Ms. Allen did in fact submit the proper paperwork and this type of situation has been a constant experience since speaking out). Additionally, Ms. Allen recently went to the City's doctor at Employee Medical Services and was forced to wait in a separate waiting room for over 2 hours and overheard a City doctor saying "I'm not seeing her." Ms. Allen was seen by a different City doctor who recommended she be kept on restricted duty. Other recent retaliatory hostile comments and

11

conduct by Defendants against Ms. Allen include coworkers and supervisors calling her "troublemaker" at work; and Ms. Allen's supervisors refusing to place her pay stub in her hand when she reaches for it.

Both Plaintiffs continue to receive mental health counseling and treatment.

**Z.     Conclusion**

Historically, the City has sidestepped its obligation to redress what Judge Kearney of the U.S. District Court for Eastern District of Pennsylvania called a "well-settled custom of sexual harassment within the Philadelphia Police Department," <u>Vandegrift v. City of Philadelphia</u>, 228 F.Supp.3d 464, 494 (E.D. Pa. 2017), which the Department has allowed to fester and metastasize. As remedies for Defendants' violations of their rights, Plaintiffs seek injunctive and declaratory relief, actual damages, compensatory damages, punitive damages, liquidated damages, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit.

**Defenses of Defendant City of Philadelphia, Commissioner Richard Ross, Jr., Deputy Commissioner Christine Coulter, Chief Inspector Daniel McDonald, Lt. Timothy McHugh, Insp. Michael McCarrick, Sgt. Brent Conway, Sgt. Eric Williford, Sgt. Kevin O'Brien, Sgt. Tamika Allen, Sgt. Herbert Gibbons** (the "City Defendants"):

The City Defendants have filed a Partial Motion to Dismiss and a Motion for a More Definite Statement wherein they ask the Court to dismiss certain portions or Plaintiffs' eighteen count Amended Complaint. Specifically, the City Defendants ask that all claims against individual defendants in their official capacities be dismissed, and that Counts XV and IV (alleging, respectively, intentional infliction of emotional distress and violations of the wage and hour provisions of the Fair Labor Standards Act) be dismissed. The City Defendants have also requested a more definite statement of Plaintiffs' claims as to all eighteen counts. Essentially, the City Defendants request Plaintiffs to concisely state who allegedly did what to whom as relevant to each of Plaintiffs' eighteen legal theories.

As with Defendant Younger, the City and the ten individually-named Defendants deny Plaintiffs' allegations and have vastly different recollections of the incidents alleged in the Amended Complaint. The City Defendants will testify to such on their own behalves and anticipate that multiple witnesses will corroborate their versions of events.

**Defendant Younger's Defenses:**

Defendant Younger has filed a Partial Motion to Dismiss Plaintiff's Amended Complaint, wherein he asks the Court to dismiss Plaintiff's claims pursuant to the FLSA (Counts IV and V), 42 U.S.C. § 1981 (Counts VIII, IX and X), 42 U.S.C. § 1983 (Counts XI, XII and XIII) and the Pennsylvania Whistleblower Act (Count XIV).  Plaintiffs filed a Response, consenting to the dismissal of these Counts.  Therefore, the only counts remaining against Defendant Younger are as follows:  Intentional Infliction of Emotional Distress (Count XV), Assault and Battery (Count XVI), Declaratory Relief (Count XVII) and Injunctive Relief (Count XVIII).

Defendant Younger denies having committed any of the conduct alleged by Plaintiffs. Indeed, Defendant Younger has a vastly different recollection of the incidents alleged in the Complaint - - if, in fact they occurred at all - - and anticipates that multiple witnesses will corroborate his version of events.

## III.   Anticipated Scope of Discovery

A.  Summarize with specificity those issues on which the Parties will need to conduct

discovery.  Identify categories of information each Party needs in discovery and why.

