# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA MCCOWAN, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **CITY OF PHILADELPHIA, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 2:19-cv-03326-KSM** |

# MEMORANDUM

**MARSTON, J.**                                                                 July 28, 2020

Plaintiffs Audra McCowan and Jennifer Allen bring multiple counts against the City of Philadelphia and eleven individually-named defendants. In their Second Amended Complaint, Plaintiffs jointly allege against all Defendants claims of discrimination, retaliation, and hostile work environment arising under Title VII, Section 1981, Section 1983, the Pennsylvania Human Relations Act, the Philadelphia Fair Practices Ordinance, the Family and Medical Leave Act, and Pennsylvania's Whistleblower law. (Doc. No. 49.) Plaintiffs also jointly allege claims of intentional infliction of emotional distress against all Defendants and assault and battery against Defendant Curtis Younger. (*Id.*) In addition, Plaintiff Allen alleges violations of the Fair Labor Standards Act's ("FLSA") protections for nursing mothers and FLSA retaliation against all Defendants. (*Id.*)

Plaintiffs presently seek to depose City Controller Rebecca Rhynhart, a non-party. (Doc. No. 82.) On May 13, 2020, Plaintiffs noticed Rhynhart's deposition for July 21. (Doc. No. 79, p. 4, Ex. A.) On June 24, Rhynhart's counsel notified Plaintiffs' counsel of Rhynhart's objections and asked that the deposition notice be withdrawn. (Doc. No. 79, pp. 4–5, Ex. B.) The letter

requested that Plaintiffs' counsel respond by June 30. (*Id.*) Plaintiffs' counsel did not respond until July 13.1 (Doc. No. 79, p. 5)

On July 20—one day before the scheduled deposition—Defendants' counsel informed the Court that Rhynhart intended to file a motion for a protective order to preclude Rhynhart's deposition and that Rhynhart had notified Plaintiffs that she would not be appearing for her scheduled deposition. The following day, Rhynhart filed her motion for a protective order. (Doc. No. 79.) Plaintiffs then filed their opposition. (Doc. No. 82.) On July 28, the Court held oral argument. For the reasons discussed below, the Court will deny Rhynhart's motion.

I.

In her motion, Rhynhart argues that the Court should preclude her deposition because she is entitled to limited immunity as a high ranking government official. (Doc. No. 79, p. 3.) In addition, Rhynhart argues that the deliberative process privilege precludes the deposition. (*Id.*) Plaintiffs oppose Rhynhart's motion for a protective order on the grounds that the motion was not timely,2 and further argue that they have overcome Rhynhart's claim of limited immunity. (Doc. No. 82.)

---

1 The Court held a telephonic conference regarding Rhynhart's motion on July 22, during which counsel addressed the timeline of their discussions leading up to the filing of this motion. The timeline was also discussed during today's oral argument.

2 Because the Court denies Rhynhart's motion on other grounds, the Court need not address Plaintiffs' timeliness argument. However, the Court notes that scheduling is a reoccurring issue in this case, and it is unfortunate that Rhynhart's motion was not filed in a timelier manner given the fact that Defendants knew since at least late April 2020 that Plaintiffs intended to depose Rhynhart. That being said, Plaintiffs waited until July 13—eight days before the scheduled deposition—to respond to Rhynhart's objections raised in the June 24 letter. Neither Plaintiffs, Defendants, nor Rhynhart have been exemplars of timeliness in this dispute.

II.

The court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden of showing that "good cause" exists. *Tomaszewski v. City of Phila.*, No. 17-4675, 2018 WL 6590826, at *3 (E.D. Pa. Dec. 14, 2018).

When a party seeks to depose a "high ranking government official," courts often find that good cause exists to preclude the deposition. *Id.* (internal citations omitted). "High ranking government officials are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge." *Id.* (internal citations and quotations omitted). "The logic behind the limited immunity . . . is that high ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* (internal citations and quotations omitted).

To overcome this "limited immunity" afforded to "high ranking government officials," the party requesting the deposition "must show that the proposed deposition is: (1) likely to lead to the discovery of admissible evidence; (2) is essential to that party's case; and (3) that this evidence is not available through any alternative source or less burdensome means." *Id.*; *see also Hankins v. City of Phila.*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996). We address each of these issues in turn.

III.

A.   *Limited Immunity*

Plaintiffs do not contest that Rhynhart is a "high ranking government official" entitled to

3

limited immunity.3 Plaintiffs instead argue that they meet the three requisite elements to overcome Rhynhart's limited immunity. We agree.

