# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDRA MCCOWAN, et al., | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 2:19-cv-03326-KSM |
| CITY OF PHILADELPHIA, et al., | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                            October 23, 2020

Plaintiffs Audra McCowan and Jennifer Allen have sued the City of Philadelphia and eleven individually-named defendants for claims of discrimination, retaliation, hostile work environment, intentional infliction of emotional distress, and assault and battery related to their employment with the Philadelphia Police Department. (Doc. No. 49.) Plaintiff Allen also alleges violations of the Fair Labor Standards Act's ("FLSA") protections for nursing mothers and FLSA retaliation against the City and ten of the individual defendants. (*Id.*)

Previously, Plaintiffs sought to depose Philadelphia Mayor James Kenney, a non-party, about his knowledge of the Police Department's alleged custom or policy of discrimination and sexual harassment. (Doc. No. 65 at p. 6.) In response, Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Michael McCarrick, Timothy McHugh, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons (collectively "Defendants") filed a Motion for a Protective Order Precluding the Deposition of Mayor Kenney. (Doc. No. 57.) They argued that Mayor Kenney is a high ranking government official entitled to limited immunity from being deposed concerning matters about which he has no unique personal knowledge. (*Id.*)

Plaintiffs opposed the Motion, arguing that Mayor Kenney "has unique personal knowledge of the Police Department's policy or custom of discriminating against black female cops." (Doc. No. 65, p. 6.) Plaintiffs argued that Mayor Kenney's announcement about the City Controller Office's 2018 audit of the City's sexual misconduct policies, procedures and payouts ("2018 Audit"), and the Mayor's announcement of the resignation of Defendant Richard Ross, Jr. as Police Commissioner following the filing of this lawsuit, were sufficient evidence that Mayor Kenney has "unique personal knowledge" justifying his deposition. (*Id.* at pp. 3–11.) We found that neither announcement showed Mayor Kenney has personal knowledge of the City's policy or custom of discrimination. We also found that Plaintiffs' extensive pending discovery requests (including fourteen deposition notices and numerous interrogatories and document requests) suggested Mayor Kenney's deposition was not "essential" and that there were less burdensome means of obtaining the same information. (Doc. No. 67.)

For those reasons, we concluded that Mayor Kenney is a high ranking government official entitled to limited immunity and entered a protective order precluding his deposition. (Doc. Nos. 67 & 68.) However, we clarified that our ruling was without prejudice and specifically allowed Plaintiffs, after additional discovery, to file a motion to reconsider if they could show that good cause no longer existed for the protective order. (Doc. No. 68.) On August 14, 2020,[1] Plaintiffs filed their Motion for Reconsideration of the Court's Order dated July 9, 2020. (*See* Doc. No. 92.)

---

[1] Defendants suggest that Plaintiffs' Motion is untimely under Local Rule 7.1(g), which states that a motion for reconsideration must be filed within 14 days. (Doc. No. 93 at p. 3 n.1.) They also argue that it is untimely under Federal Rule of Civil Procedure 59(e), which states that a motion to alter or amend a judgment must be filed within 28 days of entry of judgment. (Doc. No. 93-1 at p. 4 nn.2–3.) The Court rejects both arguments, which ignore the fact that the Court's previous order explicitly allowed Plaintiffs to file a motion for reconsideration if "after continuing to engage in discovery" they found evidence "that good cause no longer exists for the protective order." (Doc. No. 68.)

2

Defendants have filed an opposition brief. (Doc. No. 93.) After considering the parties' arguments, the Court will deny the Motion.

I.

The court has "'inherent power over interlocutory orders'" and may reconsider an interlocutory order "'when it is consonant with justice to do so.'"[2] *Id.* (quoting *Deeters*, 2013 WL 6524625, at *1); *see also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."); *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (same). On reconsideration of an interlocutory order, some courts in this Circuit require the moving party to show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Cephalon, Inc.*, 159 F. Supp. 3d at 554–55. Other courts, however, apply a more lenient standard and look only to whether reconsideration is "consonant with justice." *See Qazizadeh*, 214 F. Supp. 3d at 295 (collecting cases and concluding that the "consonant with justice" standard is the "better-reasoned view"). Under either standard, a motion for reconsideration should not be "used as a means to reargue matters already argued and

---

[2] Plaintiffs and Defendants assert that Federal Rule of Civil Procedure 60(b) controls this Motion for Reconsideration. (*See* Doc. No. 92 at p. 23; Doc. No. 93 at p. 4.) Although Rule 60(b) refers to "relief from a final judgment, order, or proceeding," courts have shied away from applying it in the context of interlocutory orders. *See, e.g.*, *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 554 n.3 (E.D. Pa. 2016) (noting that "'the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration'" in the context of an interlocutory order (quoting *Deeters v. Phelan Hallinan & Schmieg, LLP*, No. 3:11-252, 2013 WL 6524625, at *1 (W.D. Pa. Dec. 12, 2012))).

disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002).[3]

We need not decide which standard applies in this case because even under the more stringent standard, Plaintiffs contend that reconsideration is appropriate in light of newly discovered evidence. Specifically, Plaintiffs argue that there is new evidence showing that "Mayor Kenney has unique personal knowledge about the Philadelphia Police Department's custom or policy of discrimination and sexual harassment that is essential to Plaintiffs' case and cannot be obtained through any alternative source." (Doc. No. 92 at p. 23.) We analyze whether Plaintiffs' newly proffered evidence shows that "good cause" no longer exists for the protective order.

