# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDRA MCCOWAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PHILADELPHIA, et al., <br><br> Defendants. | CIVIL ACTION <br><br> NO. 2:19-cv-03326-KSM |

## MEMORANDUM

MARSTON, J.                                                                                                   November 4, 2020

Plaintiffs Audra McCowan and Jennifer Allen have sued the City of Philadelphia and eleven individually named defendants for claims of discrimination, retaliation, hostile work environment, intentional infliction of emotional distress, and assault and battery related to their employment with the Philadelphia Police Department. (Doc. No. 49.) Plaintiff Allen also alleges violations of the Fair Labor Standards Act's ("FLSA") protections for nursing mothers and FLSA retaliation against the City and ten of the individual defendants. (*Id.*)

Plaintiffs filed their initial complaint on July 29, 2019. (Doc. No. 1.) On August 20, 2019, Philadelphia Mayor James Kenney issued a press release announcing the resignation of Defendant Richard Ross, Jr. as Police Commissioner. (*See* Doc. No. 92-2.) In the press release, Mayor Kenney acknowledged recent allegations of sexual harassment as well as gender and racial discrimination within the Police Department, and stated that he planned to "enlist[ ] the help of an independent firm to investigate the recent allegations and to make recommendations to overcome some of the discrimination and harassment within the Department." (*Id.*; *see also* Doc. No. 94 at p. 4.)

Consistent with Mayor Kenney's statements, the City hired the law firm Montgomery McCracken Walker & Rhoads LLP to conduct "a comprehensive investigation and analysis of the claims of gender discrimination and sexual harassment within the Philadelphia Police Department ('PPD')." (Ltr. from Diana P. Cortes to Nicole Phillips at p. 1 (Oct. 2, 2019) [hereinafter "RFP"]; *see also* Doc. No. 94 at p. 4.) The firm's goal was to "provide recommendations to the Mayor regarding policies, practices, and procedures that will: improve the Police Department's working environment and culture; decrease claims of gender discrimination and sexual harassment; and minimize the City's exposure in future employment litigation." (RFP at p. 1.) The investigation remains pending but is reaching its conclusion.[1] (Oral Argument Tr. at 3:7–8.)

On July 31, 2020, Plaintiffs served a subpoena to produce documents on Attorney A. Nicole Phillips[2] of Montgomery McCracken. (*See* Doc. No. 94-1.) The subpoena orders Ms. Phillips, who is heading the investigation, to produce "[a]ll documents relating to your investigation of sexual harassment complaints within the Philadelphia Police Department, including but not limited to, complaints involving Audra McCowan, Jennifer Allen, Tela Kennedy, Vanessa Washington, Sarah DeBarberie, Sharon Conaway and/or Kelly Marks." (*Id.*) On August 31, 2020, Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Michael McCarrick, Timothy McHugh, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons (collectively "Defendants") filed a Motion to Quash the Subpoena Directed to Nonparty A. Nicole Phillips, Esquire.[3] (Doc. No. 94.) They contend that any documents

---

[1] During oral argument Attorney A. Nicole Phillips with Montgomery McCracken stated she is "coming towards the end" of the investigation but has "not totally finalized" the report because she is "waiting to hear back" from the City about a date for the firm to present its findings. (Oral Argument Tr. at 7:4–17.)

[2] During a status conference with the parties, I disclosed that I worked with and briefly supervised Ms. Phillips while we were both at the U.S. Attorney's Office for the Eastern District of Pennsylvania. The parties confirmed that they do not object to me ruling on this Motion.

[3] "As a general rule, only the subpoenaed party may seek to quash a subpoena." *Green v. Cosby*, 314 F.R.D. 160, 169 n.5 (E.D. Pa. 2016). "'However, an exception to this rule exists where a party claims that it has

responsive to the subpoena are protected by the attorney-client privilege, the deliberative process privilege, and the self-critical analysis privilege. (*See generally id.*) Plaintiffs filed their opposition to the Motion on September 9, 2020, arguing that none of the privileges apply, and therefore, the subpoena properly seeks relevant, non-privileged information. (*See generally* Doc. No. 96.)

