**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AUDRA MCCOWAN, et al.**, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 19-3326-KSM** |
| **CITY OF PHILADELPHIA, et al.**, | |
| Defendants. | |

**MEMORANDUM**

**MARSTON, J.**                                                                **January 14, 2021**

      Plaintiffs Audra McCowan and Jennifer Allen have filed a 24-count complaint against the City of Philadelphia and eleven individual defendants in their official and individual capacities, bringing claims of discrimination, retaliation, hostile work environment, intentional infliction of emotional distress ("IIED"), assault and battery, violations of Pennsylvania's Whistleblower Law, and violations of the Family and Medical Leave Act ("FMLA") related to their employment with the Philadelphia Police Department.  (*See generally* Doc. No. 49.)  Allen also alleges violations of the Fair Labor Standards Act's ("FLSA") protections for nursing mothers and FLSA retaliation by the City and ten of the individual defendants.  (*Id.*)  On September 18, 2020, Plaintiffs filed a Motion to Compel Discovery Responses in connection with their First, Second, Third, Fourth, and Fifth Sets of Requests for Production of Documents directed to Defendant City of Philadelphia.  (*See* Doc. No. 100.)  The City filed a response brief.  (Doc. No. 102.)  For the reasons discussed below, the Court will grant the motion in part and deny the motion in part.

I.

"A party moving to compel bears the initial burden of showing the relevance of the requested information." *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). "The burden then shifts to the party resisting discovery to justify withholding it." *Id.* The party resisting discovery may meet this burden by showing that the requested discovery either "(1) does not come within the broad scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 193 (M.D. Pa. 2011) (quoting *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

II.

Plaintiffs have served the City with five sets of document requests. (*See* Doc. No. 100 at pp. 1–2.) Their motion takes issue with three aspects of the City's response.

A.

First, the City responded to Plaintiffs' First Request for Production by sending Plaintiffs' counsel a "single pdf file of nearly two thousand unorganized documents bates numbered CITY 3223–4935," without any "indication of which pages are responsive to which Requests."[1] (*Id.* at pp. 2–3.) A few days later, the City produced an additional 146 pages of documents, but again failed to provide any "indication of which pages are responsive to which Requests." (*Id.*) Plaintiffs argue that this production violates Federal Rule of Civil Procedure 34(b)(2)(C). (*Id.*)

---

[1] Plaintiffs also argue that the City's response is inadequate because there is "no indication whether any documents have been withheld and on what basis." (Doc. No. 100 at pp. 2–3.) In its response, the City confirmed that "[n]o responsive documents were withheld." (Doc. No. 102 at pp. 2–3 ¶¶ 7–8.) Therefore, the Court does not address this argument further.

The City does not address this argument other than to state generally, "Denied." (*See* Doc. No. 102 at pp. 2–3.)

Rule 34 requires the producing party to "produce documents as they are kept in the usual course of business" or "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); *see also Directory Dividends, Inc. v. SBC Commc'ns, Inc.*, No. Civ.A. 01–CV–1974, 2003 WL 23208804, at *1 (E.D. Pa. Dec. 31, 2003) ("If Plaintiff did not produce its documents as they are usually kept, Plaintiff is ordered to do so, or to organize and label the documents to correspond with [the defendant's] document requests."). "Rule 34(b) is meant to prevent a party from obscuring the significance of documents by giving some structure to the production." *Synventive Molding Sols., Inc. v. Husky Injection Molding Syst., Inc.*, 262 F.R.D. 365, 370 (D. Vt. 2009) (quotation marks omitted).

