**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AUDRA MCCOWAN, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **CITY OF PHILADELPHIA, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br><br> **NO. 19-3326-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                             **January 15, 2021**

On July 29, 2019, Plaintiffs Audra McCowan and Jennifer Allen filed a complaint against the City of Philadelphia and eleven individually named defendants, asserting 24 counts of discrimination, retaliation, hostile work environment, and other claims related to Plaintiffs' employment at the Philadelphia Police Department. (*See generally* Doc. Nos. 1, 49.) Since then, the parties have filed numerous discovery motions and two motions to reconsider. (*See* Doc. Nos. 42, 57, 62, 69, 71, 79, 83, 92, 94, 97, 100, 113, 118.) Currently before the Court is a Motion for Clarification or Reconsideration of the Order Denying Defendants' Motion to Quash a Third Party Subpoena (Doc. No. 118) filed by Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Michael McCarrick, Timothy McHugh, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons (collectively the "City Defendants"). For the reasons discussed below, the Court will deny the motion to the extent it asks for reconsideration and grant the motion to the extent it asks for clarification.

I.

The current motion centers on a third-party subpoena that Plaintiffs sent to Attorney A. Nicole Phillips and her law firm, Montgomery McCracken Walker & Rhoads LLP. (*See* Doc. No. 94-1.)

A.

As explained in the Court's previous Opinion, in 2019 the City hired Ms. Phillips and her law firm to conduct "a comprehensive investigation and analysis of the claims of gender discrimination and sexual harassment within the Philadelphia Police Department ('PPD')." (Ltr. from Diana P. Cortes to Nicole Phillips at p. 1 (Oct. 2, 2019); *see also* Doc. No. 94 at p. 4.) On July 31, 2020, Plaintiffs served Ms. Phillips with a subpoena to produce "[a]ll documents relating to your investigation of sexual harassment complaints within the Philadelphia Police Department, including but not limited to, complaints involving Audra McCowan, Jennifer Allen, Tela Kennedy, Vanessa Washington, Sarah DeBarberie, Sharon Conaway and/or Kelly Marks." (*See* Doc. No. 94-1.) The City Defendants filed a Motion to Quash the Subpoena Directed to Nonparty A. Nicole Phillips, Esquire, arguing that the documents responsive to the subpoena are protected by the attorney-client privilege, the deliberative process privilege, and the self-critical analysis privilege. (*See generally* Doc. No. 94.) On October 27, 2020, the Court held oral argument on the motion, which Ms. Phillips and Lathrop Nelson, Esq. attended on behalf of Montgomery McCracken. (*See* Oral Ar. Transcript at 4:21–23.) During argument, the Court asked Ms. Phillips if she and Montgomery McCracken were "relying entirely on the City's motion," and she responded that they were. (*Id.* at 5:9–15)

On November 4, 2020, the Court entered an Opinion and Order denying the City Defendants' motion to quash. (*See* Doc. Nos. 111, 112.) As relevant to this Memorandum, we

rejected the City Defendants' blanket, unsupported assertion of the attorney-client privilege for every document related to Ms. Phillips's investigation. (*See* Doc. No. 111 at pp. 6–7 (collecting cases which hold that a general allegation of privilege is insufficient and instead, the proponent of the privilege must present evidence showing that the privilege applies).) Among other things, we noted that the City Defendants had not provided a description of the allegedly privileged documents, let alone any evidence in support of their assertion that the attorney-client privilege applies. Particularly fatal to the motion was defense counsel's admission that although the City Defendants were asserting privilege, he did not know which documents Ms. Phillips reviewed during her investigation because he had not seen the documents himself. (Oral Argument Tr. at 12:11–14; Doc. No. 111 at p. 8.)

B.

