## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDRA McCOWAN**, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-3326-KSM |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| Defendant. | : | |

## O R D E R

**AND NOW**, this _____ day of _____, 2021, upon consideration of Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Timothy McHugh, Michael McCarrick, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons' Motion for Summary Judgment, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. Judgment is entered in favor of Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Timothy McHugh, Michael McCarrick, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons and against Plaintiffs on all claims.

**BY THE COURT:**


_____
**KAREN S. MARSTON**, J.

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUDRA McCOWAN**, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-3326-KSM |
| | : | |
| **CITY OF PHILADELPHIA**, et al. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANTS THE CITY OF PHILADELPHIA, CHRISTINE COULTER, DANIEL
MACDONALD, TIMOTHY MCHUGH, MICHAEL MCCARRICK, BRENT CONWAY,
ERIC WILLIFORD, KEVIN O'BRIEN, TAMIKA ALLEN, AND HERBERT GIBBONS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Timothy

McHugh, Michael McCarrick, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and

Herbert Gibbons file this Motion for Summary Judgment under Fed. R. Civ. Pro. 56, respectfully

seeking that this Court enter judgment in their favor on all claims on the grounds more fully

described in the supporting memorandum of law, attached pursuant to Local Rule 7.1(c).

Respectfully submitted,

<u>/s/ Daniel R. Unterburger</u>
DANIEL R. UNTERBURGER
Assistant City Solicitor
Labor and Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
215.683.5080

Dated: March 5, 2021                daniel.unterburger@phila.gov

## TABLE OF CONTENTS

I. INTRODUCTION ----------------------------------------------------------------------- 1

II. FACTUAL SUMMARY --------------------------------------------------------------- 1

III. SUMMARY JUDGMENT STANDARD ---------------------------------------------- 1

IV. LEGAL ARGUMENT ---------------------------------------------------------------- 3

    A.  PLAINTIFFS' 42 U.S.C. § 1981, TITLE VII, PHRA, AND PFPO DISPARATE
         TREATMENT CLAIMS FAIL AS A MATTER OF LAW. --------------------- 3

        i.  Plaintiffs' Disparate Treatment Claims Fail Because They Have Not Identified
            Similarly-Situated Comparators Who Were Treated Differently. ---- 3

            a.  White Males O'Brien and McHugh Were Treated the Same as
                McCowan. ----------------------------------------------------------- 5

            b.  White Males O'Brien and McHugh Were Treated Worse
                Than Allen. ---------------------------------------------------------- 5

        ii.  Defendants Have Articulated and Proved Legitimate Non-Discriminatory and
            Non-Retaliatory Reasons for Each Adverse Action and Plaintiffs Can Offer
            Only Pure Speculation in a Failed Effort to Prove Pretext. ------------ 5

            a.  McCowan's Disparate Treatment Claims Fail Because Defendants
                Have Identified Legitimate Non-Discriminatory Reasons for Each
                Adverse Action. ---------------------------------------------------- 6

            b.  Allen's Disparate Treatment Claims Fail Because Defendants Have
                Identified Legitimate Non-Discriminatory Reasons for Each Adverse
                Action. ---------------------------------------------------------------- 8

    B.  PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS A
         MATTER OF LAW. -------------------------------------------------------- 10

        i.  Plaintiffs' Hostile Work Environment Claims Against the Individual City
            Defendants Fail Because the Record is Devoid of Evidence of Intentional
            Discrimination By Those Defendants. ------------------------------------- 10

        ii.  Plaintiffs' Hostile Work Environment Claims Fail Because the Individual City
            Defendants Engaged in No Severe or Pervasive Conduct. ------------- 10

        iii.  Plaintiffs' Hostile Work Environment Claims Fail Because the City Took
            Reasonable Actions to End Any Harassment Once Plaintiffs' Lodged a
            Complaint. ------------------------------------------------------------- 11

    C.  PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIMS FAIL BECAUSE
         PLAINTIFFS WERE NOT SPEAKING ON A MATTER OF
         PUBLIC CONCERN. ------------------------------------------------------- 12

    D.  PLAINTIFFS' RETALIATION CLAIMS FAIL AS A MATTER OF LAW. 13

1

      i.  **Plaintiffs' Retaliation Claims Fail Because Their Protected Activity Was Not Temporally Proximate to Any Adverse Actions.**------------------------ 14

     ii.  **Plaintiffs' Retaliation Claims Fail Because Defendants Have Produced Evidence of Legitimate Non-Retaliatory Motives for Any Allegedly-Materially Adverse Actions.**------------------------------------------------------------- 15

**E.  ALLEN'S FLSA RETALIATION CLAIM FAILS BECAUSE SHE CANNOT PROVE THE REQUISITE BUT-FOR CAUSATION.** ------------------------- 16

**F.  PLAINTIFFS' FMLA CLAIMS FAIL AS A MATTER OF LAW BECAUSE ALLEN WAS NOT ENTITLED TO LEAVE AND MCCOWAN RECEIVED THE FMLA LEAVE SHE REQUESTED.**---------------------------------------------------- 17

**G.  PLAINTIFFS' PENNSYLVANIA WHISTLEBLOWER LAW CLAIMS FAIL AS A MATTER OF LAW.** ------------------------------------------------------------- 18

      i.  **Plaintiffs' PWL Claim Fails Because They Have Produced No Concrete Evidence of a Causal Connection Between Any Protected Activity and Any Adverse Employment Action.**-------------------------------------------- 19

     ii.  **Plaintiffs' PWL Claims Fail Because the City has Identified Legitimate Non-Retaliatory Reasons for All Adverse Employment Actions Taken.** -- 20

**H.  PLAINTIFFS' SECTION 1981 AND 1983 CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES FAIL BECAUSE THE INDIVIDUAL DEFENDANTS ARE IMMUNE TO SUIT.**--------------------------------------- 21

**I.  PLAINTIFFS' CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL BECAUSE PLAINTIFFS HAVE NOT PRODUCED EVIDENCE THAT THEY WERE PERSONALLY INVOLVED IN ANY INFRINGEMENT OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.** ----- 22

**J.  ALLEN'S FLSA CLAIM FAILS BECAUSE ALLEN WAS AT ALL TIMES ACCOMMODATED WITHIN THE REQUIREMENTS OF THE LAW.** -- 22

**K.  PLAINTIFFS' AIDING AND ABETTING CLAIMS FAIL AS A MATTER OF LAW.**-------------------------------------------------------------------- 23

**L.  PLAINTIFFS' IIED CLAIMS FAIL AS A MATTER OF LAW.** ------------- 24

**M.  THERE EXISTS NO LIVE CASE OR CONTROVERSY ALLOWING FOR INJUNCTIVE OR DECLARATORY RELIEF.** ---------------------------------- 25

**V. CONCLUSION** -------------------------------------------------------------------- 25

## **TABLE OF AUTHORITIES**

Abadie v. Riddle Memorial Hosp., 589 A.2d 1143, 1145–46 (Pa. Super. Ct. 1991) ........................ 24

Abdul-Latif v. Cnty. of Lancaster, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014) .................................. 14

Anderson v. Bd. of School Directors of Millcreek Tp. School Dist., 574 Fed. Appx. 169, 173-74 (3d Cir. 2014) ........................................................................................................................................ 19

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ........................................................... 1, 2

Azarro v. Cty. of Allegheny, 110 F.3d 968, 981 (3d. Cir. 1997) ...................................................... 13

