# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDRA MCCOWAN, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-3326 |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| Defendants. | : | |

# **O R D E R**

**AND NOW**, this \_\_\_\_\_ day of _____, 2021, upon consideration of Plaintiffs' Motion to Exclude the Expert Testimony of Dr. Reed Goldstein and the responses thereto, it is hereby **ORDERED** that Plaintiffs' motion is **DENIED**.

BY THE COURT:

_____

**KAREN SPENCER MARSTON, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUDRA MCCOWAN, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 19-3326 |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

**DEFENDANTS THE CITY OF PHILADELPHIA, CHRISTINE COULTER, DANIEL MacDONALD, MICHAEL McCARRICK, TIMOTHY McHUGH, BRENT CONWAY, ERIC WILLIFORD, KEVIN O'BRIEN, TAMIKA ALLEN, HERBERT GIBBONS, AND CURTIS YOUNGER'S
<u>JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION</u>**

Defendants the City of Philadelphia, Christine Coulter, Daniel MacDonald, Michael McCarrick, Timothy McHugh, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen, and Herbert Gibbons, joined for purposes of the instant response by Curtis Younger (the City Defendants) hereby submit this Brief In Opposition to Plaintiffs' Motion to Exclude the Testimony of Dr. Reed Goldstein, respectfully requesting that this Honorable Court deny Plaintiffs' baseless motion.

**I.   INTRODUCTION**

Plaintiffs' attempt to exclude the expert opinion testimony of Dr. Reed Goldstein, Ph.D. is nothing more than repetitive expressions of their disagreements with his conclusions. Plaintiffs' Motion rests upon the arguments that Dr. Goldstein is biased in favor of the Defendants, and that Dr. Goldstein's conclusions are incorrect. The issues Plaintiffs raise go to weight and credibility, not the admissibility of Dr. Goldstein's expert opinion testimony. Accordingly, the issues raised

by Plaintiffs are properly evaluated by the jury, not the Court in its gatekeeper role. Plaintiffs' specious motion should be denied.

Dr. Goldstein, an eminently qualified licensed psychologist, was retained by the Defendants to perform a psychological evaluation of Plaintiffs, Audra McCowan and Jennifer Allen. Dr. Goldstein's evaluations, which were never objected to by Plaintiffs, pertain directly to the allegations of psychological harm referenced in the Second Amended Complaint. Plaintiffs do not argue that Dr. Goldstein is unqualified to give an expert opinion. Nor do plaintiffs argue that Dr. Goldstein's proposed testimony does not "fit" the case. Plaintiffs seem to suggest that that Dr. Goldstein's methodology is flawed. This argument is without merit.

Plaintiffs offer no credible argument that Goldstein's methodology was contrary to generally accepted practices in his field of forensic psychology. Before rendering his opinion, Dr. Goldstein employed a reliable methodology as he (1) interviewed Plaintiffs in-person; (2) reviewed documents produced in discovery; and (3) conducted psychological testing used in his field of expertise. The methodology employed by Dr. Goldstein was the same methodology used by Plaintiffs' expert, Dr. Dawn N. Sheehan. Like Dr. Goldstein, Dr. Sheehan (1) interviewed Plaintiffs; (2) reviewed case specific records; (3) and conducted psychological tests.

There is no question that Dr. Goldstein is qualified to provided expert testimony, his methodology was sound, and his testimony "fits" the case. For these reasons, and those that follow, Plaintiffs' *Daubert* Motion must be denied.

## II.     RELEVANT FACTUAL BACKGROUND PROCEDURAL HISTORY

Plaintiffs, who are both former police officers with the Philadelphia Police Department, first commenced this civil action against Ross, the former Commissioner of the Philadelphia Police Department, and multiple other defendants on July 29, 2019. (ECF No. 1). Plaintiffs filed an Amended Complaint (ECF No. 11) and then a Second Amended Complaint on May 21, 2020.

(ECF No. 49). Plaintiffs brought twenty-four separate counts related to discrimination they allege they suffered while working at the Philadelphia Police Department. *See* Court Opinion, 1/11/2021 at 25-26) (ECF No. 120).