**Plaintiffs' Anticipated Discovery Needs**:

1. Summary of issues on which Plaintiff will need to conduct discovery:
   a. Defendants' Affirmative Defenses (for which Defendants bear the burden of proof);
   b. Plaintiffs' claims listed in their Amended Complaint:
      i.    Count I: Title VII/42 U.S.C § 2000e-2 Disparate Treatment (Plaintiffs v. Defendant City of Philadelphia);
      ii.   Count II: Title VII/42 U.S.C § 2000e-2 Hostile Work Environment (Plaintiffs v. Defendant City of Philadelphia);
      iii.  Count III: Title VII/42 U.S.C § 2000e-3 Retaliation (Plaintiffs v. Defendant City of Philadelphia);
      iv.   Count IV: Violations of FLSA Protections for Nursing Mothers/29 U.S.C. § 207(r) (Plaintiff Allen v. Defendant City of Philadelphia);
      v.    Count V: FLSA Retaliation/29 U.S.C. § 215 (Plaintiff Allen v. Defendant City of Philadelphia);
      vi.   Count VI: FMLA Interference/29 U.S.C. § 2615(a)(1) (Plaintiffs v. Defendant City of Philadelphia);
      vii.  Count VII: FMLA Retaliation/29 U.S.C. § 2615(a)(2) (Plaintiffs v. Defendant City of Philadelphia);
      viii. Count VIII: Section 1981 Disparate Treatment/42 U.S.C. § 1981 (Plaintiffs v. Defendant City of Philadelphia);
      ix.   Count IX: Section 1981 Hostile Work Environment/42 U.S.C. § 1981 (Plaintiffs v. Defendant City of Philadelphia);
      x.    Count X: Section 1981 Retaliation/42 U.S.C. § 1981 (Plaintiffs v. Defendant City of Philadelphia);
      xi.   Count XI: Disparate Treatment in Violation of the Equal Protection Clause/42 U.S.C. § 1983 (Plaintiffs v. All Defendants Except Defendant Younger) (Plaintiffs' Section 1983 claims against Defendant City of Philadelphia are asserted pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978));
      xii.  Count XII: Hostile Work Environment in Violation of the Equal Protection Clause/42 U.S.C. § 1983 (Plaintiffs v. All Defendants Except Defendant Younger) (Plaintiffs' Section 1983 claims against Defendant City of Philadelphia are asserted pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978));

xiii.  Count XIII: Retaliation in Violation of the Petition Clause/42 U.S.C. § 1983 (Plaintiffs' Section 1983 claims against Defendant City of Philadelphia are asserted pursuant to <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 690 (1978));

xiv.  Count XIV: Pennsylvania Whistleblower Retaliation/43 P.S. § 1423 (Plaintiffs v. All Defendants Except Defendant Younger);

xv.  Count XV: Intentional Infliction of Emotional Distress (Plaintiffs v. All Defendants);

xvi.  Count XVI: Assault and Battery (Plaintiffs v. Defendant Younger);

xvii.  Count XVII: Declaratory Relief/28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure (Plaintiffs v. All Defendants); and

xviii.  Count XVIII: Injunctive Relief/28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure (Plaintiffs v. All Defendants).

2. Categories of information needed by Plaintiffs:

   a. All communications between the parties concerning the factual allegations, claims and defenses at issue;
   b. Documents concerning the formation, terms and conditions, and termination (if any) of the parties' employment relationships;
   c. Defendants' Journal and calendar entries;
   d. Identification of persons who have or may have knowledge of the facts concerning the parties' claims and defenses;
   e. Plaintiffs' personnel files, performance evaluations and formal discipline reports or write-ups;
   f. Documents Defendants relied upon to make the employment decisions at issue;
   g. Relevant job descriptions;
   h. Documentation of criteria for job promotions;
   i. All hiring policies;
   j. Relevant training materials;
   k. Compensation and benefits documents;
   l. Workplace policies, directives and guidelines;
   m. Performance standards;
   n. Disciplinary procedures;
   o. Relevant supervisor training manuals;
   p. Any employee handbook, code of conduct or policy manual in effect;
   q. Documents concerning the investigation(s) of Plaintiffs' complaints;
   r. Identification of Plaintiffs' supervisors, managers and other individuals involved in making the adverse decisions against Plaintiffs;
   s. Documents relief upon in preparing Defendants' Answer;
   t. Documents that support or rebut Plaintiffs' allegations set forth in the Amended Complaint;
   u. Documents that support or rebut Defendants' Affirmative Defenses;
   v. Documents that reflect the process, procedure and methodology by which Defendants allegedly review and investigate discrimination complaints;
   w. Statements from any witnesses that Defendants contend support their defense;

    x.  Copies of all similar internal discrimination and retaliation complaints made by members of the Philadelphia Police Department within the last 10 years; and documentation of the resulting investigations, if any; and

    y.  Identification of persons with knowledge of, and documents reflecting, all steps taken by Defendants to preserve ESI and tangible documents potentially relevant to this action in response to Plaintiffs' August 19, 2019 Spoliation Letter.

3.  Depositions needed by Plaintiffs:
   a.  Defendant City of Philadelphia's 30(b)(6) Representative(s);
   b.  Defendant Richard Ross Jr.;
   c.  Defendant Christine Coulter;
   d.  Defendant Daniel MacDonald;
   e.  Defendant Michael McCarrick;
   f.  Defendant Timothy McHugh;
   g.  Defendant Brent Conway;
   h.  Defendant Eric Williford;
   i.  Defendant Kevin O'Brien;
   j.  Defendant Tamika Allen;
   k.  Defendant Herbert Gibbons; and
   l.  Defendant Curtis Younger.