"The first requirement — that [the city controller's] testimony is likely to lead to the discovery of admissible evidence — requires something greater than the normal Rule 26 relevancy standard." *Robinson v. City of Phila.,* No. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006) (internal citations and quotations omitted). Plaintiffs must make an "actual showing" that Rhynhart "possesses personal knowledge relevant to the litigation." *Id.*

It cannot reasonably be disputed that Rhynhart has personal knowledge relevant to this litigation. Plaintiffs' claims rely in part on an alleged city-custom or policy of discrimination and harassment. (*E.g.*, Doc. No. 82, pp. 14–16; Doc. No. 49.) For example, Count XII of Plaintiffs' Second Amended Complaint alleges a city-custom or policy of sexual harassment. (Doc. No. 49, ¶¶ 438–454.) As City Controller, Rhynhart oversaw a 2018 audit of Philadelphia's sexual misconduct policies, procedures and payouts from July 2012 through April 2018 ("2018 Audit"). (*E.g.*, Doc. No. 79-1, pp. 6–7; Doc. No. 82, p. 7.) We thus conclude that Rhynhart—as the individual tasked with overseeing the audit concerning "The Effectiveness Of And Compliance With Sexual Harassment Policies And Procedures July 2012 To April 2018" (Doc. No. 79-1, p. 6)—has personal knowledge relevant to this litigation. (*See also* Doc. No. 79-1, p. 7 (Rhynhart's cover letter to the 2018 Audit describing the purpose of the 2018 Audit, and the Audit's findings that "paint a troubling picture of a policy and procedures that do not protect or support victims of

---

3 Plaintiffs' opposition brief does not discuss whether Rhynhart qualifies as a "high ranking government official." And when asked about this threshold issue during oral argument, Plaintiffs' counsel stated that he "might concede" that Rhynhart is entitled to limited immunity. Because Plaintiffs provide no argument on this issue, the Court assumes, without deciding, that Rhynhart is a high ranking government official entitled to limited immunity.

4

sexual misconduct . . . .").)[4]

As well, during oral argument, Rhynhart's counsel argued that the 2018 Audit is sufficient for Plaintiffs' use at this stage, and if needed at trial, Plaintiffs could call Rhynhart to testify as a witness. The Court, however, disagrees with Rhynhart's argument that Plaintiffs do not need to depose her. First, neither Rhynhart nor Defendants can decide what is, or is not, needed for Plaintiffs to present their case, whether at summary judgment or at trial. Second, Rhynhart's deposition will likely cover information outside the four corners of the 2018 Audit. For example, as Plaintiffs presented in their opposition brief, Rhynhart made several public statements concerning the 2018 Audit and the City's response to it. (Doc. No. 82, pp. 7–11.) It is possible that such information is relevant to Plaintiffs' case and that Plaintiffs may rely on such statements prior to trial. Yet Plaintiffs would likely need to depose Rhynhart to use such information.[5] Plaintiffs therefore satisfy the first requirement to overcome limited immunity.[6]

---

[4] In her motion, Rhynhart argues that she "did not set any of the policies or customs alleged by the plaintiffs, and therefore the City Controller lacks any firsthand knowledge about such alleged policies or customs." (Doc. No. 79, p. 7.) This argument borders on disingenuity. Rhynhart oversaw the audit of these policies and customs; the fact that she "did not set any of the policies or customs" is irrelevant. Moreover, Rhynhart states that the 2018 Audit "was based on information that the Controller's Office received from others." (*Id.*) Not only does deposing such a centralized source of information seem like an efficient method of discovery, Rhynhart cannot seriously argue that, after she and her office reviewed all the documents provided and published findings, she lacks personal knowledge relevant to this litigation.

[5] For example, Defendants may argue—as was alluded to during oral argument—that Rhynhart's public comments are inadmissible hearsay. If so, Plaintiffs would need to rely on Rhynhart's deposition testimony at summary judgment. *See, e.g.*, Fed. R. Civ. P. 56(c)(2) ("*Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, *set out facts that would be admissible in evidence,* and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added)).

[6] Plaintiffs also argue that Rhynhart has knowledge relevant to Defendants' "anticipated '*Faragher-Ellerth*' affirmative defense." (Doc. No. 82, pp. 15–16.) This memorandum applies equally to the "anticipated" affirmative defense to the extent Defendants rely upon such a defense.

As for the second requirement, Plaintiffs must "show that the proposed deposition is essential to [Plaintiffs'] case." *Tomaszewski*, 2018 WL 6590826, at *4. We find that Rhynhart's deposition is essential to Plaintiffs' case. As discussed above, Rhynhart and her office conducted the 2018 Audit, reviewed a large number of cases and documents, and ultimately concluded that the then-current policies and procedures were insufficient. The 2018 Audit encompassed a six-year time period, spanning from July 2012 to April 2018 "with the specific intent to focus not only on one mayoral administration, but the policy and its implementation over time." (Doc. No. 79-1, p. 7.) Plaintiffs argue that Rhynhart "is the only person who can provide the evidence needed to support [their Section 1983] claims." (Doc. No 82, pp. 16–17.) While perhaps not *literally* accurate, we find that Plaintiffs' argument is *de facto* accurate. Rhynhart and her office reviewed the City's policies implemented over six years and multiple mayoral administrations. (Doc. No. 79-1, p. 7.) If Plaintiffs were precluded from deposing Rhynhart, Plaintiffs would likely have to depose numerous—perhaps dozens of—individuals to get the same amount of information that is within Rhynhart's personal knowledge. Such an undue burden on Plaintiffs renders Rhynhart's deposition essential to Plaintiffs' case. Accordingly, Plaintiffs fulfill the second requirement.