II.

The court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden of showing that "good cause" exists. *Tomaszewski v. City of Phila.*, No. 17-4675, 2018 WL 6590826, at *3 (E.D. Pa. Dec. 14, 2018).

When a party seeks to depose a "high ranking government official," courts often find that good cause exists to preclude the deposition. *Id.* (internal citations omitted). "High ranking government officials are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge." *Id.* (internal citations and quotations omitted). "The logic behind the limited immunity . . . is that high ranking government

---

[3] Although we do not proceed under Rule 60(b), we note that it broadly allows the court to reconsider an order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

4

officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* (internal citations and quotations omitted). A mayor is considered a "high ranking government official" who receives this limited immunity. *Id.* ("[D]istrict courts have routinely found that a mayor is sufficiently high ranking to trigger the limited immunity from a deposition about matters on which they lack unique personal knowledge."); *see also Brennan v. City of Phila.*, 388 F. Supp. 3d 516, 520 (E.D. Pa. 2019).

To overcome this "limited immunity," Plaintiffs "must show that the proposed deposition is: (1) likely to lead to the discovery of admissible evidence; (2) is essential to that party's case; and (3) that this evidence is not available through any alternative source or less burdensome means." *Tomaszewski*, 2018 WL 6590826, at *3; *see also Hankins v. City of Phila.*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996).

A.

"The first requirement — that [the Mayor's] testimony is likely to lead to the discovery of admissible evidence — requires something greater than the normal Rule 26 relevancy standard." *Robinson v. City of Phila.*, No. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006) (internal citations and quotations omitted). Plaintiffs must make an "actual showing" that Mayor Kenney "possesses personal knowledge relevant to the litigation." *Id.*

Plaintiffs argue that "Mayor Kenney has unique personal knowledge relevant to this litigation" because he is the government official responsible for implementing changes to the City's anti-harassment policies and because he is overseeing an investigation into the Philadelphia Police Department's history of sexual misconduct. (Doc. No. 92 at p. 24.) But contrary to

5

Plaintiffs' assertions, the evidence does not show that Mayor Kenney has "unique personal knowledge" of either the City's policy changes or the investigation.

First, Plaintiffs assert that "[a]s the government official responsible for implementing the recommended changes to the City's anti-harassment policies and procedures, Mayor Kenney has unique personal knowledge of the City custom or policy of failing to prevent sexual harassment in the workplace." (*Id.*) In support of that assertion, Plaintiffs cite City Controller Rebecca Rhynhart's deposition. They claim that her testimony shows the "Mayor's office [is] responsible for implementing the recommended changes to the City's . . . sexual harassment policies," and that the Mayor "decided *not* to implement the [Controller's] recommendations." (*See* Doc. No. 92 at pp. 12–13 (citing Rhynhart Dep. Tr. at 68:01–69:02, 65:13–21, 69:03–70:24).) But Controller Rhynhart's deposition does not demonstrate that Mayor Kenney himself contains unique personal knowledge about the City's sexual harassment policies or that the Mayor made a formal decision not to implement the Controller's recommendations.

To the contrary, Controller Rhynhart testified that the "Mayor's *office*" was charged with implementing any policy changes and that this task was delegated to the "EEO unit . . . or the ERU [Employee Relations Unit]."[4] (*See* Rhynhart Dep. Tr. at 68:20–69:2 (emphasis added); *see also id.* at 70:9–24 (explaining that during her conversation with the Mayor about where the City was in the process of implementing her recommendations, Mayor Kenney "turned and asked" his Chief of Staff "Where are we in the process?").) In addition, even if Mayor Kenney had personal knowledge of the changes being made to the City's anti-harassment policies, Controller Rhynhart's

---

[4] The Mayor's written response to the Controller's 2018 Audit confirms that the ERU was established within the Office of Labor "to centralize the oversight of EEO matters throughout the City" and that the ERU "will be responsible for the oversight of all sexual misconduct investigations." (Doc. No. 92-1 at pp. 1–2.)

6

deposition shows that this knowledge is not "unique" to the Mayor, and that Plaintiffs could likely obtain the same information by deposing someone in the City's Office of Labor or the ERU.