The Court held oral argument on the Motion on October 27, 2020, which Ms. Phillips attended. After the argument, Defendants submitted a copy of the request for proposal that the City used to retain Ms. Phillips and an email reiterating their contention that the attorney-client privilege applies here.[4] (*See* Email from Daniel Unterburger, Esq. to Judge Marston's Chambers (Oct. 27, 2020).) Plaintiffs responded with an email restating their argument that Defendants failed to carry their burden of showing that the attorney-client privilege applies and has not been waived. (Email from Ian Bryson, Esq. to Judge Marston's Chambers (Oct. 27, 2020).) Plaintiffs also argued that we "should disregard any argument regarding non-waiver being presented in

---

some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty.'" *Id.* (quoting *New Park Entmt. LLC v. Elec. Factory Concerts, Inc.*, No. 98-775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000)); *see also Ziner v. Cedar Crest Coll.*, Civil Action No. 04-3491, 2006 WL 8409873, at *2 (E.D. Pa. May 30, 2006) (recognizing an exception to the general rule where "the party seeks to quash based on claim of privilege relating to the documents being sought"). Here, the City has standing to challenge the subpoena on privilege grounds. *See Ziner*, 2006 WL 8409873, at *2 ("'It is clear that the attorney-client privilege is one that is owned by the client . . . and that he has standing to appeal an order directed to his attorney that affects the privilege.'" (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir. 1979))).

[4] In addition to their email, on November 1, 2020, Defendants filed a letter in reply to Plaintiffs' response brief. (Doc. No. 110.) According to the Court's Policies and Procedures, "[r]eply and sur-reply briefs may be filed without leave of the Court," however "[t]hey *must be filed and served within seven (7) days* of service of the brief to which the reply or sur-reply responds." (*See* The Honorable Karen Spencer Marston, *Policies and Procedures* at pp. 9–10 (emphasis added).) Because Defendants filed their reply 53 days after Plaintiffs' response brief and only after the Court held oral argument, the reply brief is untimely and the Court will not consider it in deciding this Motion. *See Campbell v. Oxford Elecs., Inc.*, Civ. A. No. 07-4061, 2008 WL 2978550, at *3 n.5 (E.D. Pa. July 31, 2008) (denying the defendant's motion to file a reply brief as untimely because it was filed 22 days after the plaintiff's response brief and the Court's policies and procedures require all reply briefs to be submitted within 7 days); *In re U.S. Fax, Inc.*, 114 B.R. 70, 71 (E.D. Pa. 1990) (refusing to consider the debtor's "letter to the court which purports to be a reply brief" because it was "untimely and was never filed of record"); *Galligani v. N.Y.C. Reg'l Police Dep't*, Civ. A. No. 1:10-CV-1136, 2011 WL 3841610, at *1 (M.D. Pa. Aug. 30, 2011) (granting motion to strike reply brief from the record because it was filed after the deadline); *Leer Elec., Inc. v. Schmerin*, Civ. A. No. 3:08-CV-1785, 2011 WL 6026139, at *1, *7 (M.D. Pa. Dec. 2, 2011) (same).

Defendant's [sic] supplemental briefing emailed to the Court this evening" because Defendants failed to address that issue in their initial briefing or at oral argument. (*Id.*) After considering the relevant filings and the parties' arguments, the Court will deny Defendants' Motion to Quash.

I.

Before turning to the parties' substantive arguments, the Court addresses one preliminary matter. As Plaintiffs note in their response brief, Defendants failed to comply with Local Civil Rule 26.1(f), which states that "no motion or other application pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." Local R. E.D. Pa. 26.1(f). (*See* Doc. No. 96 at p. 3.) Defendants did not attach the required certification or otherwise aver that they met and conferred with Plaintiffs' counsel before filing this Motion to Quash. Although the Court will consider the merits of Defendants' Motion, they are warned that in the future they must fully comply with Local Civil Rule 26.1(f), which requires a meaningful attempt to meet and confer with opposing counsel and a certification to that effect.