"The party arguing that it produced documents as they are kept in the usual course of business bears the burden of showing the documents were so kept." *Id.* (quotation marks omitted). To meet this burden, the producing party may, for instance, provide evidence of "where the documents were maintained, who maintained them, and whether the documents came from one single source or file or from multiple sources or files." *Id.* at 371 n.9 (quotation marks omitted); *cf. In re Atomica Design Grp., Inc.*, 591 B.R. 217, 238 n.16 (Bankr. E.D. Pa. 2018) ("Pecci provided credible testimony . . . that, in transferring records from file folders to the boxes in the conference room, he kept all documents in the same order and engaged in no independent organization, which is sufficient to satisfy Rule 34(b)(2)(E)(i).").

Because the City does not substantively respond to Plaintiffs' arguments, it has not carried its burden of showing that it produced the documents "as they are kept in the usual course of business." Therefore, the Court grants Plaintiffs' motion on this issue and orders the City to

produce its documents either "as they are kept in the usual course of business" or organized and labeled "to correspond to the categories in the request."

## B.

Second, Request No. 6 of Plaintiffs' First Set of Requests for Production seeks "Defendants' personnel files, performance evaluations, and formal discipline reports or write ups." (Doc. No. 100 at p. 3; Doc. No. 100-4 at p. 2.) Plaintiffs allege that the City provided the personnel files for all Defendants except Officer Curtis Younger and former Police Commissioner Richard Ross, Jr.[2] (Doc. No. 100 at p. 3.) The City responds that it produced the personnel files for Younger and Ross. (Doc. No. 102 at p. 3.) Because the City has given Plaintiffs the requested documents, the Court denies the motion as moot on this issue.

## C.

Third, Request No. 10 of Plaintiffs' Second Set of Requests for Production seeks the "memorandum section for each Internal Affairs and/or Equal Employment Opportunity (EEO) file dated 2014 to present, as it pertains to any complaints of gender discrimination, sexual assault, or sexual harassment" within the Philadelphia Police Department. (Doc. No. 100 at pp. 3–4; Doc. No. 100-11 at p. 7.) Defendants have not produced any documents responsive to this request.

Plaintiffs argue that the City's investigations of similar complaints of sexual harassment "are relevant to Plaintiffs' Section 1983 claims" because under *Monell v. Department of Social Services*, it is Plaintiffs' burden to prove that the Police Department had a "policy, custom, or

---

[2] In its response to Request No. 1 of Plaintiffs' Second Set of Requests, the City refers Plaintiffs to "the personnel files of the parties." Plaintiffs argue that this response is also inadequate to the extent Defendants have not provided the personnel files for Younger and Ross. (Doc. No. 100 at p. 3.)

practice of failing to adequately investigate reports of sexual harassment." [3]  (Doc. No. 100 at

p. 4.)  The City responds that Plaintiffs' request is "not proportional to the needs of this case"

because Plaintiffs have not pled a "legally sufficient *Monell* claim."  (Doc. No. 102 at p. 3 ¶¶ 11–

12.)  Specifically, the City argues that Plaintiffs have "failed to meet the pleading standard for a

*Monell* claim," because they have not identified a City "custom or policy, and specifi[ed] what

exactly that custom or policy was."  (*Id.* at p. 3 ¶ 14 (quotation marks omitted).)

In *Monell*, the Supreme Court held that a municipality is liable under 42 U.S.C. § 1983

for the acts of its employees only when the plaintiff's injury was caused by a municipal policy or

custom.  436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury that the government as an entity is responsible under § 1983.");

*see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("When a suit against

a municipality is based on § 1983, the municipality can only be liable when the alleged

constitutional transgression implements or executes a policy, regulation, or decision officially

adopted by the governing body or informally adopted by custom." (quotation marks omitted));