A little more than two weeks after the Court denied the motion to quash, the City Defendants filed this motion for reconsideration or clarification. (Doc. No. 118.) In their motion, the City Defendants provided for the *first* time a description of the documents "generated by Montgomery McCracken that they believe are covered by the attorney-client privilege." (*Id.* at p. 2.) They divide the relevant documents into three categories. First, the City Defendants note that Montgomery McCracken has turned over approximately 350 documents to Plaintiffs since the Court entered the November 4 Order. (*Id.* at p. 11.) Second, the City Defendants identify a group of "otherwise confidential documents" that Montgomery McCracken received from the City and the Department, which the firm has agreed to produce after entry of a protective order.[1] (*Id.* at pp. 11–12.) Last, the City Defendants identify

---

[1] The City Defendants state that the "Motion for Protective Order is being filed by Defendants' contemporaneously to the filing of this Motion to Reconsider." (Doc. No. 118 at pp. 11–12.) However, no motion for protective order has been filed in the two months that this motion for reconsideration or

3

documents that Montgomery McCracken plans to withhold "due to not only the attorney-client privilege, but related issues of fairness, privacy, and confidentiality." (*Id.* at p. 12.) In this last category, they include: (1) memoranda summarizing interviews of high-ranking police personnel, City Law Department lawyers, and Mayor's Office of Labor Relations employees; (2) legal drafts and notes related to the oral presentation of recommendations to be made to the City stakeholders; (3) case status memoranda provided to the City Law Department attorneys; and (4) corresponding emails between counsel for the City and Montgomery McCracken. (*Id.* at pp. 6–7; *see generally* Doc. No. 118-1.) With their motion, the City Defendants, again for the *first* time, filed an affidavit of Attorney Nicole Phillips, which describes the relevant documents and the scope of her investigation. (Doc. No. 118-1.)

In light of this information and evidence — all of which should have previously been included in the motion to quash — the City Defendants argue that the Court should "vacate the [November 4] Order in its entirety." (Doc. No. 118 at p. 3.) In the alternative, the City Defendants ask that the Court clarify whether the November 4 Order is a "blanket Order for Ms. Phillips and Montgomery McCracken to turn over to the Plaintiff every document related to the legal advice sought by defendants by way of the internal investigation, or only those items not protected by the attorney-client privilege between the City of Philadelphia and the law firm." (Doc. No. 118 at p. 1.)

We decide the motion for reconsideration before addressing the request for clarification.

---

clarification has been pending.

4

II.

The City Defendants move for reconsideration under Federal Rule of Civil Procedure 59(e).[2]  *See* Fed. R. Civ. P. 59(e) (referring to a "motion to alter or amend judgment").  "The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  "Out of consideration for finality and judicial economy," courts grant motions for reconsideration "sparingly."  *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016) (citation omitted).  The Third Circuit has identified three bases for altering an order:  "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice."  *Allah v. Ricci*, 532 F. App'x 48, 51 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  The City Defendants rely on the second and third bases.

First, the City Defendants argue that there is "new evidence that was not available when the Court entered its judgment, specifically, a more detailed identification and description of the privilege materials possessed by Montgomery McCracken."  (Doc. No. 118 at p. 5.)  The problem with the City Defendants' argument is that this evidence was available — they just did not present it to the Court.  On a motion for reconsideration, "new evidence does not refer to

---

[2] Some district courts in this Circuit have held that Rule 59(e) does not govern motions to reconsider interlocutory orders.  *See, e.g.*, *Askew v. R.L. Reppert*, Civil Action No. 11-cv-04003, 2016 WL 749945, at *1 (E.D. Pa. Feb. 26, 2016) ("Ordinarily, a motion for reconsideration may be decided under either Federal Rule of Civil Procedure 59 or 60.  However, neither Rule 59 or 60 applies here, because this court's February 5, 2016 Order and Opinion is not a final, appealable order that conclusively resolves all of the claims at issue in this case.").  But even when a motion to reconsider is brought pursuant to a court's "inherent power over interlocutory orders," courts tend to apply the standard of review for a motion to reconsider under Rule 59(e).  *Id.* (quoting *Bridges v. Colvin*, No. 5:12-cv-02316, 2015 WL 5737353, at *4 (E.D. Pa. Sept. 30, 2015)).

evidence that a party submits to the court after an adverse ruling.  Rather, new evidence means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Blystone v. Horn*, 664 F.3d 397, 415–16 (3d Cir. 2011) (quotation marks omitted and alterations adopted); *see also Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 586 (E.D. Pa. 2008) ("Motions for reconsideration may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." (quotation marks omitted)).