Berrada v. Cohen, No. 19-1152, 2019 WL 5618181, at *5 (3d Cir. Oct. 31, 2019) ......................... 16

Blakney v. City of Phila., 559 Fed. Appx. 183, 186 (3d Cir. 2014) ................................................. 14

Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009) ........................................... 2, 3

Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307, 308 (M.D. Pa. 1988) ....................................... 24

Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82 (3d Cir. 2009) ............................................................. 3

Brzozowski v. Pa. Tpk. Comm'n, 165 F. Supp. 3d 251, 263 (E.D. Pa. 2016) ................................... 23

Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) .......................................................... 6, 16

Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017) .............................. 15

Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) .............................................................. 10

Cavicchia v. Philadelphia Hous. Auth., No. 03-0116, 2003 WL 22595210, *15 (E.D. Pa. Nov. 7, 2003) ............................................................................................................................................ 20

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ......................................................................... 2

Cheney v. Daily News L.P., 654 Fed. Appx. 578, 583-84 (3d Cir. 2016) ......................................... 24

Corbett v. Morgenstern, 934 F. Supp. 680, 684 (E.D. Pa. 1996) ...................................................... 24

Darby v. Temple Univ., 216 F. Supp. 3d 535, 543 (E.D. Pa. 2016) ................................................... 3

Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) ............................................................................................................................ 23

De Ritis v. McGarrigle, 861 F.3d 444, 455 (3d Cir. 2017) ............................................................... 13

Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996) ...................................................... 23

Drumm v. Triangle Tech, Inc., No. 15-854, 2016 WL 1384886, at *8 (M.D. Pa. Apr. 7, 2016) ...... 18

Evans v. Thomas Jefferson Univ., 81 A.3d 1062, 1070-71 (Pa. Commw. 2013) .............................. 20

Falco v. Zimmer, 767 Fed. Appx. 288, 298 (3d Cir. 2019) ................................................12

Fawcett v. I.D.S. Financial Services, 41 Fair Empl. Prac.Cas. 589 (W.D.Pa. 1986).........24

First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987) .................2

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)......................................................6, 16

Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) .............................................................2

Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) ...............................................................12

Golaschevsky v. Com., Dept. of Environmental Protection, 720 A.2d 757, 759 (Pa. 1998)............20

Gray v. Hafer, 651 A.2d 221, 225 (Pa. Commw. 1994) ....................................................20

Greco v. Meyer Coach Lines, Inc., 199 A.3d 426, 434 (Pa. Super. 2018).........................19

Greer v. Mondelez Global, Inc., 590 Fed. Appx. 170, 173 (3d Cir. 2014) ........................10

Hafer v. Melo, 502 U.S. 21, 25 (1991)...............................................................................21

Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).............................................................6

Harlow v. Fitzgerald, 45714 U.S. 800, 818 (1982)............................................................21

Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).......................................12

Houston v. Easton Area School Dist., 355 Fed. Appx. 651, 654 (3d Cir. 2009) ................4

Hussein v. UPMC Mercy Hosp., 466 Fed. Appx. 108, 112 (3d Cir. 2012) .......................14

Jensen v. Potter, 435 F.3d 444, 453 (3d Cir. 2006)...........................................................11

Johnson v. Caparelli, 625 A.2d 668, 672 (Pa. 1993)........................................................24

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).................................3. 6, 15

Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) ...........4, 11, 13

Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)....................6, 16

Kier v. F. Lackland & Sons, LLC, 72 F. Supp. 3d 597 (E.D. Pa. 2014)...........................14

Lawson v. Pennsylvania SPCA, 142 F.Supp. 3d 394, 409 (E.D. Pa. 2015) ......................24

LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ............14

Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-302 (3d Cir. 2012).....................17

McAndrew v. Bucks Cnty. Bd. Of Com'rs, 982 F. Supp. 2d 491, 503 (E.D.Pa. 2013)....................19

2

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973) ..................................................6

Miller v. Delaware Dep't of Probation and Parole, 158 F. Supp.2d 406, 411 (D. Del. 2001).............4

Miller v. Thomas Jefferson Univ. Hosp., 908 F.Supp. 639, 648-49 (E.D. Pa. 2012) .......................22

Mitchell v. Miller, 884 F.Supp. 2d 334, 363-365 (W.D. Pa. 2012) ..................................................13

Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 220 (3d Cir. 2017) .................................................16

Nardella v. Philadelphia Gas Works, 997 F. Supp. 2d 286, 297 (E.D. Pa. 2014)..............................10

Newsome v. City of Philadelphia, 19-cv-5590, ECF Doc. No. 17 at 12 (E.D. Pa. Nov. 12, 2020)...13

O'Rourke v. Commonwealth, 778 A.2d 1194, 1197-99 (Pa. 2001) ..................................................20

Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) ...........................................4

Ponton v. AFSCME, 395 Fed. Appx. 867, 874 (3d Cir. 2010) ........................................................14

Prince v. Sun Shipbuilding & Dry Dock Corp. .................................................................................2

Rankin v. McPherson, 483 U.S. 378, 384–85 (1987) ......................................................................12

Rosati v. Colello, 94 F. Supp. 3d 704, 718 (E.D. Pa. 2015) .............................................................9

Ross v. Gilhuly, 755 F3d 185, 191-92 (3d Cir. 2014).....................................................................17

Saucier v. Katz, 533 U.S. 194, 201 (2001).....................................................................................21

Schaffhouser v. Transedge Truck Centers, No. CV 19-5811-KSM, 2020 WL 2847935, at *5-6 (E.D. Pa. June 2, 2020)).........................................................................................................................24

Shaffer v. National Can Corp., 565 F.Supp. 909 (E.D.Pa. 1983) ...................................................24

Sprecher v. Se. Home Health Servs. of PA, LLC, No. 20-CV-0968, 2020 WL 3830148, at *3 (E.D. Pa. July 8, 2020) .........................................................................................................................23

Steele v. Pelmor Laboratories, Inc., 725 Fed. Appx. 176, 179 (3d Cir. 2018)..............................6, 15

Sukenik v. Twp. of Elizabeth, 131 A.3d 550, 555 (Pa. Commw. 2016)...........................................18

Super Fresh Food Mkts., Inc. v. United Food & Commercial Workers Local Union 1776, 249 F. Supp. 2d 546, 551 (E.D. Pa. 2003) ........................................................................................................2

Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) ...............................................14

Torres v. Deblasis, 959 F.Supp.2d 772, 781 (E.D. Pa. 2013) ..........................................................9

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)..................................................................2

United States v. Virgin Islands, 363 F.3d 276, 284-85 (3d Cir. 2004) ............................................25

Univ. of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 360 (2013).........................14

Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013) .................................................................11

Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001) ..............................................................3

Williams v. Aramark Campus LLC, No. CV 18-5374, 2020 WL 1182564, at *11 (E.D. Pa. Mar. 12, 2020).............................................................................................................................................23

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDRA McCOWAN**, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-3326-KSM |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| Defendant. | : | |

## THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

Plaintiffs Audra McCowan and Jennifer Allen, two former employees of the City of Philadelphia's Police Department (PPD), bring suit against the City and individually-named Defendants Christine Coulter, Daniel MacDonald, Michael McCarrick, Timothy McHugh, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons (the City Defendants), all employed by PPD, alleging discrimination, retaliation, and hostile work environment under Title VII, 42 U.S.C. §§ 1981 and 1983, the Pennsylvania Human Relations Act, the Philadelphia Fair Practices Ordinance, the Family and Medical Leave Act, and, in the case of Allen, the Fair Labor Standards Act. See generally 2d Am. Compl. (ECF No. 49). For the reasons set forth below, the City Defendants respectfully request that this Honorable Court grant summary judgment in their favor and against Plaintiffs.