Plaintiffs claim that as a result of alleged discrimination and retaliation, they suffered damages including "pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, diminishment of career opportunities, and other harm, both tangible and intangible." 2d Am. Compl., *passim*.

Plaintiffs retained Dawn N. Sheehan, Psy.D., a clinical, forensic, and consulting psychologist to conduct psychological evaluations of both Plaintiffs related to Plaintiffs' claims that they suffered mental distress as a result of the alleged discrimination they faced while employed with the Philadelphia Police Department. (A true and correct copy of Dr. Sheehan's evaluation of McCowan is attached as **Exhibit A**).[1]

On March 10, 2020, Plaintiffs served psychological evaluations of both Plaintiffs on Defendants. With respect to McCowan, Dr. Sheehan considered a number of sources of information, including the following: a clinical interview with McCowan, a client demographic and history form, a mental status examination, the Beck Depression Inventory-II, Generalized Anxiety Disorder 7-item scale, the Hamilton Anxiety Rating Scale, the Minnesota Multiphasic Personality Inventory-2, and the Personality Assessment Inventory. Dr. Sheehan also reviewed the Verified Complaint in this matter, McCowan's Philadelphia Police Department Equal Opportunity Employment Complaint, various PPD documents, and McCowan's medical records from March 2014 through August 2019. Dr. Sheehan then offered the following opinion:

---

[1] References to exhibits refer to Exhibits A, B, C, D, and E, filed separately under seal by Defendant Ross.

> "McCowan . . . presents with significant symptoms of stress or trauma-related anxiety, moderate to severe depression and history of panic. While examinee may not meet full criteria for posttraumatic stress disorder (PTSD), this is only due to the exposure events which may fall short of technical criteria set forth in the … DSM-5 entailing 'actual or threatened death, serious injury or sexual violence.' However, in a therapeutic (as opposed to forensic scope), she would undeniably meet the criteria for PTSD . . . ."

> "The examinee's symptoms exceed the criteria for generalized anxiety disorder with mixed mood."

> "Her emotional distress is significant and appears to be precipitated by her experiences in her prior occupational setting that entailed subtle and not-so-subtle acts of sexual harassment, discrimination, retaliation and hostile work environment."

**Exhibit A**.

With respect to Allen, Dr. Sheehan considered a number of sources of information, including the following: a clinical interview with Allen, a client demographic and history form, a mental status examination, the Beck Depression Inventory-II, Generalized Anxiety Disorder 7-item scale, the Hamilton Anxiety Rating Scale, the Minnesota Multiphasic Personality Inventory-2, and the Personality Assessment Inventory. Dr. Sheehan also reviewed the Verified Amended Complaint in this matter, Allen's Philadelphia Police Department Equal Opportunity Employment Complaint, various PPD documents, and various medical records from November 2015 through August 2019. Dr. Sheehan then offered the following opinion, nearly a word-for-word match with her opinion regarding McCowan:

> "Allen . . . presents with significant symptoms of stress or trauma-related anxiety, moderate depression and panic. While the examinee may not meet full criteria for posttraumatic stress disorder (PTSD), this is only due to exposure events which may fall short of technical criteria set forth in the … DSM-5 entailing 'actual or threatened death, serious injury or sexual violence.' In a therapeutic (as opposed to forensic scope), she would undeniably meet the criteria for PTSD . . . ."

4

> "The examinee's symptoms exceed the criteria for generalized anxiety disorder with mixed mood."
>
> "Her emotional distress is significant and appears to be precipitated by her experiences in her occupational setting which entailed subtle and not-so-subtle acts of sexual harassment, discrimination, retaliation and hostile work environment."