B.  Anticipated number of interrogatories per Party:    Plaintiffs: 50

                                                               Defendant Younger:  30

                                                               City Defendants: 30

C.  Anticipated number of depositions per Party:    Plaintiffs: 15

                                                               Defendants:  15

                                                                City Defendants: 5-10

D.  To the extent either Party proposes to exceed the presumptive limits in the Federal Rules of Civil Procedure for discovery, explain the basis for that proposal.

**<u>Plaintiffs Request to Exceed Presumptive Limits for Discovery:</u>**

Pursuant to Fed. R. Civ. P. 33(a)(1) and Rule 26(b)(1) and (2), Plaintiffs request leave to serve an additional 25 contention interrogatories (50 total) to explore Defendants' factual support for their Affirmative Defenses—for which Defendants bear the burden of proof.

Pursuant to Fed. R. Civ. P. 30(a)(2) and Rule 26(b)(1) and (2), Plaintiffs request leave to take an addition 5 depositions (15 total) so Plaintiff can depose all twelve Defendants and other fact witnesses identified in discovery.

Additionally, pursuant Rule 30(a)(2)(A)(ii), Defendants should be required to obtain leave of Court to re-depose Plaintiffs because Plaintiffs have already been deposed in this case on August 14, 2019 regarding each and every allegation in their Complaint.

**Defendants:**

> At this time, Defendants do not anticipate exceeding the presumptive limits in the Federal Rules of Civil Procedure for discovery; however, given the current COVID-19 situation (particularly in the City of Philadelphia Police Department) and Governor Wolf's "stay at home" order, Defendants anticipate that there may be issues related to availability of witnesses for depositions, and may need to ask for additional time for discovery in the future should they need it.

E. Do the Parties anticipate the need for any third-party discovery?  If so, identify the likely third-parties and the discovery to be sought.

**Plaintiffs:**

Yes. Plaintiffs request discovery of all similar internal discrimination and retaliation complaints made by other members of the Philadelphia Police Department within the last 10 years; and documentation of the resulting investigations, if any.

**Defendants:**

> Defendants anticipate that, to the extent that Plaintiffs allege physical or emotional injuries, they will need to subpoena records from Plaintiffs' medical or mental health providers. Defendants also anticipate issuing subpoenas for telephone records and electronic messages described in the Amended Complaint.

F. Do the Parties anticipate the need for experts?  If so, identify the subjects on which the expert(s) may opine.

**Plaintiffs:**

Yes. Plaintiffs have retained a forensic psychologist to assess the degree and probable trajectory of Plaintiffs' psychological and emotional impairment and distress as a result of Defendants' conduct.

**Defendants:**

> Defendants do not anticipate the use of any experts at this time. However, Defendants reserve the right to retain experts should discovery reveal the need to do so.

**IV.    Status of Discovery**

The Parties must summarize the status of discovery to-date.  If nothing has been done in terms of discovery, the Parties should explain why.   In general, the Court prefers the parties to begin discovery prior to the Rule 16 conference.

August 14, 2019 Defendants took Plaintiffs' depositions, however that was for purposes of the preliminary injunction only and Defendant Younger nor his counsel participated in the depositions. Plaintiffs have served Requests for Production upon Defendants.

Defendant Younger has served Interrogatories and Requests for Production on Plaintiffs.

The City Defendants plan to serve Interrogatories and Requests for Production of Documents before April 20, 2020. The City Defendants have served Plaintiffs with Initial Disclosures.

**V.    Proposed Case Management Deadlines**

When completing this section, the Parties should presume that the Court will <u>not</u> bifurcate fact and expert discovery.  Therefore, the Parties should propose dates that take that presumption into account.

A. Deadline to serve initial disclosures under Rule 26(a)(1) (*must be exchanged at least one (1) business day before Rule 16 conference):          April 15, 2020

B. Deadline to amend pleadings to add claims, affirmative defenses or Parties (*must be as early as practicable to avoid prejudice or unnecessary delays):                April 30, 2020

C. Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): May 14, 2020

17

D.  Deadline for rebuttal expert reports (if any):        **Plaintiffs:**    Defendants'

trial experts, if any, must be designated, and the information contemplated by Fed. R.

Civ. P. 26(a) must be disclosed within thirty (30) days of Plaintiffs' designation of their

expert                                                                              witness(es).