Third, Plaintiffs must show that the sought-after evidence in Rhynhart's deposition is not available through any alternative source or less burdensome means. *Tomaszewski*, 2018 WL 6590826, at *5; *Hankins,* 1996 WL 524334, at *1. We find that Plaintiffs meet this burden. As Plaintiffs argue, Rhynhart had a "central role" in the 2018 Audit. And as discussed above, Rhynhart—the centralized source of at least six years of information over multiple mayoral administrations—is the least burdensome means for Plaintiffs to acquire the needed information.[7]

---

[7] The Court notes that it previously precluded the deposition of Mayor James Kenney (Doc. Nos. 67, 68) in part because Plaintiffs could depose City Controller Rhynhart. (Doc. No. 67, p. 6) ("[T]aking the deposition of the City Controller, whose office conducted the 2018 Audit, certainly should allow Plaintiffs to obtain the sought-after information related to the audit's findings.").) In her motion, Rhynhart

While the Court is aware of the ongoing hardships caused by COVID-19, contrary to Rhynhart's implicit suggestion (Doc. No. 79, p. 8), that does not increase Plaintiffs' burden to overcome limited immunity. Further, Rhynhart's argument that allowing her deposition in this case would open her up to depositions in "every 'pattern and practice' claim going forward in light of the various audits that her department conducts" is unavailing. (Doc. No. 79, pp. 8–9.) Overcoming Rhynhart's limited immunity—to the extent it exists—would depend on the specific facts, claims, and discovery at issue in the specific case. The mere fact that Rhynhart is deposed in this case does not automatically compel the conclusion that she should be deposed in a future case. Plaintiffs thus satisfy the final requirement to overcome Rhynhart's limited immunity.

B.   *Deliberative Process Privilege*

Rhynhart also argues that her deposition should be precluded because her testimony is protected by the deliberative process privilege. (Doc. No. 79, pp. 9–10.) This argument lacks merit.

Rhynhart (and Defendant City of Philadelphia) bear the burden of showing the applicability of the deliberative process privilege. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) ("The initial burden of showing privilege applies is on the government . . . . To meet it, the government must present more than a bare conclusion or statement that the [discovery] sought [is] privileged."). "The deliberative process privilege permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Id.* at 853 (internal quotations omitted). The privilege does not protect factual information, nor "communications made subsequent to an agency decision." *Id.* at 854. The privilege is not absolute and it "should be narrowly construed." *Id.* at 854, 856.

---

fails to address, much less mention, this Court's reliance on Rhynhart's upcoming deposition in precluding the mayor's deposition in this case.

Here, Rhynhart argues that the deliberative process privilege "protects the steps and processes of the City Controller's Office in issuing the 2018 Audit," thus precluding Rhynhart's deposition testimony. (Doc. No. 79, p. 10.) We disagree. The privilege applies to "confidential deliberations *of law or policymaking*, reflecting opinions, recommendations or advice." *Redland Soccer Club*, 55 F.3d at 853 (emphasis added). In contending that the privilege "protects the steps and processes of the City Controller's Office in issuing the 2018 Audit," Rhynhart's argument must be that "issuing the 2018 Audit" is "law or policymaking." But the 2018 Audit expressly belies that argument. In the 2018 Audit's cover letter, Rhynhart writes, "Our specific *findings* and *recommendations* . . . are detailed in the report . . . . We believe that our recommendations, *if implemented* by management, will improve the city's sexual harassment prevention policy . . . ." (Doc. No. 79-1, p. 7 (emphasis added).) Because the 2018 Audit is neither law nor policymaking—but is rather "findings and recommendations" that may or may not be implemented—the deliberative process privilege does not apply to the preparations for the 2018 Audit. Additionally, the 2018 Audit is (presumably) based on facts, which are not covered by the privilege, providing further support for our conclusion that the privilege is inapplicable here.

Finally, because the deliberative process privilege is not absolute, we find that Rhynhart's deposition should not be precluded on the basis of a privilege that must be narrowly construed. *Redland Soccer Club*, 55 F.3d at 854, 856 (opining that the privilege is not absolute and should be narrowly construed). Rather, if appropriate, specific questions during Rhynhart's deposition may be objected to on the basis of privilege.[8]

---

[8] Rhynhart and Defendants should not construe this as encouragement to object to Plaintiffs' questions during Rhynhart's deposition. Indeed, the Court is rejecting the merits of the arguments raised in Rhynhart's motion. The Court notes that all parties—or rather, counsel—involved in this case have made feuding and motion-filing a regular occurrence. The Court's patience is not unlimited. Counsel for Rhynhart and Defendants should ensure that any objections raised during the deposition are entirely

IV.

Plaintiffs have met their burden to show that City Controller Rhynhart's limited immunity from being deposed is overcome. Further, Rhynhart fails to show that the deliberative process privilege precludes her deposition. Rhynhart's request for a protective order is denied.

An appropriate Order follows.

---

warranted. Plaintiffs' counsel is likewise encouraged to ensure that all lines of questioning are appropriate.