Second, Plaintiffs assert that Mayor Kenney has "unique personal knowledge of the Philadelphia Police Department's failure to take 'the necessary actions to address the underlying cultural issues that too often negatively impact women — especially women of color'" because "Mayor Kenney's office . . . conducted an investigation into the Philadelphia Police Department's mishandling of Plaintiffs' complaints and other complaints of sexual harassment." (Doc. No. 92 at pp. 14, 25.) In support of that assertion, Plaintiffs rely on a press release issued by the Mayor on August 20, 2019.[5] (*Id.*; *see also* Doc. No. 92-2.) Contrary to Plaintiffs' assertion, the press release actually states that an "independent firm"[6] is conducting the investigation, not the Mayor's office. (*Id.*) And, as explained above, even if the Mayor's office is overseeing the investigation, that alone is not evidence that the Mayor himself is aware of the status of that investigation or has

---

[5] We previously rejected Plaintiffs' argument that this press release shows the Mayor has unique personal knowledge of "the City's policy or custom of discriminating against black female cops." (Doc. No. 67 at pp. 3–4.)

[6] Plaintiffs should be aware that an independent law firm is conducting the investigation, given that they have served the firm with a subpoena to produce documents. (*See* Doc. No. 94-1.) In addition, although Plaintiffs represent that "counsel for the City, attorney Brian Rhodes[ ] confirmed that Mayor Kenney has indeed conducted an investigation into the Police Department's mishandling of sexual harassment complaints," Defendants vehemently reject that any such representation was made. Defense counsel asserts that the parties merely discussed how "any investigation conducted *by an outside law firm* at the direction and oversight of the Mayor's Office of Labor Relations or the Law Department would be considered privileged and confidential." (*See* Doc. No. 93 at p. 9 (emphasis added).) Last, the deposition testimony of Defendant Brent Conway further confirms that an outside law firm, and not the Mayor, is heading the investigation. (Conway Dep. Tr. at pp. 249–51 (stating that "I was actually interviewed by the lawyers.").)

In light of this evidence, the Court finds Plaintiffs' numerous factual assertions that Mayor Kenney is conducting the investigation misleading. (*See* Doc. No. 92 at pp. 14 (referring to the "Mayor's investigation"), 16 (representing that counsel confirmed "Mayor Kenney has indeed conducted an investigation"), 16 (misinterpreting Defendant Conway's testimony as saying "he, too, was interviewed as part of Mayor Kenney's investigation"), 17 ("Mayor Kenney's investigation"), 18 ("Mayor Kenney's investigation"), 19 ("Mayor Kenney's investigation"), 22 ("Mayor Kenney has specifically investigated the Police Department's mishandling of [ ] Plaintiffs' sexual harassment complaints."), 25 ("Mayor Kenney's investigation"), 25 (asserting that Mayor Kenney has "conducted his own investigation concerning Plaintiffs' complaints"), 26 (stating that "Mayor Kenney oversaw an investigation"), 27 (concluding that "Mayor Kenney also has a central role in the investigation into the Police Department's mishandling of sexual harassment complaints").) Plaintiffs' counsel is warned that in the future, we will not take such mischaracterizations lightly, and any representations made to the Court should be above questioning.

"unique personal knowledge" concerning it.[7]  *See Tomaszewski*, 2018 WL 6590826, at *3 ("Mere knowledge or awareness of information that may be helpful if discovered is insufficient." (quotation marks omitted)); *cf. Hankins*, 1996 WL 524334, at *2 ("That the Mayor signed off on changes to job descriptions approved and submitted by the Civil Service Commission . . . does not demonstrate that he has personal knowledge of the reasons why such changes were proposed or why . . . [the] decisions of various agencies were made.").

B.

As for the second requirement, Plaintiffs must "show that the proposed deposition is essential to [Plaintiffs'] case." *Tomaszewski*, 2018 WL 6590826, at *4.  Plaintiffs argue that "Mayor Kenney is the only person who can provide the evidence needed to support Plaintiffs' § 1983 claims," and specifically, evidence of the City's alleged policy of discrimination and harassment.  (Doc. No. 92 at p. 26.)  Plaintiffs assert that Mayor Kenney's deposition is "essential" because (1) "pursuant to the City's policies and procedures," the ERU "plays a critical role in investigating employee sexual harassment complaints," (2) the Mayor "was responsible for implementing the changes to the City's anti-harassment policies," (3) Mayor Kenney "met personally with Controller Rhynhart to review the 2018 Audit and to discuss how the City would implement her recommendations," and (4) the Mayor "oversaw an investigation conducted by the Mayor's Office regarding Plaintiffs' Complaint and sexual misconduct in the Police Department."  (*Id.*)