II.

A subpoena for discovery materials is governed by Federal Rules of Civil Procedure 26 and 45. *See Green v. Cosby*, 314 F.R.D. 160, 169 (E.D. Pa. 2016) ("A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)."). Under Rule 26(b)(1), the subpoenaing party must demonstrate that its requests "fall within the general scope of discovery." *Id.* In other words, they must show that the subpoena seeks "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If the requests are consistent with Rule 26(b)(1), "the burden shifts to the party opposing the subpoena to establish that Rule

4

45(d)(3) provides a basis to quash the subpoena." *Green*, 314 F.R.D. at 169. A district court is required to quash or modify a subpoena that: (1) fails to allow a reasonable time to comply, (2) requires compliance beyond the geographical limits of Rule 45(c), (3) requires disclosure of privileged or protected materials and no exception or waiver applies, or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A).

Defendants do not argue that the subpoena — which requests documents related to an investigation into gender discrimination and sexual harassment within the Philadelphia Police Department — seeks irrelevant materials, and they likely lack standing to do so.[5] *See Ziner*, 2006 WL 8409873, at *2 ("In this case, defendant lacks standing to raise issues of either relevance or undue annoyance" because the "subpoena was issued directly to Wendy Schermer, an independent contractor," and therefore, "[a]ny allegations that the documents sought are irrelevant or unduly burdensome belong solely to Ms. Schermer and may not be asserted by the college on her behalf."). Instead, Defendants argue that the Court must quash the subpoena because it seeks privileged materials. Specifically, Defendants argue that the subpoenaed documents are covered by the attorney-client privilege, the deliberative process privilege, and the self-critical analysis privilege. We address each argument in turn.

---

[5] During oral argument, Defendants for the first time referred to the subpoena as a "deep sea fishing" expedition. (Oral Argument Tr. at 4:11.) Similarly, in their reply brief, Defendants "maintain [their] position that Montgomery McCracken's investigation is not relevant to this instant litigation." (Doc. No. 101 at p. 2.) The Court does not consider Defendants' relevancy argument, which was raised for the first time at oral argument and in an untimely reply brief. *See Tomasko v. Iran H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (finding that "the specific objections that Weinstock raised for the first time at oral argument in the District Court have been waived"); *In re Corio*, 371 F. App'x 352, 355 (3d Cir. 2010) (finding that the bankruptcy court did not abuse its discretion when it refused to consider an argument raised for the first time during oral argument); *Doherty v. Allstate Indemnity Co.*, Civ. A. No. 15-05165, 2017 WL 1283942, at *23 (E.D. Pa. Apr. 6, 2017) ("[B]ecause this argument was asserted for the first time in Doherty's reply and at oral argument, it is waived."). And, as mentioned above, even if we were to consider Defendants' argument, they likely lack standing to challenge the subpoena on relevancy grounds. *See Ziner*, 2006 WL 8409873, at *2. Instead, any relevancy objection should have been asserted by Montgomery McCracken because the subpoena is directed to the firm and the firm's attorney. However, the firm has not independently challenged the subpoena, and during oral argument, Ms. Phillips confirmed that the firm relies entirely on Defendants' Motion. (Oral Argument Tr. at 3:9–15.)

III.

First, Defendants argue that documents related to Ms. Phillips's investigation are protected by the attorney-client privilege. "When a federal-court action contains both federal- and state-law claims," as is the case here, "the court applies federal privilege law." *Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 150 (E.D. Pa. 2011). The Third Circuit has enumerated the traditional elements of the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979). "[B]ecause the privilege obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Id.* at 1245 (quotation marks omitted).