*see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found

---

[3] Plaintiffs also argue that this information is relevant because "Defendant asserts a *Faragher*
Affirmative Defense, which also turns on the City's policies and procedures for investigating sexual
harassment complaints and retaliating against complainants."  (*Id.* at p. 4.)  The City denies this
allegation, arguing that "Defendants have asserted no defenses as they have not yet answered plaintiffs'
Complaint."  (Doc. No. 102 at p. 3.)  The Court notes that it matters little whether the City has or has not
to date asserted the *Faragher-Ellerth* defense.  Short of the City stipulating that it *will not* assert that
defense in this case, Plaintiffs may seek discovery on the effectiveness of the City's sexual harassment
policies and procedures.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the
case," and "[i]nformation within this scope of discovery need not be admissible in evidence to be
discoverable."); *Fort Wash. Res., Inc. v. Tannen*, 153 F.R.D. 78, 80 (E.D. Pa. 1994) (explaining that
"[r]elevant matter encompasses any matter that bears on, or that reasonably could lead to other matter that
could bear on any issue that is *or may be* in the case" and the question of relevancy is to be more loosely
construed at the discovery stage than at the trial" (quotation marks omitted and emphasis added)).

liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.").

As explained in the Court's Memorandum deciding Defendants' motions to dismiss, Plaintiffs have alleged that the Police Department has a custom of failing to properly address claims of sexual harassment.  (Doc. No. 120 at p. 55.)  Evidence that other female employees complained about sexual harassment and gender discrimination within the Police Department during the same time period is relevant to that allegation.  *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 111 (3d Cir. 1999).

For example, in *Hurley*, a female sergeant with the Atlantic City Police Department alleged that her supervisors made sexually derogatory comments during roll call, solicited her for sex, spoke to her in condescending tones, excluded her from supervisors' meetings, and gave her less favorable schedules than male officers with less seniority.  *Id.* at 103–05.  She also alleged that she was the subject of sexually explicit graffiti and drawings in three locations on City property.  *Id.* at 104 & n.5 (describing "the most egregious examples of the offensive material" which was "of appallingly low character").  At trial, the district court allowed four women associated with the police department to testify about harassment that they experienced and eight male officers to testify about "derogatory comments made about women generally."  *Id.* at 108.  The jury returned a verdict against the police department, and the department appealed.  *Id.* at 106–07.

On appeal, the department argued that the district court abused its discretion by "admitting 'highly inflammatory and largely irrelevant evidence regarding alleged misconduct at the [police department] to which the plaintiff was not exposed.'"  *Id.* at 107 (quoting the Department's Br. at 2).  The Third Circuit disagreed.  The court explained that "[e]vidence that

women other than the plaintiff were subjected to a hostile work environment" is admissible "in a number of situations."  *Id*. at 110.  For one, "[e]vidence of harassment of other women and widespread sexism is . . . probative of 'whether one of the principal nondiscriminatory reasons asserted by an employer for its actions was in fact a pretext for discrimination.'"  *Id.* (quoting *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 194 (3d Cir. 1994)) (alterations adopted).  In addition, "[e]vidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the [police department] knew or should have known that sexual harassment was occurring despite the formal existence of an anti-harassment policy."  *Id.* at 111.  "This kind of evidence is particularly important" when the defendant asserts that "its written sexual harassment policy was sufficient to insulate it from liability."  *Id.*  In sum, the court held:

> The challenged evidence creates a basis for an inference that [the plaintiff] was targeted for abuse because she was a woman.  It also gives reason to infer that the [police department] knew or should have known not only what was happening to its female officers but also, and most importantly, that the written sexual harassment policy was ineffective, and patently so.  Indeed, it is hard to imagine evidence more relevant to the issue of whether a sexual harassment policy was generally effective than evidence that male officers did not respect it and that female officers were not protected by it.

*Id.*

Here, the City argues that we should not rely on *Hurley* because it is an unpublished decision from 1999 that did not "involve[ ] Section 1983 or discovery."  (Doc. No. 102 at p. 3 n.1.)  We find neither of these arguments persuasive.  First, we will not ignore *Hurley*'s teachings merely because it is an unpublished decision from 1999.  Although we are not bound by unpublished opinions from the Third Circuit, *see In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006), we find it telling that *Hurley*'s holding was recently reaffirmed by a different Third Circuit panel, *see Ford v. County of Hudson*, 729 F. App'x 188, 193 (3d Cir.