The City Defendants could have submitted "a more detailed identification and description of the privilege materials" when they filed the motion to quash.  At minimum, the City Defendants should have filed a reply brief addressing these issues after Plaintiffs' opposition brief identified them.  Indeed, Ms. Phillips joined the City Defendants' motion and attended oral argument.  Even if defense counsel truly was unable to review the relevant documents, Ms. Phillips was certainly aware of which documents she received and could have submitted an affidavit describing them or discussed them during oral argument.[3]  *Cf. Askew*, 2016 WL 749945, at *2 ("Plaintiff did not possess this 'new evidence' earlier only because he did not look for it.  That does not mean that it was 'previously unavailable,' and plaintiff may not rely on it as a ground for reconsideration."); *United States v. Dupree*, 617 F.3d 724, 732–33 (3d Cir. 2010) ("Though motions to reconsider empower the court to change course when a mistake has been made, they do not empower litigants to raise their arguments[ ] piece by piece.") (quotation

---

[3] In response to the Court's questioning at oral argument, Ms. Phillips stated that she reviewed documents that she received from a liaison with the Police Department and that she was not sure how many documents she had received, but that it could be "hundreds, thousands." (Oral Ar. Tr. at 14:23–25, 15:7–16.)  She also clarified that she had reviewed the files related to Plaintiffs' internal complaints but otherwise had not received any documents related to Plaintiffs.  (*Id.* at 15:3–6.)  Other than this limited discussion, however, Ms. Phillips did not describe the documents or categorize them like she has in her current affidavit.  (*Compare* Oral Ar. Transcript, *with* Doc. No. 118-1.)

marks omitted and alterations adopted)).  Yet even after hearing the City's lackluster presentation on the attorney client privilege and work product protection, neither Ms. Phillips nor Mr. Nelson chose to add anything.  (Oral Ar. Tr. at 23:11–21.)

Second, the City Defendants argue that vacatur is necessary because disclosure of their "highly sensitive and privileged information would be a clear error of law and/or create a manifest injustice that should be prevented at all costs."  (Doc. No. 118 at p. 2; *see also id.* at pp. 3, 5.)  A clear error of law exists if "after reviewing the evidence, [the court is] left with a definite and firm conviction that a mistake has been committed." *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 861 n.8 (3d Cir. 2016).  Again, to the extent there has been a "clear error" it was made by defense counsel, *not* the Court.  The City Defendants admit that they failed to satisfy their burden on the motion to quash:  "[Defendants] seek to prevent an error of law or fact which, as the Court pointed out during oral argument and in its Opinion, may have been avoided had Defendants provided more definitive information on the privileged documents in the first place."  (Doc. No. 118 at p. 7.)  The City Defendants now provide that information and ask the Court to reconsider its previous ruling.  We will not. *See United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) ("In order to show clear error or manifest injustice, the [moving party] must base its motion on arguments that were *previously raised* but were overlooked by the Court.'" (emphasis added)); *Digneo v. City of Philadelphia*, Civil No. 07-2372, 2008 WL 11515930, at *1 n.1 (E.D. Pa. June 13, 2008) ("[A] Motion for Reconsideration cannot be granted based on . . . newly raised arguments that could have previously been asserted.").

For similar reasons, we also reject the City Defendants' argument that the November 4 Order creates a manifest injustice.  There is a "dearth of case law within the Third Circuit" on the meaning of "manifest injustice." *Conway v. A.I. Dupont Hosp. for Child.*, Civ. Action No. 04-