**II.    FACTUAL SUMMARY**

Defendants incorporate their Statement of Undisputed Material Facts.

**III.    SUMMARY JUDGMENT STANDARD**

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A

factual dispute is "material" only if it might affect the outcome of the suit under governing law. See id. All inferences must be drawn, and all doubts resolved in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of material fact disputes. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party, and may not rest on mere denials. See id. at 321, n.3; First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987).

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. "[A] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." Super Fresh Food Mkts., Inc. v. United Food & Commercial Workers Local Union 1776, 249 F. Supp. 2d 546, 551 (E.D. Pa. 2003). In ruling on a defendant's motion for summary judgment, a mere scintilla of evidence in support of the plaintiff's position is insufficient. Anderson, 477 U.S. at 252. Enough evidence must exist such that a jury could reasonably find for the plaintiff. Id. The plaintiff cannot merely rely upon assertions or speculation. Gans, 762 F.2d at 341. If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009). Additionally, "the unverified representations of counsel in a brief are not a proper part of the record for consideration on a motion for summary judgment." Prince v. Sun Shipbuilding & Dry Dock Corp., 86 F.R.D. 106, 107 (E.D. Pa. 1980).

Where a non-moving party bears the burden of proof at trial, the moving party's burden may be "'discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Bouriez, 585 F.3d at 771 (quoting Celotex, 477 U.S. at 325). The

moving party is not required to produce evidence to prove a negative, even on issues where the nonmoving party bears the burden of proof. <u>Celotex</u>, 477 U.S. at 325 (1986). If the moving party carries this burden, "the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact such that a reasonable jury could find in its favor." <u>Bouriez</u>, 585 F.3d at 771 (internal citation and quotation marks omitted).

## IV.   LEGAL ARGUMENT

### A. PLAINTIFFS' 42 U.S.C. § 1981, TITLE VII, PHRA, AND PFPO DISPARATE TREATMENT CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs Jennifer Allen and Audra McCowan allege that Defendants (in various combinations) violated 42 U.S.C. § 1981, Title VII, the PHRA, and the PFPO. These claims, which are analyzed identically,[1] fail because: (1) Plaintiffs have failed to produce evidence that each adverse employment action occurred under circumstances that give rise to an inference of intentional discrimination; and, (2) to the extent this Court concludes that Plaintiffs have met their *prima facie* burden, Defendants have identified a legitimate non-discriminatory reason they took each adverse employment action. Therefore, this Court should grant summary judgment on Plaintiffs' § 1981, Title VII, PHRA, and PFPO disparate treatment claims.

#### i.   Plaintiffs' Disparate Treatment Claims Fail Because They Have Not Identified Similarly-Situated Comparators Who Were Treated Differently.

A prima facie case for disparate treatment discrimination requires that a plaintiff show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410-11 (3d Cir. 1999). An "adverse employment action" is "an action by an employer that is serious and tangible enough to alter an

---

[1] <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d Cir. 2001) (Title VII and PHRA claims are analyzed identically); <u>Darby v. Temple Univ.</u>, 216 F. Supp. 3d 535, 543 (E.D. Pa. 2016) ("PFPO claims are generally evaluated under the same legal framework as Title VII claims"); <u>Brown v. J. Kaz, Inc.</u>, 581 F.3d 175, 181–82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.")

employee's compensation, terms, conditions, or privileges of employment." Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015).

As a preliminary matter, of the litany of actions that Plaintiffs complain were motivated by their race and/or gender – being asked to wear a uniform, being given responsibility for conducting a training session, being told not to drive home in a City vehicle on the clock to attend to personal matters – only a handful constitute employment actions, and only seven of those potentially constitute adverse employment actions. For Plaintiff McCowan, those actions are: (1) McCowan's change of assignment from HIDTA to A&I; (2) McCowan's perceived "exclusion" from supervisory meetings; (3) McCowan's detail to Police Radio, the resulting schedule change, and the denial of McCowan's unreasonable hardship request; and (4) McCowan's disciplinary charges for violating the department's EEO directive. For Plaintiff Allen, those actions are: (1) failing to provide Allen with training during her intermittent detail to A&I; (2) Allen's return full-time to JET; (3) Allen's receipt of a counseling form; and (4) Allen's detail to Tow Squad. The remainder of Plaintiffs' issues did not alter their compensation, terms, conditions, or privileges of employment.

Moreover, even for those seven actions which arguably rise to the level of "adverse employment actions," Plaintiffs fail to provide evidence that they took place under circumstances that could give rise to an inference of discrimination. Absent evidence of other discriminatory conduct (as is the case here), Plaintiffs must fulfill that requirement by identifying similarly-situated comparators who were treated differently. To show that comparators were similarly-situated, a plaintiff must usually demonstrate "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Houston v. Easton Area School Dist., 355 Fed. Appx. 651, 654 (3d Cir. 2009); Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009); Miller v. Delaware Dep't of Probation and Parole, 158 F. Supp.2d 406, 411 (D. Del. 2001) (to establish "similarly situated," plaintiff must show that her employment situation is nearly identical to those of the employees whom she alleges were treated more favorably).

4

Here, Plaintiffs have failed entirely to identify similarly-situated comparators who were treated better than Plaintiffs. In fact, the most obvious comparators – two white male supervisors who began working in A&I in December 2018 along with McCowan and Allen – were treated identically or worse than Plaintiffs.

### a.   White Males O'Brien and McHugh Were Treated the Same as McCowan.

As comparators for McCowan's claims that McCowan's change of assignment from HIDTA to A&I and McCowan's perceived "exclusion" from supervisory meetings were discriminatory adverse employment actions, Sgt. O'Brien and Lt. McHugh, both white males, received no training upon arrival in A&I. SUMF, ¶¶ 110-116. Moreover, Sgt. O'Brien did not receive invitations to every meeting held with A&I staff. SUMF, ¶ 100. Finally, Sgt. O'Brien had his assignment changed from his desired assignment in the Statistics Unit to A&I immediately after arriving in the Intelligence Bureau. SUMF, ¶ 91. McCowan cannot identify any comparators. SUMF, ¶¶ 90, 92.

### b.   White Males O'Brien and McHugh Were Treated Worse Than Allen.

As comparators for Allen's claim that the City's failure to provide her training during her intermittent detail to A&I represented a discriminatory adverse employment action, Sgt. O'Brien and Lt. McHugh were treated worse than Allen. Unlike Sgt. O'Brien and Lt. McHugh, Allen had opportunities to train with experienced analysts over multiple hours. SUMF, ¶¶ 24-25. Meanwhile Sgt. O'Brien and Lt. McHugh had to attend to their supervisory responsibilities while attempting to educate themselves on A&I on the fly. SUMF, ¶¶ 110-116. Additionally, training coordinator Sgt. Eric Williford concluded that more Black employees of the Intelligence Bureau received formal trainings than white employees. SUMF, ¶¶ 268-273. Sgt. Williford was never ordered to "make [O'Brien and McHugh] comfortable," or to "give [them] everything possible to accommodate [them]." See SUMF, ¶¶ 260-261.

### ii.   Defendants Have Articulated and Proved Legitimate Non-Discriminatory and Non-Retaliatory Reasons for Each Adverse Action and Plaintiffs Can Offer Only Pure Speculation in a Failed Effort to Prove Pretext.