**Exhibit D.**

On April 16, 2020, the Court entered a scheduling order providing, in part, that expert reports were to be served no later than August 14, 2020 and rebuttal reports were to be served no later than September 11, 2020 (ECF No. 28). On September 11, 2020, defendants filed a Motion to Extend Expert Discovery deadlines (for both initial reports as well as rebuttal reports) (ECF No. 92). The Court granted Defendants' Motion and issued a new Scheduling Order on September 14, 2020 (ECF. No. 99). Pursuant to the Amended Scheduling Order, the deadline to provide expert reports was extended to October 30, 2020, and the deadline to provide rebuttal reports was extended to November 13, 2020.

The City Defendants retained Dr. Goldstein to conduct an independent psychological evaluation pursuant to Fed. R. Civ. P. 35. Dr. Goldstein is a clinical psychologist who earned his Doctorate in Clinical Psychology from St. John's University in 1991. (A true and correct copy of Dr. Goldstein's curriculum vitae is attached hereto as **Exhibit B**). According to his curriculum vitae, Dr. Goldstein has provided psychological services for over 30 years. He is currently employed as the Associate Director, Adult Treatment Inpatient Service at Pennsylvania Hospital where he is responsible for the coordination of overall care and the treatment of acutely ill psychiatric and neuropsychiatric inpatients. Dr. Goldstein is further employed by the Psychology Department at Pennsylvania Hospital where he provides consultations to physicians treating medically and neuropsychiatrically impaired individuals as part of the Consultation-Liaison Service at Pennsylvania Hospital. Dr. Goldstein has published and made presentations in the areas

of depression, personality disorder, neuropsychology, assessment, and psychotherapy. Dr. Goldstein serves as an expert witness and renders opinions based on neuropsychological and psychological assessment in forensic/legal cases.

Before reaching his conclusions regarding Plaintiffs' psychological diagnosis and prognosis, he considered the following data: (1) Clinical interview of both Plaintiffs; (2) previous medical records produced in discovery; (3) other discovery documents and deposition testimony of Plaintiffs; (4) results of psychological testing (Beck Depression Inventory-II and Minnesota Multiphasic Personality Inventory-2, Beck Anxiety Inventory, the Millon Clinical Multiaxial Inventory-IV, and the Trauma Symptom Inventory-2); and (5) Review of Dr. Sheehan's Expert Reports. Plaintiffs' expert, Dr. Dr. Sheehan, used the same methodology in forming her opinions.

Dr. Goldstein prepared his expert report and concluded, in part, as to McCowan:

> McCowan's "subjective stress does not rise to the level of threshold problematic clinical symptoms or true diagnosis of PTSD from the perspective of objective assessment."
>
> McCowan's "history is significant for traumas, stressors, and loss unrelated to the alleged workplace events that, in keeping with her personality style, she minimizes or denies and has limited insight into which contribute to her psychological distress."
>
> "It is further significant that Dr. Sheehan did not identify that McCowan-Brown is an individual with longstanding maladaptive personality characteristics *unrelated* to the alleged workplace event." (emphasis added).
>
> McCowan "experiences some depressed and anxious mood; however, *those symptoms cannot be directly linked to the alleged workplace events* and do not interfere with her life at the time of my evaluation." (emphasis added)

See **Ex. C**.

Dr. Goldstein prepared his expert report and concluded, in part, as to Allen:

> Allen "did not fall in the clinically elevated range for core symptoms of [PTSD] or associated symptomology" using "an independent

> measure specific to the objective assessment of PTSD[,]" which Dr. Sheehan's evaluation did not include.
>
> Allen "glossed over and had limited insight into" unrelated stressors, including long-term sexual abuse during adolescence and pregnancy and postpartum-related surgeries and attendant emotional issues.
>
> Allen's subjective stress is in part because of her characteristic distorted way of viewing and processing information. On tests of emotional and personality functioning, she scored similarly to individuals who want to be seen as beyond reproach but are psychologically naïve. They are prone to misinterpret the intentions of others, do not take personal responsibility and blame others for their problems, and fail to recognize their own role in their perceived difficulties. These individuals feel entitled and are likely to become angry or carry a grudge when they sense they are not getting what they want.

*See* **Ex. E** at 14-15.