**Defendants:** November 14, 2020

E.  Deadline to complete discovery:                    September 14, 2020

F.  If any Party seeks more than 120 days for fact discovery, explain why.

G.  Deadline to file motion for summary judgment:

**Plaintiffs:** November 14, 2020

**Defendants:** December 14, 2020

**Plaintiffs seek a firm trial date at the earliest opportunity.**

## VI.    Deposition Scheduling

The Court expects the Parties to meet and confer as soon as practicable to set aside dates

to hold open for depositions before the close of discovery.  If the Parties have not already done so,

the Court will order the Parties to do so within two weeks of the Rule 16 conference.

Have the Parties set aside dates for deposition?   ___ Yes  **_X__ No (note: Plaintiffs have**

**already been deposed).**

If yes, what are those dates?  _____

If no, when do the parties intend to confer, and how many dates do they intend to set aside?

The parties will confer within two weeks following the Rule 16 Conference, and intend to
set aside approximately seven (7) days for depositions.

## VII.    Electronic Discovery

**Plaintiffs:** Plaintiffs seek electronic discovery in accordance with their August 19, 2019 Spoliation

Letter.

**Defendants**: Defendants do not anticipate significant exchange of ESI and consent to entry of this Court's default electronic discovery Order.

## VIII.   Protective Orders and Confidentiality Agreements

**Plaintiffs:** Plaintiffs seek a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(D) forbidding inquiry into matters already addressed at Plaintiffs' August 14, 2019 depositions.

**Defendants**: Defendants do not anticipate the need for a protective order in this matter, however, because Officer Younger did not have a chance to depose Plaintiffs and the depositions were taken for the sole purpose of a preliminary injunction hearing, Defendant Curtis Younger will oppose such a protective order.

Further, Defendant Younger expects to present to Plaintiffs a confidentiality order and will possibly ask that depositions and possibly the proceedings be sealed given the fact that the details of the complaint and deposition testimony given in conjunction with the preliminary injunction were leaked to the press and on several occasions, counsel for plaintiffs spoke to the press about the allegations and purported evidence that is in the possession of Plaintiffs' counsel.

## IX.   Alternative Dispute Resolution

A. Have the Parties engaged in any settlement discussions?  If so, set forth the status of those negotiations.  If not, explain why not.

The parties have not engaged in settlement discussions pending the outcome of the Motions to Dismiss.

B. Have the Parties explored or considered other forms of alternative dispute resolution? If so, summarize those efforts.  If not, state the Parties' positions with respect to ADR, as required under Local Rule of Civil Procedure 53.3:

**Defendants:** The parties are willing to consider alternative dispute resolution.

> **Plaintiffs**: Plaintiffs would consider private mediation at JAMS with Hon. Diane M. Welsh (Ret.), Jerry P. Roscoe, Esq., Hon. Annette M. Rizzo (Ret.), or Hon. Jane Cutler Greenspan (Ret.).

C.   Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.

Ian M. Bryson, Esquire will attend on behalf of Plaintiffs and will have authority to discuss settlement. Plaintiffs will be immediately available by telephone if necessary.

Lauri A. Kavulich will attend the Rule 16 conference on behalf of Defendant Younger. Daniel Unterburger, the attorney attending on behalf of the City of Philadelphia, will have the authority to discuss settlement.

## X.   Consent to Send Case to a Magistrate Judge

The Parties should indicate whether they consent to have a United States Magistrate Judge conduct any or all proceedings in this case, pursuant to 28 U.S.C. § 636(c).

The parties do not consent to the jurisdiction of a United States Magistrate Judge.

## XI.   Policies and Procedures

Judge Marston's Policies and Procedures are available for the Parties to review on the Court's website.  By signing below, counsel for each Party and/or each *pro se* Party represents that he or she has reviewed the Judge's Policies and Procedures and acknowledges the requirements contained therein.  The Parties and their counsel further acknowledge by signing below that Judge Marston will strike pleadings and other submissions that do not comply with her Policies and Procedures.

## XII.   Other Matters

The Parties should identify any other issues that have not been addressed above but may require the Court's attention (e.g., anticipated motions, bifurcation, privilege issues, etc.).

**Plaintiffs:** Plaintiffs anticipate filing a motion to strike Defendants' Affirmative Defenses if necessary to narrow the scope of the issues for discovery. Additionally, Plaintiffs dual filed their charges with EEOC and PHRC on April 10, 2019. Since one year has elapsed, Plaintiffs will be seeking leave to amend their complaint to add their PHRA and PFPO claims (discrimination, hostile work environment, retaliation, aiding and abetting) against Defendants.

Date:

/s/ Ian M. Bryson, Esquire                          /s/ Daniel R. Unterburger
Counsel for Plaintiff                                    Counsel for Defendants


/s/ Lauri S. Kavulich
Counsel for Defendant Younger