First, as discussed above, the fact that the ERU is charged with investigating sexual harassment complaints, does not mean that Mayor Kenney is the best, let alone the only, witness

---

[7] Defendants confirm that the "investigation is still underway and is being conducted by a law firm and the Mayor, himself, has not been briefed on the status of the investigation."  (Doc. No. 93 at p. 9.)

capable of discussing the ERU's processes. Second, as already mentioned, the evidence suggests the Mayor is *not* directly involved with implementing changes to the City's anti-harassment policies because he has delegated that responsibility to the ERU. Third, Controller Rhynhart has already provided extensive deposition testimony about her meetings with Mayor Kenney — indeed, Plaintiffs cite this very testimony in support of their Motion. Because Plaintiffs already have evidence related to these conversations, Mayor Kenney's deposition is not "essential" in that regard. Last, as noted above, the evidence shows that the Mayor is *not* himself investigating allegations of sexual misconduct in the Police Department. Instead, the Mayor's office is overseeing an investigation conducted by an independent law firm. In short, the Mayor appears to be many levels removed from the actual investigation, suggesting his testimony on this front is far from "essential." *Cf. Tomaszewski*, 2018 WL 6590826, at *4 (finding Mayor Kenney's testimony was not "essential" to the plaintiff's case because the adverse action "was determined by an independent Public Safety Committee").

Last, we emphasize that Plaintiffs have taken fourteen depositions and served Defendants with multiple rounds of interrogatories and document requests. *See, e.g.*, *id.* at *5 (opining that the Mayor's deposition would be duplicative, and thus not "essential to plaintiff's case," because the plaintiff had already received a significant amount of discovery documents and taken numerous depositions regarding the Mayor's administration). Their Motion, which relies heavily on the evidence that they have already accrued through discovery, suggests the deposition of the Mayor would contribute little, if any, new facts about these issues.

C.

Third, Plaintiffs must show that the sought-after evidence in the Mayor's deposition is not available through an alternative source or less burdensome means. *Id.* at *5; *Hankins,* 1996 WL

9

524334, at *1. Plaintiffs fail to meet this burden. Plaintiffs once again argue that Mayor Kenney's deposition is the most efficient means for learning about the Mayor's implementation of "the recommendations in the City Controller's 2018 Audit" and "the investigation into the Police Department's mishandling of sexual harassment complaints."[8] (Doc. No. 92 at p. 27.)

Contrary to Plaintiffs' assertion, there are multiple less burdensome means available for Plaintiffs to obtain this information. Indeed, Plaintiffs have already pursued some of those means, including deposing City Controller Rhynhart about her conversations with Mayor Kenney on changing the City's anti-harassment policies.[9] In addition to these discovery tactics, Plaintiffs could have deposed someone in the Mayor's Office of Labor or the ERU.[10] *See, e.g.*, *Tomaszewski*, 2018 WL 6590826, at *5. Indeed, Defendants note that they "provided Plaintiffs with the name of the Mayor's Office of Labor Relations' point person on EEO compliance," Director Monica Marchetti-Brooks, but Plaintiffs chose not to depose her. (*See* Doc. No. 93 at p. 7.)

IV.

In sum, Plaintiffs' newly acquired evidence fails to show that Mayor Kenney possesses unique personal knowledge, that his testimony is essential to Plaintiffs' case, and that this evidence

---

[8] As explained throughout this opinion, there is no evidence that Mayor Kenney has played "a central role" on either front. To the contrary, Plaintiffs' considerable evidence shows that Mayor Kenney has delegated implementation of the Audit recommendations to the ERU, that an investigation is being conducted by an independent firm, and that Mayor Kenney has little to no personal knowledge of either issue.

[9] Plaintiffs have also served a subpoena to produce documents on A. Nicole Phillips, Esq., an attorney with Montgomery McCracken Walker & Rhoads LLP, the law firm conducting the independent investigation. (*See* Doc. No. 94-1.) That subpoena, which is the subject of a separate discovery dispute between the parties, seeks "[a]ll documents relating to your investigation of sexual harassment complaints with the Philadelphia Police Department." (*Id.*)

[10] In addition, Defendants previously offered to allow Plaintiffs to "serve the Mayor with either specific interrogatories or specific requests for admissions." (Doc. No. 57 at p. 8.) Relying on that representation, the Court, in its previous order, noted that "Plaintiffs may serve on Defendants interrogatories and requests for admission asking specific questions about the policies of Mayor Kenney's administration. (Doc. No. 67 at p. 6.) It is unclear whether Plaintiffs chose to serve written discovery on the Mayor, but regardless, interrogatories and requests for admissions were an available, less-burdensome means of obtaining this information.

is not available through other, less-burdensome means.  Therefore, the Court continues to find there is good cause for a protective order prohibiting Mayor Kenney's deposition.

An appropriate Order follows.