"[C]laims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion." *United States v. Rockwell Int'l.*, 897 F.2d 1255, 1265 (3d Cir. 1990). The party asserting attorney-client privilege bears the burden of demonstrating for each document that the privilege applies and has not been waived. *See, e.g.*, *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001) ("[T]he party asserting the [attorney-client] privilege has the burden of proving its applicability *and non-waiver*."). This "burden . . . can be met only by an evidentiary showing based on competent evidence and cannot be 'discharged by mere conclusory or *ipse dixit* assertions.'" *Id.* (quoting

6

*Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996)); *see also Caruso v. Coleman Co.*, No. 93-6733, 1995 WL 384602, at *1 (E.D. Pa. June 22, 1995) (explaining that a "general allegation of privilege is insufficient," and "the proponent must show by affidavit that precise facts exist to support the claim of privilege"); *Fouad v. Milton Hershey Sch. & Trust*, Civ. No. 1:19-CV-253, 2020 WL 3265245, at * 13 (M.D. Pa. June 17, 2020) ("[A] party claiming the privilege must present record evidence, such as affidavits, and sufficient facts to bring the communication at issue within the narrow scope of the privilege." (quotation marks omitted)). Providing a privilege log or "[s]ubmitting documents to the Court for *in camera* review does not relieve a party from the requirement of submitting affidavits or other evidence in support of the asserted privilege." *Greene, Tweed of Del., Inc.*, 202 F.R.D. at 423–24.

Defendants have not carried their burden of showing that the subpoenaed documents are protected by the attorney-client privilege. There are two fatal flaws with Defendants' argument. First, Defendants have provided only a blanket assertion of attorney-client privilege. *See Rockwell Int'l*, 897 F.2d at 1265 ("[C]laims of attorney-client privilege must be asserted document by document."); *Robocast Inc. v. Microsoft Corp.*, No. 1:13-mc-00104-RGA, 2013 WL 1498666, at *2 (D. Del. Apr. 12, 2013) ("Because courts must be able to rule with specificity on issues of attorney-client privilege, the party seeking the privilege must establish it as to the specific . . . records requested."). Defendants have not created a privilege log, provided a description of the documents they seek to withhold, or submitted the documents for in camera review.[6] *See Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 187 (D.N.J. 2012) ("To the extent [the defendant] seeks to assert the attorney-client privilege or work product protection to

---

[6] Although neither a privilege log nor *in camera* review of the documents would, on its own, be sufficient for the Court to find that the attorney-client privilege applies, a privilege log would certainly have assisted the Court in understanding which documents Defendants are trying to withhold.

7

prevent the production of any documents, the Court cannot evaluate the propriety of same without reference to a specific entry or entries on a proper privilege log."). This is likely because Defendants do not know which documents they are trying to protect. During oral argument Defendants' counsel admitted he *does not know* which documents Ms. Phillips reviewed during her investigation because he has not seen the documents himself. (Oral Argument Tr. at 12:11–14 (stating that Ms. Phillips's "investigation is a little bit above my pay grade").) The Court is at a loss to understand how it can evaluate the applicability of the attorney-client privilege when Defendants do not even know "what specific documents in dispute have been withheld, who created them, to whom they were sent and/or copied, and the subject of the documents."[7] *Memory Bowl*, 280 F.R.D. at 187 (finding that without this information, "the Court simply cannot determine whether the claimed privilege is appropriate").

Second, other than the RFP, which Defendants only submitted *after* the Court specifically questioned Defendants during oral argument about what evidence they had submitted, Defendants have provided *no* evidence in support of their privilege claim.[8] They did not submit affidavits describing the scope of Ms. Phillips's investigation or descriptions of the documents that they seek to protect, including the names of the individuals involved and the subject matter of the communication. And to the extent Defendants could show that the documents were at least initially privileged, which is doubtful given the fact Defendants admitted during oral

---

[7] Because Defendants have not even attempted to meet their burden of demonstrating that the attorney-client privilege applies, we do not opine on Plaintiffs' alternative argument that the privilege does not apply because the purpose of the investigation is to provide "business/human resources advice rather than legal advice." (Doc. No. 96 at p. 9.)

[8] Throughout oral argument Defendants referred to the RFP as "a publicly available request for proposals, which is what we used to engage Montgomery McCracken in the legal services that they have been providing to the City and continue to provide to the City." (Oral Argument Tr. at 10:24–11:25.) However, in their email to the Court following oral argument, Defendants' counsel clarified that he "misspoke earlier regarding the public availability of this RFP," which was actually "issued as a 'confidential request for legal advice.'" (*See* Email from Daniel Unterburger, Esq. to Judge Marston's Chambers.)