2018).  In *Ford*, the court analyzed whether the district court erred by allowing four non-party, female employees to testify about sexual assault and harassment committed by non-party supervisors within Hudson County's Department of Corrections.  *Id.*  Relying on *Hurley*, the Third Circuit rejected the County's argument that the "evidence of rape and sexual harassment" was inadmissible because it "neither proves nor corroborates [the plaintiff's] gender discrimination claims."  *Id.* (finding "[t]his argument is unavailing and undermined by our decision in *Hurley*").[4]

Second, although *Hurley* did not discuss Rule 26 or discovery, it informs our decision here because discoverability is broader than admissibility.  *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  It stands to reason that if complaints of similar discrimination are admissible at trial, they are also discoverable.  *See Fort Wash. Res., Inc.*, 153 F.R.D. at 80 (explaining "[r]elevant matter encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is *or may be* in the case" and "[t]he question of relevancy is to be more loosely construed at the discovery stage than at the trial" (quotation marks omitted and emphasis added)).

We are persuaded by the reasoning in *Hurley* and *Ford* and find that other complaints of sexual discrimination and harassment within the Philadelphia Police Department could support Plaintiffs' claims that they were subjected to a sexually hostile work environment and that sexual harassment is so pervasive within the Department as to amount to a municipal custom.  In

---

[4] The City also argues that *Hurley* is inapplicable because it was abrogated by *Nance v. Newark*. (Doc. No. 102 at p. 3 n.1.)  In *Nance*, the Third Circuit recognized that a New Jersey Supreme Court decision had abrogated *Hurley*'s holding that prejudgment interest is not available against a government entity under the New Jersey Law Against Discrimination.  501 F. App'x 123, 129 n.7 (3d Cir. 2012). *Nance* did not, however, abrogate or discuss *Hurley*'s evidentiary holding, which remains good law.

addition, evidence of other complaints may support Plaintiffs' assertion that the City's sexual harassment policies were ineffective and that upper management knew or should have known about the alleged ineffectiveness of the City's policies and procedures.

For those reasons, we find that Plaintiffs' request for the "memorandum section for each Internal Affairs and/or Equal Employment Opportunity (EEO) file . . . as it pertains to any complaints of gender discrimination, sexual assault, or sexual harassment within the Philadelphia Police Department" seeks relevant and discoverable information. (Doc. No. 100 at pp. 3–4 ¶ 11.) We will, however, limit the request to include only those complaints made from October 2015 to present — *i.e.*, a period beginning three years before the harassment alleged in this case. *Cf. Pleasants v. Allbaugh*, 208 F.R.D. 7, 14–15 (D.D.C. 2002) (explaining that "the proper scope of discovery seeking other complaints of discrimination against defendant must be limited in time, type of action complained of or type of discrimination alleged" and allowing the plaintiff's interrogatory because it was "narrowly tailored to EEOC complaints of the same type, i.e., race discrimination, and it is confined to FEMA's Program Services Division").

### III.

In sum, we reject the City's blanket assertion that "Plaintiffs' requests constitute a fishing expedition not proportional to the needs of this case," and find that Plaintiffs have tight lines. (Doc. No. 102 at pp. 3 ¶ 15.) Plaintiffs' motion to compel (Doc. No. 100) is granted in part and denied in part. Plaintiffs' motion is denied as moot to the extent that it seeks the personnel files of Younger and Ross. The rest of the motion is granted. Within thirty days of the date of this Memorandum, the City shall reproduce its documents either "as they are kept in the usual course of business" or organized and labeled "to correspond to the categories in the request." In addition, within thirty days, the City shall also produce the "memorandum section for each

Internal Affairs and/or Equal Employment Opportunity (EEO) file" involving "complaints of gender discrimination, sexual assault, or sexual harassment within the Philadelphia Police Department" from October 2015 to present.

An appropriate order follows.