7

4862, 2009 WL 1492178, at *6–7 (E.D. Pa. May 26, 2009). The City Defendants urge us to use the definition of "manifest injustice" in Black's Law Dictionary: "A direct, obvious, and observable error in a trial court." *Manifest Injustice*, Black's Law Dictionary (11th ed. 2019); *see also Von Kahle v. Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) (noting that "several courts have applied the Black's Law Dictionary definition"). Applying this definition, we find no "direct, obvious, and observable error" in the Court's November 4 Order. Because the City Defendants failed to meet their burden of showing that the attorney-client privilege applies, the Court correctly denied their motion to quash. The error was Defendants', and it is "not the job of courts deciding motions for reconsideration to rescue parties from their own errors." *Conway*, 2009 WL 1492178, at *7; *cf. PBI Performance Prods., Inc. v. NorFab Corp.*, 514 F. Supp. 2d 732, 744 (E.D. Pa. 2007) ("A litigant . . . may not use a motion for reconsideration either to attempt a new approach or to correct mistakes it made in its previous one. A motion for reconsideration should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." (quotation marks and citation omitted)).

For those reasons, the City Defendants' motion is denied to the extent it seeks reconsideration.

III.

In the alternative, the City Defendants ask for clarification on the scope of the Court's November 4 Order. "Specifically, Defendants inquire as to whether the Court's denial of the Motion to Quash is a blanket Order for Ms. Phillips and Montgomery McCracken to turn over to the Plaintiff every document related to the legal advice sought by defendants by way of the internal investigation, or only those items not protected by the attorney-client privilege between

the City of Philadelphia and the law firm." (Doc. No. 118 at p. 1.) Plaintiffs do not respond to this request. (*See generally* Doc. No. 119.)

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not alter or amend." *Resol. Trust Corp. v. KPMG Peat Marwick*, No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993). It is true that our previous Order provides little guidance on the scope of Montgomery McCracken's production. That is because neither party presented that issue to the Court. Instead, the parties focused broadly on whether the non-party subpoena should be struck in its entirety, so that is the issue that the Court addressed.

However, because Plaintiffs do not oppose the request, and Montgomery McCracken has shown that it needs some guidance, the Court will grant the City Defendants' motion to the extent it asks for clarification. We explain now that nothing in our previous Order prohibits Ms. Phillips or Montgomery McCracken from raising the attorney-client privilege as to specific documents responsive to Plaintiffs' subpoena. *Cf. Memory Bowl v. N. Point Ins. Co.*, 280 F.R.D. 181, 187 (D.N.J. 2012) (allowing the defendant to assert attorney-client privilege as to specific documents); *Robocast, Inc. v. Microsoft Corp.*, No. 1:13-mc-00104-RGA, 2013 WL 1498666, at *2 (D. Del. Apr. 12, 2013) (denying a motion to quash but explaining that the movant will still "be able to raise the privilege at the time of the . . . production of the documents," at which point, the "Court will be able to decide any issues of attorney-client privilege with the proper specificity"). If they withhold documents as privileged, Ms. Phillips and Montgomery McCracken must provide Plaintiffs with a privilege log listing every document withheld and the basis for withholding. Without the specific documents before us, we pass no judgment on the applicability of any privilege or protection.[4]

---

[4] That said, we strongly urge the City Defendants to review our November 4 Opinion, and in particular, note 10, which describes the limited scope of the attorney-client privilege, before withholding

IV.

For those reasons, the City Defendants' motion is granted in part and denied in part. The motion is denied to the extent it seeks reconsideration of the November 4 Order (Doc. No. 112). The motion is granted to the extent it seeks clarification.

An appropriate order follows.

---

any document on the basis of the attorney-client privilege. In addition, we remind the parties that before either of them files a motion on this issue, they must verbally meet and confer with opposing counsel. Failure to follow this policy may result in denial of the motion without further consideration by the Court:

> In filing a discovery motion, the certificate of counsel must provide specific details of the parties' efforts to resolve the dispute informally. These efforts must include verbal communications, whether by phone or in person. Exchanges of letters or e-mails are not sufficient. It is not sufficient to report that opposing counsel was not available or that the parties made "reasonable efforts." The Court will deny a discovery motion that does not meet these requirements.

Judge Marston's Policies and Procedures at p. 11. We remind counsel for all parties, including Plaintiffs' counsel, to work in good faith to resolve any issues.