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for its conduct. McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802-03 (1973) (explaining that the defendant may defeat a plaintiff's prima facie discrimination case under Title VII by identifying legitimate non-discriminatory reasons for the employment action); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (applying Title VII's burden shifting framework to Section 1981 claims). The burden then shifts back to the plaintiff, where:

> [t]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations omitted).

"'[A]n inference [of pretext] based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat [entry of] summary judgment.'" Steele v. Pelmor Laboratories, Inc., 725 Fed. Appx. 176, 179 (3d Cir. 2018) (quoting Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014)). "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Ultimately, the question is not "whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (internal citations and quotations removed) (alteration in original].

### a. McCowan's Disparate Treatment Claims Fail Because Defendants Have Identified Legitimate Non-Discriminatory Reasons for Each Adverse Action.

McCowan has failed entirely to provide evidence of discriminatory or retaliatory motivations or intentions, instead conclusory asserting that everything she alleged happened to her only happened because she identifies as a Black female. See, e.g. SUMF, ¶¶ 70, 93, 94 ("Outside of how I felt, I don't have anything tangible, but I know how I felt."), 119, 124, 125, 132, 133. McCowan's reliance solely on

her own speculation instead of record evidence cannot create a material dispute to defeat summary judgment.

### 1. The City Changed McCowan's Assignment Code From HIDTA to the Intelligence Bureau to Prevent Duplicative Supervision and Achieve the Organizational Goals of the Intelligence Bureau.

Upon her post-promotional arrival at the Intelligence Bureau, McCowan's assignment code was changed from the HIDTA unit (which was an administrative error) to the Intelligence Bureau, generally. SUMF, ¶¶ 9-12, 87-94. An experienced corporal spent six months peer-training to fill the sole corporal slot in HIDTA prior to McCowan's promotion to corporal. SUMF, ¶¶ 9. To prevent unnecessary duplication of supervision and to achieve the "rightsizing" objective of the Intelligence Bureau, McCowan's attendance code was changed to reflect her assignment to the Intelligence Bureau and McCowan was placed in the A&I unit to begin her onboarding. SUMF, ¶¶ 10-12.

### 2. McCowan Was Not Excluded From Meetings Related to Her Work Responsibilities as an Administrative Supervisor.

McCowan attended supervisor meetings, production meetings, and a daily analyst meeting. SUMF, ¶¶ 95-104. McCowan, as a corporal, was an administrative supervisor. Id. Administrators were not needed at operation or tactical meetings. Id. McCowan has not identified any administrative meetings to which she was not invited. McCowan has also not identified any meetings at which her presence was necessary to which she was not invited.

### 3. McCowan Specifically Requested a Detail Under Deputy Coulter, Honoring McCowan's Request Caused a Schedule Change, and McCowan's Hardship Request Was Patently Unreasonable.

McCowan made an unusual written request directly to Deputy Commissioner Coulter to be detailed under DC Coulter's command umbrella because of alleged ongoing sexual harassment. SUMF, ¶¶ 71-86. DC Coulter made immediate arrangements to honor McCowan's request by detailing McCowan to Police Radio, which DC Coulter knew to have an existing operational need for additional corporals. Id. Honoring McCowan's request resulted in a location reassignment and schedule change that McCowan now claims is an adverse employment action. SUMF, ¶ 120. As explained to McCowan by her union's president and vice president, the City did not violate the collective bargaining agreement when

McCowan's schedule changed. SUMF, ¶ 121. Detailing McCowan to Police Radio – rather than whatever her preferred detail may have been – was based solely on the exigency of McCowan's request and the operational needs of the department, and was not motivated by discriminatory or retaliatory animus. SUMF, ¶¶ 71-86, 120-125. McCowan offers nothing beyond rank speculation to prove otherwise. SUMF, ¶¶ 124-125.

Further, McCowan alleges that the City's denial of her requested hardship schedule change due to childcare issues was discriminatory. A hardship schedule change request for childcare issues is a nonstarter due to the PPD's need to staff twenty-four hour operations; should PPD grant such schedule change requests, it would be completely unable to fulfill its core missions. SUMF, ¶¶ 126-133. Again, McCowan can provide no record evidence from which a factfinder might conclude that the City's denial of her hardship request was pretextual. SUMF, ¶¶ 132-133.

### 4.   McCowan Received Disciplinary Charges Because She Violated a Police Directive.

McCowan claims that the City's decision to pursue discipline against her was discriminatory or retaliatory. McCowan, however, violated Police Directive 8.7 by failing to supervise Officer Younger to prevent sexual harassment—as McCowan is well aware, supervisors in PPD (like McCowan was) are required to take affirmative actions to prevent harassment. SUMF, ¶¶ 134-154. Sgt. Conway could not turn a blind eye to McCowan's violation. SUMF, ¶ 153. The most likely result of the disciplinary charges against McCowan would have been training and counseling, not formal discipline. SUMF, ¶ 154. The charges were issued July 31, 2019, nearly a full month after McCowan left work on extended FMLA leave. SUMF, ¶¶ 69, 277.

### iii.   Allen's Disparate Treatment Claims Fail Because Defendants Have Identified Legitimate Non-Discriminatory Reasons for Each Adverse Action.

### 1.   Allen Returned to JET to Resolve Understaffing That Created Safety Issues.

Allen claims that ending her intermittent A&I detail was retaliatory and/or discriminatory. However, Allen's partial detail to A&I—itself a generous accommodation made to allow Allen to return to work from her maternity leave with a predictable schedule—was never intended to last more than a few

months, and was contingent on JET having sufficient manpower to safely perform their responsibilities. SUMF, ¶¶ 176-178. Allen's permanent assignment was JET at all times from December 14, 2012 until her resignation on July 7, 2020. SUMF, ¶¶ 19, 24. Insp. McCarrick ended Allen's partial detail because JET was reduced to fifty-percent manpower and needed Allen's presence to alleviate officer safety issues. SUMF, ¶¶ 179-185. Insp. McCarrick made the decision with guidance from the Black female commander of PPD's EEO unit. SUMF, ¶ 184. Allen has not identified any evidence from which a factfinder could conclude these reasons were pretextual.

### 2. Counseling Forms Are Not Adverse Employment Actions.

"A counseling form is not an adverse employment action." Rosati v. Colello, 94 F. Supp. 3d 704, 718 (E.D. Pa. 2015) (Dalzell, J.).

> As we have explained, the Philadelphia Police Department "uses counseling forms as a tool for training employees and does not consider them to be disciplinary actions. Counseling forms are never placed in an employee's personnel file. Furthermore, they cannot result in any disciplinary action being taken against an employee such as a loss in pay, transfer, or suspension nor can they influence an employee's eligibility for promotions or raises."

Id. (quoting Torres v. Deblasis, 959 F.Supp.2d 772, 781 (E.D. Pa. 2013) (Dalzell, J.)).

As Judge Dalzell explains, and as Directive 8.9 plainly states, issuance of a counseling form is not discipline and does not constitute an adverse or materially adverse employment action. SUMF, ¶¶ 232-233.

### 3. Allen's Detail to Tow Squad Resulted From Personality Conflicts at NSU and the Process Began Before Allen Filed This Lawsuit.