Dr. Goldstein's proposed testimony contradicts Dr. Sheehan's opinion. Differing conclusions among experts who employed the same methodology does not make Dr. Goldstein's opinion inadmissible. To the contrary, Dr. Goldstein's opinion will assist the trier of fact in determining whether McCowan and Allen have proven that their alleged psychological harm is as extensive as alleged. Based on the following reasons, Plaintiffs' *Daubert* Motion must be denied.

### III. LEGAL ARGUMENT

Dr. Goldstein's expert testimony is admissible because: (1) Dr. Goldstein is a licensed clinical psychologist who possesses the necessary specialized knowledge; (2) the methodology used to reach his conclusions is reliable; and (3) Dr. Goldstein's testimony "fits" the case because he will assist the trier of fact on the issue of damages.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering expert testimony must demonstrate, by a preponderance of the evidence, that the expert's opinions comply with Rule 702. *In Re Suboxone Antitrust Litigation*, Case No. 16-cv-5073, 2020 WIL 6887885, at *2 (E.D. Pa. Nov. 24, 2020) (Goldberg, J.) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993)). "Rule 702 has a 'liberal policy of admissibility' . . . and 'the rejection of expert testimony is the exception rather than the rule.'" *Id*. (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237 243 (3d Cir. 2008); Fed R. Evid. 702, Advisory Comm. Notes (2000)).

An analysis under *Daubert* requires the court to consider: "'the qualifications of the expert, (2) the reliability of the process or technique used in formulating the opinion, and (3) the 'fit' between the opinion and the facts.'" *R.D. v. Shohola, Inc.*, Case No. 3:16-cv-01056, 2019 WL 6054223, at *3 (M.D. Pa. Nov. 15, 2019) (Carlson, J.) (citing *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 519 (M.D. Pa. 2009); *Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-47 (3d Cir. 1994)).

Plaintiffs do not argue that Dr. Goldstein is not qualified to testify in this matter or that his testimony would not "fit" within the facts of the case. Instead, Plaintiffs argue that Dr. Goldstein's methodology – the same methodology employed by Dr. Sheehan – is flawed. Plaintiffs' argument is without merit.

### A. Dr. Goldstein Is Fully Qualified To Provide Expert Testimony Regarding Plaintiffs' Psychological Condition.

Dr. Goldstein is more than qualified to provide expert testimony in this matter. The Third Circuit has articulated the "qualification" standard for an expert:

> Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." . . . We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility if expert testimony "extends to the substantive as well as the formal qualification of experts." . . . However, "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . ."

*In re Suboxone*, 2020 WL 6887885, at *2 (citing *Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998)). An expert's qualifications should be assessed "liberally" and an expert cannot be excluded just because the court does not deem that expert to be the best qualified or have the most appropriate specialization. *Id*. (citing *Thomas v. CMI Terex Corp.*, No. 07-3597, 2009 WL 3068242, at *5 (D.N.J. Sept. 21, 2009); *Holbrook v. Lykes, Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)). "The focus, instead, is on whether the qualifications that an expert does have provide a foundation for the witness to testify meaningfully on a given matter." *Id*. (citing *Buzzerd*, 669 F. Supp. 2d at 522)).

In *Wichterman v. City of Philadelphia*, Civ. No. 16-5797, 2019 WL 2568340 (E.D. Pa. June 20, 2019), the court engaged in a *Daubert* analysis with respect to defendants' motion to exclude the expert testimony of Robert L. Cohen, M.D. Dr. Cohen is a "correctional health expert" who was being proffered by plaintiffs to opine that defendants violated the standard of care after plaintiff died of a drug overdose in defendants' custody at the City of Philadelphia Police Detention Unit ("PDU"). In discussing the "reliability" factor, the court determined that Dr. Cohen was "highly qualified," being that he was a medical doctor who was board certified in the field of internal medicine and with more than thirty-five years of experience in correctional medicine

9

specifically. Moreover, Dr. Cohen had served as a federal and state court-appointed monitor for compliance with consent decrees and settlement agreements regarding the provision of medical care in prisons and jails in at least seven different jurisdictions. Dr. Cohen had further served as the Director for Rikers Island Health Services, where he supervised the provision of medical services for more than 13,000 prisoners in New York City jails. Based on this experience, the court found that Cohen had the "specialized knowledge" regarding correctional medicine and was therefore qualified to offer an opinion to the standard of care that should be provided to a detainee at PDU. *Id*. at *5. Like, Dr. Cohen, Dr. Goldstein possesses the specialized knowledge that uniquely qualifies him to provide expert testimony in forensic psychology.