8

argument they did not even know what the documents are, they failed to show that this privilege was not waived. Defendants did not submit evidence of non-waiver, did not mention waiver in their initial brief, and chose not to file a timely reply brief addressing Plaintiffs' waiver arguments.[9]  *Cf. Greene, Tweed of Del., Inc.*, 202 F.R.D. at 423–24 (holding that the defendant "failed to provide any grounds in its opposition to plaintiff's motion for withholding the specific documents" and therefore, the defendant failed to carry "its burden of demonstrating the non-waiver of the privileged documents which plaintiff seeks to compel").

Under these circumstances, we cannot find that Defendants have carried their burden of demonstrating that the attorney-client privilege applies and has not been waived. *See Robocast Inc.*, 2013 WL 1498666, at *2 ("Defendants' blanket assertion of privilege . . . does not meet the burden of Rule 45(c)(3)(A)(iii)."); *Green, Tweed of Del., Inc.*, 202 F.R.D. at 423–24 ("Other than the very general descriptions given in the privilege logs" and the defendant's unsuccessful attempt to limit the scope of waiver, the defendant "has failed to provide any grounds in its opposition to plaintiff's motion . . . . Thus, [the defendant] has failed to meet its burden of demonstrating the non-waiver of the privileged documents which plaintiff seeks to compel."); *Cty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, No. 3:10-CV-1559, 2014 WL 1516152, at *1 n.2 (M.D. Pa. Apr. 15, 2014) ("In the instant round of motion practice, the

---

[9] Defendants chose not to file a timely reply brief despite Plaintiffs' lengthy argument that Defendants' future assertion of the *Faragher-Ellerth* affirmative defense would waive the attorney-client privilege for Ms. Phillips's investigation. Defendants briefly touched on the *Faragher-Ellerth* defense during oral argument, but their statements did little to refute Plaintiffs' argument. Defense counsel merely stated that "Montgomery McCracken's investigation has not been used by the City to prevent and promptly correct sexual harassment in the workplace . . . because the investigation hasn't been concluded and there are no recommendations or reports issued with the City at this point." (Oral Argument Tr. at 8:12–19.)  When questioned at length by the Court about whether Defendants intend to rely on Ms. Phillips's report once it is released, Defendants stated that they "don't believe" they will use it, but they are "reserving judgment" on that issue and "it would depend on the timing." (*Id.* at 8:5–7, 24–25; *id.* at 9:6–9.)  It wasn't until Defendants' reply brief — filed weeks after the deadline — that Defendants stated with some finality that the *Faragher-Ellerth* "affirmative defense is plainly unavailable to the City." (Doc. No. 101 at p. 2 (incorrectly representing that this argument first "arose at Tuesday's oral argument").)  As mentioned above, the Court does not consider Defendants' untimely brief in deciding this Motion. *See supra* n.3.

only evidence submitted for the court's consideration is the defendants' bare-bones privilege log itself, which falls far short of satisfying the requisite burden of proof.").[10]

For those reasons, the Court rejects Defendants' broad assertion of the attorney-client privilege.

IV.

Next, Defendants argue that the deliberative process privilege precludes production of the subpoenaed documents. (Doc. No. 94 at p. 6.) The deliberative process privilege protects "predecisional communications" and documents that disclose the Government's deliberative process." *Cozen O'Connor v. U.S. Dep't of Treas.*, 570 F. Supp. 2d 749, 780–81 (E.D. Pa. 2008). It "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *see also Cozen O'Connor*, 570 F. Supp. 2d at 870–71 (finding the agency properly withheld "draft versions of evidentiary memoranda, personal notes, and inter-agency documents containing pre-decisional analyses and discussion provided to [the agency] in its decision-making").