Allen created personality conflicts at NSU, so NSU's lieutenant requested that Allen receive a new restricted duty detail. SUMF, ¶¶ 278-295. Safety Officer Molly O'Neill took pains to ensure Allen found another premium assignment and ensured Allen's new detail matched the shift schedule of Allen's permanent assignment in the Criminal Intelligence Unit. Id. The decision to detail Allen to Tow Squad was made to alleviate personality conflicts, was made prior to Allen filing this lawsuit, and O'Neill bent over backwards to ensure Allen the best possible circumstances. Id.

9

### B. PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS A MATTER OF LAW.

To prevail on a hostile work environment claim under Section 1983, Section 1981, Title VII, the PHRA, or the PFPO , Plaintiffs must prove that (1) they suffered intentional discrimination because of their race and/or gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected them; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).

### i. Plaintiffs' Hostile Work Environment Claims Against the Individual City Defendants Fail Because the Record is Devoid of Evidence of Intentional Discrimination By Those Defendants.

Plaintiffs have adduced no evidence of intentional discrimination based on their race or gender. Nothing in the record demonstrates that the City of Philadelphia or any of the individually-named Defendants intentionally discriminated against Plaintiffs. Accordingly, summary judgment should be granted in the City Defendants' favor on Plaintiffs' hostile work environment claims, irrespective of the theory alleged.

### ii. Plaintiffs' Hostile Work Environment Claims Fail Because the Individual City Defendants Engaged in No Severe or Pervasive Conduct.

"A hostile work environment is actionable under Title VII only if it is so severe and pervasive that it alters the conditions of the victim's employment and creates an abusive working environment." Greer v. Mondelez Global, Inc., 590 Fed. Appx. 170, 173 (3d Cir. 2014) (internal quotations omitted). "The environment must be objectively hostile, not just hostile in the plaintiff's view." Id. Ultimately, "[w]hether an environment is hostile requires looking at the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) (internal quotations omitted); see Nardella v. Philadelphia Gas Works, 997 F. Supp. 2d 286, 297 (E.D. Pa. 2014) ("[Title VII] does not protect against crass or unwarranted behavior[.]")

10

Here, the only individual alleged to have engaged in harassing conduct is Officer Younger. None of the City Defendants are alleged to have engaged in any harassing conduct, let alone severe or pervasive harassing conduct. Further, Plaintiff has adduced no evidence whatsoever that any of the City Defendants engaged in severe or pervasive harassing conduct. Plaintiffs rely solely on their subjective personal feelings that they experienced a hostile work environment. That is not enough. To survive summary judgment, Plaintiffs must adduce sufficient evidence to prove that their work environment was objectively hostile, which they have entirely failed to do. Summary judgment should be granted in favor of the individual City Defendants on Plaintiffs' hostile work environment claims.

### iii.     Plaintiffs' Hostile Work Environment Claims Fail Because the City Took Reasonable Actions to End Any Harassment Once Plaintiffs' Lodged a Complaint.

Employers are entitled to the <u>Faragher-Ellerth</u> affirmative defense when an employer "'exercised reasonable care to avoid harassment and to eliminate it when it might occur' and the complaining employee 'failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided,'" as long as the harassment or retaliation does not culminate in a tangible employment action taken by the harassing supervisor. <u>Jones v. SEPTA</u>, 796 F.3d at 328. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Id.</u> "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim...." <u>Vance v. Ball State Univ.</u>, 133 S. Ct. 2434, 2439 (2013). Respondeat superior liability for harassment by non-supervisory employees exists only where the employer "knew or should have known about the harassment, but failed to take prompt and adequate remedial action." <u>Jensen v. Potter</u>, 435 F.3d 444, 453 (3d Cir. 2006) (internal quotations omitted).

Here, Plaintiffs claim to have been harassed by a coworker, not a supervisor. Officer Younger, holder of the lowest rank on the Police Department's paramilitary totem pole, had no real or implied authority to take any tangible employment action against Plaintiffs, nor did Officer Younger take any

tangible employment action against Plaintiffs. SUMF, ¶¶ 135-138. Plaintiffs have adduced no evidence demonstrating that the City knew or should have known Younger allegedly engaged in sexually harassing conduct. In fact, the record demonstrates that neither Allen nor McCowan reported sexual harassment until January 31, 2019, when they emailed their written complaints to Chief MacDonald, which Chief McDonald immediately forwarded to Internal Affairs for investigation. SUMF, ¶¶ 49-50. Yet still, on the previous day, without knowing any details or specifics, Sergeant Allen and Sergeant Williford intuited the possibility of a sexual harassment complaint and alerted Inspector McCarrick who immediately requested an EEO investigation be opened. SUMF, ¶¶ 46-48. The moment they knew of Plaintiffs' hostile work environment complaints, the City Defendants acted immediately to address the allegations. Summary judgment should be granted in favor of the City Defendants on Plaintiffs' hostile work environment claims.

## C. PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIMS FAIL BECAUSE PLAINTIFFS WERE NOT SPEAKING ON A MATTER OF PUBLIC CONCERN.

To establish a First Amendment retaliation claim against her employer, a public employee must establish two elements: "(1) the activity in question is protected by the First Amendment; and (2) the protected activity was a substantial factor in the alleged retaliatory action." Falco v. Zimmer, 767 Fed. Appx. 288, 298 (3d Cir. 2019) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006)).

"As a general rule, a public employee's speech is protected by the First Amendment 'when (1) in making it, the employee spoke as a citizen[;] (2) the statement involved a matter of public concern[;] and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made.'" Falco, 767 Fed. Appx. at 300 (quoting Hill, 455 F.3d at 241-42). "A public employee does not speak 'as [a] citizen[ ]' when he makes a statement 'pursuant to [his] official duties.'" Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)) (alterations in original). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. (quoting Rankin v. McPherson, 483 U.S. 378, 384–85 (1987)). Courts in this district have

held that complaints of garden-variety sexual harassment or discrimination do not implicate matters of public concern. See Mitchell v. Miller, 884 F.Supp. 2d 334, 363-365 (W.D. Pa. 2012); see also Azarro v. Cty. of Allegheny, 110 F.3d 968, 981 (3d. Cir. 1997) (Becker, J., concurring).

As a preliminary matter, the majority opinion in Azarro does not track with the facts of this case. In Azarro, the Third Circuit held that complaints of sexual harassment were a matter of public concern when the harasser exercised authority in the name of a public official. Id. at 978-79. The alleged harasser here, Officer Younger, had no authority of his own and exercised no authority in the name of a public official. SUMF, ¶¶ 135-138.

Further, Plaintiffs have adduced no evidence to satisfy the high standard for labelling speech a matter of public concern. A matter of public concern "must relate to 'a subject of general interest and of value and concern to the public.'" Newsome v. City of Philadelphia, 19-cv-5590, ECF Doc. No. 17 at 12 (E.D. Pa. Nov. 12, 2020) (quoting De Ritis v. McGarrigle, 861 F.3d 444, 455 (3d Cir. 2017)) (addressing nearly identical claims). Day-to-day employment grievances do not suffice, and the tone of communication is irrelevant. Id. Plaintiffs complain only of day-to-day employment grievances, not matters of public concern, and their First Amendment retaliation claims fail as a matter of law. Summary judgment should be entered in favor of the City Defendants on Plaintiffs' First Amendment retaliation claims.

### D. PLAINTIFFS' RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs contend that the City Defendants changed their details, disciplined, and counseled them – along with an endless litany of anodyne minutia – in retaliation for complaining about Officer Younger's harassment. These claims fail because any alleged materially adverse actions were either temporally distant or taken for legitimate non-discriminatory reasons.