Plaintiffs do not dispute Dr. Goldstein's qualifications. Dr. Goldstein is a licensed psychiatrist who has a Ph.D. in clinical psychology, has treated psychiatric patients for over 30 years, supervises the treatment of psychiatric and neuropsychiatric inpatients, provides psychotherapy services to adolescents and adults, and conducts neuropsychological evaluations. Dr. Goldstein has the "specialized knowledge" to offer an opinion as to Plaintiffs' diagnosis and prognosis of their alleged psychological harm arising from the facts alleged in the Second Amended Complaint.

    **B.**  **Dr. Goldstein's Methodology Is Reliable.**

The methodology employed by Dr. Goldstein was sound and reliable. The reliability standard for proposed expert testimony requires that the testimony be based upon "the methods and procedures of science rather than on subjective belief or unsupported speculation and that the expert have good grounds for his or her belief." *In re Suboxone*, 2020 WL 6887885, at *3 (internal quotations omitted) (citing *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003)). Courts in the Third Circuit look at the following non-exhaustive list of factors to determine reliability:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which this method have been put.

*Id*. (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000)). Critically, this analysis ***does not require the party proffering the expert to demonstrate the "correctness" of the expert's opinion***. *Id*. (emphasis added) (citing *Paoli*, 35 F.3d at 744 (concluding that the "evidentiary requirement of reliability" amounts to a lower burden "than the merits standard of correctness")). "Rather, the party need only demonstrate 'by a preponderance of the evidence' that the expert's opinion bears adequate indicia of reliability." *Id*. (citing *Paoli*, 35 F.3d at 744). "'[A] a judge will often think that an expert has good grounds to hold the opinion . . . even though the judge thinks the opinion is otherwise incorrect.'" *Id*. (citing *Paoli*, 35 F.3d at 744. And therefore, "'[t]he focus . . . must be solely on principles and methodology, not on the conclusions that they generate.'" *Id*. (citing *Daubert*, 509 U.S. at 595). ***Disputes about the degree of relevance or accuracy may go to the testimony's weight, but not its admissibility***. *Id*. (emphasis added) (citing *i4i Ltd. P'ship. v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)).

The matter of *R.D. v. Shohola, Inc*, *supra*, is instructive on whether the methodology used by a qualified expert comports with the Rules of Evidence. In *R.D.*, the Court held that the methods employed by the Plaintiffs' expert in forming her diagnosis of PTSD, borderline personality disorder, and depression were based on a reliable methodology. The *R.D.* Court noted that the proffered expert testimony was based on the examination of plaintiff and test results, along with a review of plaintiff's medical records and treatment history. The *R.D.* Court determined that these techniques [methods] were widely accepted within the field of psychiatry, had been subject to peer

11

review over time, were generally regarded as reliable forensic techniques in the field of psychiatry, and were undertaken in ways that complied with professional norms, and that therefore, the proffered testimony was reliable. *Id.*, 2019 WL 6054223 at *7-8.

Dr. Goldstein employed the same used widely accepted techniques when preparing his evaluations of McCowan and Allen. His methodology included interviewing each plaintiff, conducting diagnostic testing, and reviewing past medical history and treatment records. Plaintiffs' expert, Dr. Sheehan, used the same methodology. Dr. Goldstein's methodology was sound and his opinions, whether disputed or not, are reliable for purposes of admissibility under the Federal Rules of Evidence. *See Paoli*, 35 F.3d at 744.[2]

### C. Dr. Goldstein's Testimony Fits The Facts Of The Case.

To determine whether an expert's testimony "fits" the proceedings, the court must ask whether it "'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Suboxone*, 2020 WL 6887885, at *3 (citing Fed. R. Evid. 702(a); *UGI Sunbury, LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3d Cir. 2020)). "[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for the purposes of the case*." *Id.* at *4.