---

[10] Even if the attorney-client privilege applied, that privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981); *see also Sullivan*, 274 F.R.D. at 151 ("[I]t is the communications and not the underlying facts that are privileged."). In addition, "[t]he protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications, and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories." *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 474 (E.D. Pa. 2008). Given the narrow scope of the attorney-client privilege, we disagree with defense counsel's assertion that any "documents that Ms. Phillips created, looked at, [or] viewed . . . are all covered by attorney-client privilege." (Oral Argument Tr. at 20:20–23.) Instead, those documents "are generally protected by the work-product privilege." *Sullivan*, 274 F.R.D. 147 at 151. During oral argument, Defendants confirmed that they are not asserting work product protection because they do not believe Ms. Phillips's investigation was done in anticipation of litigation. (Oral Argument Tr. at 18:17–23.)

Here, Defendants argue that the deliberative process privilege protects Ms. Phillips's investigation because she was retained to "conduct an investigation to, among other things, inform municipal policymaking." (Doc. No. 94 at pp. 7–8; *see also* Oral Argument Tr. at 15:6–7 (describing Ms. Phillips investigation as "the essence of informing municipal policymaking").) Plaintiffs counter that Defendants failed to properly assert the privilege. (Doc. No. 96 at p. 13.) Specifically, Plaintiffs argue that the privilege may only be invoked by the head of the government agency or department with control over the requested information. (*Id.*) We agree with Plaintiffs.

The government entity bears the burden of showing it is entitled to the deliberative process privilege. *See Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 853 (3d Cir. 1995). Once the government satisfies its burden, "the party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest." *Id.* (explaining that the privilege is "not absolute"). "Thus a party's assertion of the deliberative process privilege requires a two-step review in the district court." *Id.* First, we must determine "whether the communications are in fact privileged." *Id.* Second, we must "balance the parties' interests" to determine whether the privileged documents are nonetheless discoverable. *Id.*

"[T]o assert the deliberative process privilege the government must satisfy three procedural requirements." *Del. River Network v. Del. River Basin Comm'n*, Civ. A. No. 10-5639 (AET), 2013 WL 12430331, at *2–3 (D.N.J. Apr. 15, 2013). First, "the head of the department with control over the matter must make a formal claim of privilege after actually considering the issue." *Id.* at *3 ("The formal claim of privilege must be lodged by the officials themselves and not by attorneys for the agency," and the "officials must personally review the materials to determine that the public interest . . . would best be served by nondisclosure.") (quotation marks omitted); *see also United States v. Reynolds*, 345 U.S. 1, 7–8 (1953) ("There must be formal claim of privilege, lodged by

11

the head of the department which has control over the matter, after actual personal consideration by that officer."); *Three Bros. Supermarket Inc. v. United States*, Civ. A. No. 2:19-cv-2003-KSM, 2020 WL 5231575, at *2 (E.D. Pa. Sept. 1, 2020) (same). "Second, the relevant department head must provide an affidavit supporting the assertion of the privilege," which gives "precise and certain reasons for preserving the confidentiality of the governmental communications." *Del. River Network*, 2013 WL 12430331, at *3 (quotation marks omitted). "Third, the government must identify and describe the information or the documents sought to be shielded from disclosure." *Id.*

This process ensures that a claim of privilege is not casually invoked. *See United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980). In *O'Neill*, the Third Circuit emphasized the importance of properly asserting any claim of privilege:

> [This process] gives each party the opportunity to analyze the request and the corresponding objection, and gives the court a fuller record on which to base its ruling. It also provides some assurance that the party asserting the privilege has directed his or her attention to the scope of the claim being asserted.