To state a prima facie case of retaliation under Title VII, a plaintiff must establish: "(1) he engaged in protected activity; (2) the employer engaged in conduct constituting an adverse action either contemporaneous with or after the protected activity; and (3) a causal connection between the protected activity and the adverse action." Jones v. SEPTA, 796 F.3d 323, 330 (3d Cir. 2015). An "adverse action"

13

is conduct that an objectively reasonable employee would find materially adverse, in that the employer's actions could dissuade an objectively reasonable worker from making or supporting a charge of discrimination. Ponton v. AFSCME, 395 Fed. Appx. 867, 874 (3d Cir. 2010).

      **i.**      **Plaintiffs' Retaliation Claims Fail Because Their Protected Activity Was Not Temporally Proximate to Any Adverse Actions.**

Plaintiffs' retaliation claims fail because the alleged materially adverse employment actions occurred months after Plaintiffs engaged in protected behavior. "Title VII retaliation claims must be proved according to traditional principles of but-for causation…[t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 360 (2013). Courts tend to focus on two factors in assessing whether a plaintiff has shown causation: "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period." Hussein v. UPMC Mercy Hosp., 466 Fed. Appx. 108, 112 (3d Cir. 2012) (quotes omitted). Without more, "a gap of three months between the protected activity and the adverse action…cannot create an inference of causation and defeat summary judgment." LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 233 (3d Cir. 2007); see also Blakney v. City of Phila., 559 Fed. Appx. 183, 186 (3d Cir. 2014) ("We have found that a temporal proximity of two days is unusually suggestive of causation, but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive."); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive where three weeks elapsed between protected activity and adverse employment action); Kier v. F. Lackland & Sons, LLC, 72 F. Supp. 3d 597 (E.D. Pa. 2014) ("Absent some intervening antagonism, Plaintiff cannot rest solely on a temporal proximity of more than one week."); Abdul-Latif v. Cnty. of Lancaster, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014) ("Six days is at the long end of what has been held to be unusually suggestive....").

Here, Plaintiffs engaged in activity arguably protected under Title VII and its analogs[2] that the City Defendants may have been aware of on three occasions: January 30, 2019, January 31, 2019, and March 6, 2019 (McCowan's memo to DC Coulter). SUMF, ¶¶ 46-50. The materially adverse actions of which Plaintiffs complain occurred either before (McCowan's changed assignment code, McCowan not being invited to every meeting in the DVIC) or long after Plaintiffs complained. Officer safety issues necessitated Allen's return to JET nightwork on February 26, 2019 – a month after Allen engaged in protected activity. SUMF, ¶¶ 179-185. Allen received a counseling form on March 27, 2019, long after engaging in protected activity. SUMF, ¶ 232. Likewise, the disapproval of McCowan's specious hardship request occurred on May 7 and May 9, 2019, two months after McCowan requested that she be detailed under Deputy Coulter. SUMF, ¶¶ 126-129.

ii.     **Plaintiffs' Retaliation Claims Fail Because Defendants Have Produced Evidence of Legitimate Non-Retaliatory Motives for Any Allegedly-Materially Adverse Actions.**

If a plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct." Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (quotes omitted); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (applying Title VII's burden shifting framework to Section 1981 claims). If the employer does so, the burden shifts back to the plaintiff "to convince the fact finder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. "To survive summary judgment on the issue of pretext, a plaintiff must produce evidence from which a reasonable jury could conclude that the employer's proffered explanation is false and that retaliation was the real reason for the adverse employment action." Steele v. Pelmor Laboratories, Inc., 725 Fed. Appx. 176, 179 (3d Cir. 2018). "'[A]n inference [of pretext] based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat [entry of] summary judgment.'" Id. (quoting Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014)). "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, 'must demonstrate such weaknesses, implausibilities,

---

[2] Allen's FLSA retaliation claim is addressed separately.

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Ultimately, the question is not "whether the employer made the best, or even a sound, business decision; it is whether the real reason is [retaliation]." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

Here, as discussed in detail in section A(ii)-(iii) above, Plaintiffs allege a laundry list of what they perceive to be retaliatory actions taken as a result of their complaints of sexual harassment. Yet, as discussed above, the City Defendants had legitimate non-retaliatory reasons for all allegedly materially adverse employment actions. Plaintiffs' speculation and conjecture about the City Defendants' motives does not give rise to an inference of pretext. Summary judgment in the City Defendants' favor is appropriate on Plaintiffs' retaliation claims in Counts III (Title VII), X (Sec. 1981), XVIII (PHRA), and XXI (PFPO).

## E.   ALLEN'S FLSA RETALIATION CLAIM FAILS BECAUSE SHE CANNOT PROVE THE REQUISITE BUT-FOR CAUSATION.

Allen claims she was retaliated against for asserting her rights under the FLSA's break time for nursing mothers provision. An FLSA retaliation claim requires a plaintiff to plead, "among other things, that the employer took an adverse action [not a materially adverse action] 'either after or contemporaneous with the employee's protected activity.'" Berrada v. Cohen, No. 19-1152, 2019 WL 5618181, at *5 (3d Cir. Oct. 31, 2019) (quoting Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 220 (3d Cir. 2017) (Title VII retaliation elements)); see also 29 U.S.C. § 215(a)(3) (FLSA retaliation provision).

Here, Allen asserted her rights under the FLSA on two occasions: on February 26-27, 2019 while working at the DVIC, and over a two-week period following her detail to NSU on March 28, 2019. SUMF, ¶¶ 186-198. Of the three allegedly adverse employment actions identified by Allen: (1) Allen was returned to JET full-time prior to complaining about lactation accommodations; (2) the counseling form Allen received was not an adverse employment action and was issued more than one month after Allen

16

complained about lactation accommodations; and (3) Allen's detail to Tow Squad occurred several months after Allen last complained to Sgt. Gibbons or Capt. Vann about lactation accommodations. SUMF, ¶¶ 199-220. Allen has adduced no evidence demonstrating that anyone in City government or the PPD had knowledge of Allen's lawsuit on July 30, 2019. Further, Molly O'Neill testified that the process of detailing Allen began several days earlier. SUMF, ¶ 291. Allen has adduced no evidence demonstrating an adverse employment action or a causal connection between an adverse action and Allen's assertions of her rights under the FLSA. Summary judgment should be granted in favor of the City Defendants on Allen's claim of FLSA retaliation (Count V).

**F.   PLAINTIFFS' FMLA CLAIMS FAIL AS A MATTER OF LAW BECAUSE ALLEN WAS NOT ENTITLED TO LEAVE AND MCCOWAN RECEIVED THE FMLA LEAVE SHE REQUESTED.**

Plaintiffs claim interference with their rights under the FMLA and retaliation for asserting their rights under the FMLA. For an FMLA interference claim, a plaintiff must establish "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." Ross v. Gilhuly, 755 F3d 185, 191-92 (3d Cir. 2014). "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-302 (3d Cir. 2012). FMLA interference and retaliation claims are assessed "through the lens of discrimination law" because such claims require proof of the employer's discriminatory intent. Id. at 302.

To be eligible for FMLA leave, a covered employee must have worked 1,250 hours in the previous twelve months. 29 U.S.C.A. § 2611(2)(A)(ii). Covered employees who have worked the requisite 1,250 hours can use up to twelve weeks (or 480 hours) of FMLA leave during a twelve-month period. 29 U.S.C.A. § 2612(a)(1).