Plaintiffs do not dispute that Dr. Goldstein's testimony fits the facts of the case. Dr. Goldstein provides expert guidance on the pivotal damages issue in this case – whether Plaintiffs' alleged emotional distress was caused by the Defendant(s) or based on other factors that were gleaned from the data relied upon by Dr. Goldstein in forming his expert opinions.

---

[2] Plaintiffs argue that Dr. Goldstein's methodology is not the result of scientific methodology, because . Dr. Goldstein is "a professional expert for hire who depends on repeat business from the City of Philadelphia and that he has never provided the City of Philadelphia with an unfavorable opinion." These arguments, weak as they may be, speak to weight, not admissibility. *See In re Suboxone*, 2020 WL 6887885, at *3; *Elcock v. Kmart Corp.*, 233 F.3d at 745-46.

D.  **Dr. Goldstein's Evaluation Rebuts Dr. Sheehan's Evaluation**

The City Defendants briefly address Plaintiffs' argument that Dr. Goldstein's testimony is not admissible because his evaluation was a rebuttal report (as opposed to an initial report) and that his evaluation does not directly rebut Dr. Sheehan's evaluation nor does it address her "actual opinions." This argument is meritless, particularly in light of this Court's decision to accept Dr. Goldstein's reports as rebuttal reports, communicated telephonically to all counsel in a November 17, 2020 pretrial conference. See ECF No. 116 (Minute Entry for Pretrial Conference).

Dr. Sheehan concludes, in part, that Plaintiffs suffer from mental distress a result of alleged discrimination in the workplace. Dr. Goldstein concludes that Plaintiffs did not suffer any psychological harm due to the alleged discrimination in the workplace. Dr. Goldstein's proffered expert testimony rebuts Dr. Sheehan's opinion. And, as Dr. Sheehan has yet to testify, Dr. Goldstein would likely be permitted to rebut any testimony that she may present at the time of trial, to the extent necessary. Thus, this argument must be disregarded.

## IV. CONCLUSION

For the foregoing reasons, the City Defendants respectfully request that this Court deny Plaintiff's Motion to Exclude the Testimony of Dr. Reed Goldstein, thereby permitting Dr. Goldstein to provide expert testimony.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| **CLARK HILL PLC** | **CITY OF PHILADELPHIA LAW DEPARTMENT** |
| /s/ Daniel J. McGravey | /s/ Daniel R. Unterburger |
| DANIEL J. McGRAVEY | DANIEL R. UNTERBURGER |
| AMY C. LACHOWICZ | Assistant City Solicitor |
| Two Commerce Square | 1515 Arch Street, 16th Floor |
| 2001 Market Street, Suite 2620 | Philadelphia, PA  19102 |
| Philadelphia, PA  19103 | 215.683.5080 |
| 215.640.8500 | daniel.unterburger@phila.gov |
| dmcgravey@clarkhill.com | |
| alachowicz@clarkhill.com | |

Dated: March 26, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDRA MCCOWAN, et al.,** | : | |
| Plaintiffs, | : : : | |
| v. | : : | Civil Action No. 19-3326-KSM |
| **CITY OF PHILADELPHIA, et al.,** | : : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Response to Plaintiffs' Motion to Preclude the Expert Testimony of Dr. Reed Goldstein was filed electronically and is available for viewing and downloading.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| **CLARK HILL PLC** | **CITY OF PHILADELPHIA LAW DEPARTMENT** |
| /s/ Daniel J. McGravey<br>DANIEL J. McGRAVEY | /s/ Daniel R. Unterburger<br>DANIEL R. UNTERBURGER<br>Assistant City Solicitor |

Dated: March 26, 2021