*Id.*; *see also, e.g.*, *Scott Paper Co. v. United States*, 943 F. Supp. 489, 496 (E.D. Pa. 1996) (describing the deliberative process privilege as a form of executive privilege). In *O'Neill*, the United States Civil Rights Commission subpoenaed the Commissioner of the Philadelphia Police Department and other Department officials, requesting documents related to investigations of brutality by the named officers. *O'Neill*, 619 F.2d at 224. The officials refused to provide some of the documents, claiming multiple privileges, including the executive or "governmental" privilege. *Id.* at 225. This privilege was "alluded to in the City's legal memorandum" and mentioned by the City Solicitor during oral argument. *Id.* The Third Circuit found "unsatisfactory the manner in which the City asserted its claim of privilege," noting in particular that it was "invoked orally, although there was ample opportunity to prepare a written formal claim of

privilege." *Id.* In addition, the privilege was invoked by the attorney for the City instead of the department head, and there was "no indication that the privilege was being invoked by the responsible public official on the representation that he had personally examined the documents." *Id.* Last, "it was a broadside invocation of privilege, which failed to designate with particularity the specific documents or file to which the claim of privilege applied." *Id.*; *cf. Resident Advisory Bd. v. Rizzo*, 97 F.R.D. 749, 752 (E.D. Pa. 1983) (ordering disclosure of documents after finding that the agency "has not properly asserted the predecisional deliberative process privilege").

Like the Third Circuit in *O'Neill*, we find that Defendants have failed to properly invoke the deliberative process privilege because they are asserting the privilege through a legal brief prepared by defense counsel, instead of an affidavit prepared by City officials after personally reviewing each of the allegedly privileged documents. (*See* Doc. No. 94 at pp. 7–8.) Although Defendants argue that they do not know who the appropriate "head of the department" is here, it is their burden to determine who is the appropriate official in order to properly invoke this privilege. Counsel for the City is clearly not the head of a department and cannot assert the privilege. (Oral Argument Tr. at 15:24–16:2.) For those reasons, we find that the deliberative process privilege does not apply and decline to quash the subpoena on that ground.

V.

Last, Defendants argue that the self-critical analysis privilege precludes production of the documents sought in Plaintiffs' subpoena. (Doc. No. 94 at p. 8.) Some courts have recognized a "self-critical, or self-evaluation, privilege" that protects "evaluative materials created in accordance with governmental requirements, or for purposes of self-improvement." *Craig v. Rite Aid Corp.*, Civ. A. No. 4:08-CV-2317, 2010 WL 5463292, at *2 (M.D. Pa. Dec. 29, 2010). However, the Third Circuit has never recognized this privilege, and other appellate courts have

rejected its application. *See Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.12 (3d Cir. 2009) (noting that the privilege "has never been recognized by this Court and we see no reason to recognize it now"); *see also Craig*, 2010 WL 5463292, at *3 n.1 (collecting cases from the Fourth, Fifth, Seventh, Eighth, Ninth, and D.C. Circuits).

Following *Alaska Electrical*, district courts within the Third Circuit have also largely "declined to recognize or apply a self-critical analysis privilege." *Id.* at *4 (collecting cases); *see also Bell v. Lockheed Martin Corp.*, Civ. No. 08-6292 (RBK/AMD), 2011 WL 13238270, at *3 (D.N.J. Jan. 31, 2011) ("[T]he Court concurs with the reasoning in *Craig v. Rite Aid*" and finds "that footnote twelve in *Alaska Electrical Pension Fund* is persuasive authority from the Third Circuit which calls into question the continuing viability of the self-critical analysis privilege in this Circuit."); *Smith v. Life Investors Ins. Co. of Am.*, No. 2:07-cv-681, 2009 WL 3364933, at *9 (W.D. Pa. Oct. 16, 2009) ("The Court also agrees with Plaintiff that the 'self critical analysis privilege' is not recognized by Pennsylvania or the Third Circuit and does not apply." (citing *Alaska Elec. Pension Fund*, 554 F.3d at 351 n.12)).[11]

"Furthermore, even if the privilege has, at times, been recognized within this Circuit, it appears that it has not been widely applied in cases such as the one at bar, where a defendant has voluntarily undertaken an internal review of its own practices and policies, in contrast to a situation where an entity prepared an internal report that was compelled by law or government regulation." *Craig*, 2010 WL 5463292, at *5 ("Defendants may not rely upon a broad self-critical analysis privilege to withhold documents related to Defendants' internal assessment of