Allen's claims fail as a matter of law because Allen had exhausted her statutory FMLA leave requirement in 2018 and had not worked the requisite 1,250 hours since her return in October 2018 to refresh her entitlement to FMLA leave. SUMF, ¶¶ 155-159. Allen had no entitlement to FMLA leave to interfere with, and had no right to FMLA-qualifying leave to invoke as an element of her retaliation claim.

As for McCowan, McCowan requested and received FMLA leave beginning July 10, 2019. SUMF, ¶ 277. McCowan does not allege any adverse employment actions occurring after she submitted FMLA paperwork to her employer, fatal to her retaliation claim.

Plaintiffs' FMLA interference and retaliation claims fail as a matter of law. Summary judgment should be granted in Defendants' favor on Counts VI and VII of their Complaint.

## G. PLAINTIFFS' PENNSYLVANIA WHISTLEBLOWER LAW CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs claim they were retaliated against in violation of the PWL for reporting Officer Younger's sexual harassment. The PWL prohibits employers from retaliating regarding an employee's compensation, terms, conditions, location, or privileges of employment for engaging in certain protected activities in the workplace. 43 P.S. § 1423(a). As a threshold matter, to establish a PWL claim, an employee must prove by a preponderance of the evidence that she engaged in protected activity prior to the alleged retaliation—that she "ma[de] a good faith report. . . to the employer or appropriate authority [of] an instance of wrongdoing or waste." 43 P.S. § 1423.

"Waste" and "wrongdoing" are narrowly defined by the statute. See Drumm v. Triangle Tech, Inc., No. 15-854, 2016 WL 1384886, at *8 (M.D. Pa. Apr. 7, 2016) (stating Pennsylvania WBL "narrow[ly] defin[es] . . . 'waste' and 'wrongdoing'."); Sukenik v. Twp. of Elizabeth, 131 A.3d 550, 555 (Pa. Commw. 2016) (similar). "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. Waste is defined as "[a]n employer's conduct or omissions which result in substantial

abuse, misuse, destruction or loss of funds or resources belonging to or derived from…political subdivision sources." Id.

A PWL report "must provide information that is sufficient to identify the law allegedly violated; reports of vague or subjectively wrong conduct are not considered wrongdoing under the Whistleblower Law." Sukenik, 131 A.3d at 555-56. "The law that the employer violated must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a 'wrongdoing[;]'" a law or policy which is silent on whether such conduct is specifically prohibited is insufficient. Id. at 556; Evans, 81 A.3d at 1072.

Reports of hypothetical or potential violations are not reports of wrongdoing, within the meaning of the PWL. Greco v. Meyer Coach Lines, Inc., 199 A.3d 426, 434 (Pa. Super. 2018) allocatur denied, 208 A.3d 462 (Pa. 2019) (to sustain a PWL claim, a plaintiff's report "must be of an actual violation, not a potential or contemplated violation."); Anderson v. Bd. of School Directors of Millcreek Tp. School Dist., 574 Fed. Appx. 169, 173-74 (3d Cir. 2014) (statement regarding potential or hypothetical wrongdoing does not constitute a report of wrongdoing under the PWL); Sukenik, 131 A.3d at 559 ("[A] report of hypothetical loss is insufficient to trigger the Whistleblower Law's protection.").

### i. Plaintiffs' PWL Claim Fails Because They Have Produced No Concrete Evidence of a Causal Connection Between Any Protected Activity and Any Adverse Employment Action.

An employee must prove a but-for causal connection between a report of waste or wrongdoing and an adverse employment action to sustain a PWL claim. 43 P.S. § 1423(a) (plaintiff must show termination occurred "because the employee . . . ma[de] a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste") (emphasis added); McAndrew v. Bucks Cnty. Bd. Of Com'rs, 982 F. Supp. 2d 491, 503 (E.D.Pa. 2013) ("[T]o make out a case of retaliatory termination [under the PWL], a plaintiff must plead…a causal connection between the report of wrongdoing and an adverse employment action."). Unlike a First Amendment or Title VII retaliation claim, "petty" conduct and harassment by supervisors that does not materially affect an employee's terms or conditions of employment cannot form the basis for a PWL claim. See O'Rourke v.

<u>Commonwealth</u>, 778 A.2d 1194, 1197-99 (Pa. 2001) ("petty conduct…did not materially affect [O'Rourke's] terms or conditions of employment").

"Under Pennsylvania law, in order to show a causal connection, a plaintiff must 'show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed.'" <u>Cavicchia v. Philadelphia Hous. Auth.</u>, No. 03-0116, 2003 WL 22595210, *15 (E.D. Pa. Nov. 7, 2003) (quoting <u>Golaschevsky v. Com., Dept. of Environmental Protection</u>, 720 A.2d 757, 759 (Pa. 1998). A plaintiff's causation burden under the Whistleblower Law is more stringent than under Title VII and the First Amendment, in that courts have held that close temporal proximity alone is insufficient to prove retaliation in PWL claims. <u>Id.</u>; <u>Evans v. Thomas Jefferson Univ.</u>, 81 A.3d 1062, 1070-71 (Pa. Commw. 2013) (holding that mere temporal proximity between a report of wrongdoing and a retaliatory action was insufficient to prove causation for a PWL claim); <u>Golaschevsky</u>, 720 A.2d at 759-60 (four months proximity insufficient); <u>Gray v. Hafer</u>, 651 A.2d 221, 225 (Pa. Commw. 1994) (adverse action taken "within a given amount of time" after report is insufficient).

Here, as described in detail in section D(i) above, Plaintiffs have adduced no evidence of but-for causation through temporal proximity. Not only did legitimate nondiscriminatory reasons animate all adverse actions, any adverse actions were temporally remote from Plaintiffs' alleged reports of waste or wrongdoing. Summary judgment in the City Defendants' favor is appropriate here.

   ii.   **Plaintiffs' PWL Claims Fail Because the City has Identified Legitimate Non-Retaliatory Reasons for All Adverse Employment Actions Taken.**

The PWL uses a burden shifting scheme identical to that used in Title VII discrimination cases; once a plaintiff has "satisfied the threshold showing of a causal connection," the burden shifts to the defendant to show a separate and legitimate reason for its actions. <u>Evans</u>, 81 A.3d at 1070.

As discussed in detail in section A(ii)-(iii) above, the City Defendants have legitimate, non-retaliatory reasons for all adverse employment actions taken involving Plaintiffs. Accordingly, summary judgment in the City Defendants' favor is appropriate on Plaintiffs' PWL claims (Count XIV).

**H. PLAINTIFFS' SECTION 1981 AND 1983 CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES FAIL BECAUSE THE INDIVIDUAL DEFENDANTS ARE IMMUNE TO SUIT.**

Plaintiffs claim that the individually-named City Defendants are individually liable for violations of Plaintiffs constitutional rights. Personal-capacity suits under Section 1983 seek to impose individual liability upon a government officer for actions taken under color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991). Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law: qualified immunity. Id.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 45714 U.S. 800, 818 (1982). The analysis of qualified immunity involves two questions. One question is whether "the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). Another question is whether any such constitutional right was "clearly established," and in particular, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-202.

The individual City Defendants are qualifiedly immune from suit in their individual capacities under Section 1983 because no reasonable employee could believe that the actions taken by Coulter, MacDonald, McCarrick, Conway, McHugh, Williford, Tamika Allen, O'Brien, and Gibbons violated existing law. Plaintiffs have adduced no record evidence that any individual City Defendant took any action involving them without considering both the legality of the action and the benefit to Plaintiffs. To the contrary, each City Defendant carefully considered each and every action implicating Plaintiffs. By

21

way of example, McCarrick made certain to obtain guidance and clearance from Capt. Abrams prior to having Allen return to her assignment on JET in order to avoid the appearance of retaliation, despite the exigency created by the officer safety issues that required Allen to return to JET in the first place. SUMF, ¶ 184.