---

[11] In support of their argument that the self-critical analysis privilege applies, Defendants cite two cases from this District, both of which were decided before the Third Circuit's opinion in *Alaska Electrical*. *Compare Melhorn v. N.J. Transit Rail Operations, Inc.*, 203 F.R.D. 176, 178 (E.D. Pa. 2001) *and Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 433 (E.D. Pa. 1978), *with Alaska Elec. Pension Fund*, 554 F.3d at 351 n.12 (2009). Defendants also reference *Craig v. Rite-Aid*, but in that case, the Middle District of Pennsylvania refused to recognize the self-critical analysis privilege in part because of the Third Circuit's statements in *Alaska Electrical*.

their compliance with the FLSA, labor laws, and existing bargaining agreements, generated as part of Defendants' store restructuring program.").

We join the numerous courts in this and other Circuits who have refused to acknowledge a broad self-critical analysis privilege.[12]

## VI.

Defendants have not carried their burden of demonstrating that the attorney-client privilege applies and has not been waived, nor have they properly asserted the deliberative process privilege. The Court declines to recognize the self-critical analysis privilege.[13] Because Defendants have not shown that the subpoena seeks privileged information and documents, we will deny Defendants' Motion to Quash.[14]

---

[12] During oral argument, Defendants asserted that even if we do not "recogniz[e] the self-critical analysis privilege," we should consider "the chilling effect of . . . [the City] being forced to reveal every single document that goes into an investigation commissioned by an outside vender." (Oral Argument Tr. at 17:22–18:8.) The Court is sympathetic to Defendants' argument, but we do not believe this opinion will have the chilling effect that Defendants anticipate. We recognize that in many instances, documents related to a law firm's investigation into City policies will be protected by the attorney-client privilege, work product protection, and/or deliberative process privilege. But as explained throughout this opinion, the City has woefully failed to carry its burden of demonstrating that any of those privileges or protections apply in this case.

[13] At the end of the reply brief, Defendants state that if the Court disagrees with their assertion that the "entire investigation is protected by the attorney-client privilege, deliberative process privilege, and self-critical analysis privilege. . . Montgomery McCracken will prepare a log of privileged documents for the Court to review in-camera." (Doc. No. 110 at p. 2.) As should be abundantly clear by now, that would be highly improper. First, the Court is not denying Defendants' Motion to Quash solely because they failed to produce a privilege log or submit the documents for *in camera* review. As mentioned, Defendants must support their assertion of the attorney-client privilege with *evidence* and *cannot* merely provide a privilege log or submit the documents to the Court. Second, to the extent discovery disputes arise in the future, Defendants and Montgomery McCracken are *required* by this Court's Local Rules to meet and confer with Plaintiffs' counsel *in good faith* before filing any discovery motions. To be absolutely clear, neither Defendants nor Montgomery McCracken should merely submit a privilege log and the documents to the Court.

[14] Because the Court will deny the Motion to Quash, we feel we must address a few statements made by the Defendants related to the scope of the subpoena. First, during oral argument, Defendants stated that other than Plaintiffs' EEOC complaints, Ms. Phillips did not review or rely on documents related to the other individuals listed in the subpoena, and therefore, "[t]here's nothing to produce even if these things weren't protected by a number of privileges." (Oral Argument Tr. at 6:15–17; *see also id.* at 11:17–18; Doc. No. 110.) Contrary to Defendants' suggestion, the subpoena seeks "[a]ll documents relating to [Ms. Phillips's] investigation," and is not limited to her review of complaints filed by the listed individuals. Second, Defendants also argued that "Montgomery McCracken was not engaged to investigate sexual harassment claims," (Oral Argument Tr. at 4:25–5:4; *see also* Doc. No. 110 (stating that Ms. Phillips's investigation did not "analyze specific sexual harassment claims" or the "merits of any claims")), again suggesting that there are no documents responsive to the subpoena. But that claim is directly refuted by the RFP, which states the City hired Montgomery McCracken "to conduct a comprehensive investigation

15

An appropriate order follows.

---

and analysis of the *claims of gender discrimination and sexual harassment* within the Philadelphia Police Department ('PPD') specifically." (RFP at p. 1 (emphasis added).)