Summary judgment in favor of the individual City Defendants in their individual capacities is appropriate here.

## I. PLAINTIFFS' CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL BECAUSE PLAINTIFFS HAVE NOT PRODUCED EVIDENCE THAT THEY WERE PERSONALLY INVOLVED IN ANY INFRINGEMENT OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.

Plaintiffs claim that the individually-named City Defendants are individually liable for violations of Plaintiffs constitutional rights. However, individual liability under 42 U.S.C. §§ 1981 and 1983 requires proof that the specific individual defendant intentionally caused an infringement of rights protected by §§ 1981 and 1983. See Miller v. Thomas Jefferson Univ. Hosp., 908 F.Supp. 639, 648-49 (E.D. Pa. 2012) (holding that an individual defendants were not liable for discrimination or retaliation under 42 U.S.C. § 1981 where that defendant did not make decisions infringing on constitutional rights).

Plaintiffs offer no proof of any constitutional violations, no proof of any individual involvement in a constitutional violation on the part of any individual City Defendant, and no intent on the part of any City Defendant to infringe upon Plaintiffs' constitutional rights. Not only have Plaintiffs adduced no evidence to demonstrate any constitutional violations, as addressed elsewhere in the City Defendants' motion, Plaintiffs have adduced no evidence proving that any individual City Defendant intentionally infringed upon their constitutional rights. No act of any City Defendant has been proven to have been intended to deprive Plaintiffs of their constitutional rights. Accordingly, summary judgment in the City Defendants' favor is appropriate here.

## J. ALLEN'S FLSA CLAIM FAILS BECAUSE ALLEN WAS AT ALL TIMES ACCOMMODATED WITHIN THE REQUIREMENTS OF THE LAW.

The Fair Labor Standards Act requires covered employers to provide:

1. a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

2. a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C.A. 207(r)(1).

At all times, Allen was provided the required accommodations. SUMF, ¶¶ 186-220. That Allen chose to express in the DVIC locker room for several months is immaterial. SUMF, ¶ 186.

## K. PLAINTIFFS' AIDING AND ABETTING CLAIMS FAIL AS A MATTER OF LAW.

PHRA and PFPO aiding and abetting claims are subjected to the same analysis. See Williams v. Aramark Campus LLC, No. CV 18-5374, 2020 WL 1182564, at *11 (E.D. Pa. Mar. 12, 2020) (analyzing PHRA and PFPO aiding and abetting claims in tandem). Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." 43 Pa. Con. Stat. § 955(e).

PHRA aiding and abetting/accomplice liability claims brought pursuant to § 955(e) typically implicate supervisory employees, to whom liability may attach for their own direct acts of discrimination, or for their failure to take action to prevent further discrimination by an employee under their supervision. See Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (citing Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996)); see also Brzozowski v. Pa. Tpk. Comm'n, 165 F. Supp. 3d 251, 263 (E.D. Pa. 2016); See Sprecher v. Se. Home Health Servs. of PA, LLC, No. 20-CV-0968, 2020 WL 3830148, at *3 (E.D. Pa. July 8, 2020). However, whether brought against an employer or an employee, PHRA aiding and abetting claims require a shared discriminatory purpose and shared discriminatory intent on the part of the employer and a supervisory employee. Brzozowski, 165 F. Supp. 3d at 263.

Plaintiffs have adduced no evidence of discriminatory intent and discriminatory purpose on the part of any individual City Defendant, let alone that any individual City Defendant shared a discriminatory

intent and a discriminatory purpose with the City of Philadelphia. Accordingly, summary judgment is appropriate on Plaintiffs' unsupported aiding and abetting claims under the PHRA and PFPO.

## L. PLAINTIFFS' IIED CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs contend that the individually-named City Defendants, acting intentionally to do so, caused them emotional distress. Plaintiffs' claims fail as a matter of law. "The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." Corbett v. Morgenstern, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (quoting Abadie v. Riddle Memorial Hosp., 589 A.2d 1143, 1145–46 (Pa. Super. Ct. 1991)). The act must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Johnson v. Caparelli, 625 A.2d 668, 672 (Pa. 1993)). "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." Cheney v. Daily News L.P., 654 Fed. Appx. 578, 583-84 (3d Cir. 2016). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery." Lawson v. Pennsylvania SPCA, 142 F.Supp. 3d 394, 409 (E.D. Pa. 2015) (internal quotations omitted).

As this Court recently observed, "it is extremely rare to find conduct in the employment context that will give rise to the level of outrageousness necessary to provide a basis for recovery of [IIED]." Schaffhouser v. Transedge Truck Centers, No. CV 19-5811-KSM, 2020 WL 2847935, at *5-6 (E.D. Pa. June 2, 2020) (alteration in original) (internal quotation marks removed) (collecting cases where inappropriate workplace behavior was found insufficiently outrageous to make out IIED claim) (Marston, J.). Only where a supervisor engages in sexual harassment and then makes the harassed employee's job impossible to perform have plaintiffs been permitted to proceed on employment-related IIED claims. Id. (discussing Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307, 308 (M.D. Pa. 1988)). See also Shaffer v. National Can Corp., 565 F.Supp. 909 (E.D.Pa. 1983); Fawcett v. I.D.S. Financial Services, 41 Fair Empl. Prac.Cas. 589 (W.D.Pa. 1986).

24

Here, Plaintiffs were allegedly harassed by a non-supervisory employee and have adduced absolutely no record evidence that Coulter, MacDonald, McCarrick, McHugh, Conway, Williford, O'Brien, Tamika Allen, or Gibbons in any extreme or outrageous conduct. Summary judgment should be granted in favor of the individual City Defendants on Plaintiffs' IIED claims.

### M. THERE EXISTS NO LIVE CASE OR CONTROVERSY ALLOWING FOR INJUNCTIVE OR DECLARATORY RELIEF.

Plaintiffs bring claims for declaratory and injunctive relief for violations of their rights under Title VII, Section 1981, Section 1983, the FMLA, the FLSA, the PHRA, the PFPO and the PWL. "If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it." United States v. Virgin Islands, 363 F.3d 276, 284-85 (3d Cir. 2004). In this case, neither Plaintiff remains employed by the PPD. Therefore, there is no live controversy that exists and Plaintiffs are at no future risk of alleged discriminatory practices. Because there exists no basis for injunctive or declaratory relief, Counts XXIII and XXIV must be dismissed.

### V. CONCLUSION

As demonstrated above, Plaintiffs have not met their burden of adducing evidence sufficient to survive summary judgment, and the City Defendants respectfully request that this Honorable Court grant summary judgment in their favor and against Plaintiffs on Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, and XXIV.

Respectfully submitted,

**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**

/s/ Daniel R. Unterburger
DANIEL R. UNTERBURGER
Assistant City Solicitor
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
215.683.5080
Dated: March 5, 2021            daniel.unterburger@phila.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDRA McCOWAN**, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-3326-KSM |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below the foregoing Motion for Summary Judgment was filed electronically along with a Statement of Undisputed Material Facts and Exhibits and made available for download and viewing.

Respectfully submitted,

**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**

/s/ Daniel R. Unterburger
DANIEL R. UNTERBURGER
Assistant City Solicitor

Dated: March 5, 2021

1