IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDRA McCOWAN *and* <br> JENNIFER ALLEN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PHILADELPHIA, et al. <br><br> Defendants. | CIVIL ACTION <br><br> NO. 19-CV-3326-KSM |

# ORDER

AND NOW, this _____ day of _____, 2021, it is hereby ORDERED, upon consideration of Plaintiffs' Motion to Preclude the Testimony of Defendants' Expert Dr. Reed Goldstein, and Defendants' response thereto, that Plaintiffs' Motion is DENIED.

BY THE COURT:

_____

J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDRA McCOWAN *and* : <br> JENNIFER ALLEN, : <br> : | CIVIL ACTION |
| Plaintiffs, : <br> : | NO. 19-CV-3326-KSM |
| v. : <br> : | |
| CITY OF PHILADELPHIA, et al. : <br> : | |
| Defendants. : | |

**BRIEF IN SUPPORT OF DEFENDANT RICHARD ROSS JR.'S OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF DR. REED GOLDSTEIN**

ARCHER & GREINER,
A Professional Corporation

Jeffrey M. Scott, Esquire
jscott@archerlaw.com
Jeffrey M. Kolansky
jkolansky@archerlaw.com
Archer & Greiner, P.C.
1717 Arch Street, Suite 3500
Philadelphia, PA 19103

Attorneys for Defendant Richard Ross, Jr.

1

Defendant Richard Ross, Jr., by and through his attorneys, Archer & Greiner, P.C., hereby submits this Brief In Opposition to Plaintiffs' Motion to Exclude the Testimony of Dr. Reed Goldstein:

## I.   INTRODUCTION

Plaintiffs' attempt to exclude the expert opinion testimony of Dr. Reed Goldstein, Ph.D. is nothing more than repetitive expressions of their disagreements with his conclusions. Plaintiffs' Motion rests upon the arguments that Dr. Goldstein is biased in favor of the Defendants, and that Dr. Goldstein's conclusions are incorrect.  The issues Plaintiffs raise go to weight and credibility, not admissibility.

Dr. Goldstein, an eminently qualified licensed psychologist, was retained by the Defendants to perform a psychological evaluation of Plaintiffs, Audra McCowan and Jennifer Allen.  Dr. Goldstein's evaluations, which was never objected to by Plaintiffs, pertain directly to the allegations of psychological harm referenced in the Second Amended Complaint.  Plaintiffs do not argue that Dr. Goldstein is unqualified to give an expert opinion.  Nor do plaintiffs argue that Dr. Goldstein's proposed testimony does not "fit" the case.  Plaintiffs seem to suggest that that Dr. Goldstein's methodology is flawed.  This argument is without merit.

Plaintiffs offer no credible argument that Goldstein's methodology was contrary to generally accepted practices in his field of forensic psychology.  Before rendering his opinion, Dr. Goldstein employed a reliable methodology as he (1) interviewed Plaintiffs in-person; (2) reviewed documents produced in discovery; and (3) conducted psychological testing used in his field of expertise.  The methodology employed by Dr. Goldstein was the same methodology used by Plaintiffs' expert, Dr. Dawn N. Sheehan.  Like Dr. Goldstein, Dr. Sheehan (1) interviewed Plaintiffs; (2) reviewed case specific records; (3) and conducted psychological tests.

There is no question that Dr. Goldstein is qualified to provided expert testimony, his methodology was sound, and his testimony "fits" the case. For these reasons, and those that follow, Plaintiffs' *Daubert* Limine must denied.

## II.     RELEVANT FACTUAL BACKGROUND PROCEDURAL HISTORY

Plaintiffs, who are both former police officers with the Philadelphia Police Department, first commenced this civil action against Ross, the former Commissioner of the Philadelphia Police Department, and multiple other defendants on July 29, 2019. (ECF No. 1). Plaintiffs filed an Amended Complaint (ECF No. 11) and then a Second Amended Complaint on May 21, 2020. (ECF No. 49). Plaintiffs brought twenty-four separate counts related to discrimination they alleged they suffered while working at the Philadelphia Police Department. *See* Court Opinion, 1/11/2021 at 25-26) (ECF No. 120).

The Plaintiffs brought the following claims against Ross: Count VIII Section 1981 Disparate Treatment; Count IX-Section 1981 Hostile Work Environment; Count X- Section 1981; Retaliation; Count XI-Section 1983 Disparate Treatment in Violation of Equal Protection Clause; XII-Section 1983-Hostile Work Environment in Violation of Equal Protection Clause; Count XIII-Section 1983-Retaliation in Violation of Petition Clause; XIV-Pennsylvania Whistleblower Retaliation; Count XV-Intentional Infliction of Emotional Distress; Count XVIII-PHRA Retaliation; XIX PHRA Aiding and Abetting;  Count XX-Philadelphia Fair Practices Ordinance ("PFPO") and Count XXI-PFPO Retaliation. Plaintiffs allege that as a result of this discrimination and harassment, they suffered damages, including "pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, diminishment of career opportunities, and other harm …"

On January 11, 2021, this Court granted in part, and denied in part, Ross' Motion to Dismiss. The Court dismissed Allen's claims against Ross because she failed to set forth any

3

allegations against him that gave rise to liability as a matter of law.  As to McCowan, Counts XII, XIII, XIV, Count X, XVIII, XIX, XX, and XXI survived.  Summary Judgment is now pending before the Court.

Plaintiffs retained Dawn N. Sheehan, Psy.D., a clinical, forensic, and consulting psychologist to conduct psychological evaluations of both Plaintiffs related to Plaintiffs' claims that they suffered mental distress as a result of the discrimination they faced while employed with the Philadelphia Police Department.  (A true and correct copy of Dr. Sheehan's evaluation of McCowan is attached as **Exhibit A**).

On March 10, 2020, Plaintiffs served psychological evaluations of both Plaintiffs on Defendants.  With respect to McCowan[1], Dr. Sheehan considered a number of sources of information, including the following: a clinical interview with McCowan, a client demographic and history form, a mental status examination, the Beck Depression Inventory-II, Generalized Anxiety Disorder 7-item scale, the Hamilton Anxiety Rating Scale, the Minnesota Multiphasic Personality Inventory-2, and the Personality Assessment Inventory.  Dr. Sheehan also reviewed the Verified Complaint in this matter, McCowan's Philadelphia Police Department Equal Opportunity Employment Complaint, various PPD documents, and McCowan's medical records from March 2014 through August 2019.  Dr. Sheehan then offered the following opinion:



---

[1] Because the Court granted Ross' Motion to Dismiss as to Allen's claims, for the purposes of this brief, Ross shall only examine the opinions of Dr. Sheehan and Dr. Goldstein as they relate to McCowan.  A true and correct copy of Dr. Sheehan's report with respect to Allen is attached as Exhibit D for the Court's reference, along with a true and correct copy of Dr. Goldstein's report with respect to Allen, which is attached as Exhibit E.



**Exhibit A**.

On April 16, 2020, the Court entered a scheduling order providing, in part, that expert reports were to be served no later than August 14, 2020 and rebuttal reports were to be served no later than September 11, 2020 (ECF No. 28). On September 11, 2020, defendants filed a Motion to Extend Expert Discovery deadlines (for both initial reports as well as rebuttal reports) (ECF No. 92). The Court granted Defendants' Motion and issued a new Scheduling Order on September 14, 2020 (ECF. No. 99). Pursuant to the Amended Scheduling Order, the deadline to provide expert reports was extended to October 30, 2020, and the deadline to provide rebuttal reports was extended to November 13, 2020.

The City Defendants retained Dr. Goldstein to conduct an independent psychological evaluation pursuant to Fed. R. Civ. P. 35. Dr. Goldstein is a clinical psychologist who earned his Doctorate in Clinical Psychology from St. John's University in 1991. (A true and correct copy of Dr. Goldstein's curriculum vitae is attached hereto as **Exhibit B**). According to his curriculum vitae, Dr. Goldstein has provided psychological services for over 30 years. He is currently employed as the Associate Director, Adult Treatment Inpatient Service at Pennsylvania Hospital where he is responsible for the coordination of overall care and the treatment of acutely ill psychiatric and neuropsychiatric inpatients. Dr. Goldstein is further employed by the Psychology Department at Pennsylvania Hospital where he provides consultations to physicians

treating medically and neuropsychiatrically impaired individuals as part of the Consultation-Liaison Service at Pennsylvania Hospital.  Dr. Goldstein has published and made presentations in the areas of depression, personality disorder, neuropsychology, assessment, and psychotherapy.  Dr. Goldstein serves as an expert witness and renders opinions based on neuropsychological and psychological assessment in forensic/legal cases.

Before reaching his conclusions regarding Plaintiffs' psychological diagnosis and prognosis, he considered the following data: (1) Clinical interview of both Plaintiffs; (2) previous medical records produced in discovery; (3) other discovery documents and deposition testimony of Plaintiffs; (4) results of psychological testing (Beck Depression Inventory-II and Minnesota Multiphasic Personality Inventory-2, Beck Anxiety Inventory, the Millon Clinical Multiaxial Inventory-IV, and the Trauma Symptom Inventory-2); and (5) Review of Dr. Sheehan's Expert Reports.  Plaintiffs' expert, Dr. Dr. Sheehan, used the same methodology in forming her opinions.

Dr. Goldstein prepared his expert report and concluded, in part,:



6

*See* Dr. Goldstein Report, dated November 12, 2020, attached hereto as **Exhibit C**). Dr. Goldstein's proposed testimony, contradicts Dr. Sheehan's opinion. A mere dispute among experts, who employed the same methodology, does not make Dr. Goldstein's opinion inadmissible. To the contrary, Dr. Goldstein's opinion will assist the trier of fact in determining whether McCowan's has proven that her alleged psychological harm was caused by Defendant(s). Based on the following reasons, Plaintiffs' *Daubert* Motion must be denied.

### III.    LEGAL ARGUMENT

Dr. Goldstein's expert testimony is admissible because: (1) is a licensed clinical psychologist who possesses the necessary specialized knowledge; (2) the methodology used to reach his conclusions is reliable; and (3) Dr. Goldstein's testimony "fits" the case because he will assist the trier of fact on the issue of damages.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering expert testimony must demonstrate, by a preponderance of the evidence, that the expert's opinions comply with Rule 702. *In Re Suboxone Antitrust Litigation*, Case No. 16-cv-5073, 2020 WIL 6887885, at *2 (E.D. Pa. Nov. 24, 2020) (Goldberg, J.) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993)). "Rule 702

has a 'liberal policy of admissibility' … and 'the rejection of expert testimony is the exception rather than the rule.'" *Id*. (quoting *Pineda v. Ford Motor Co.,* 520 F.3d 237 243 (3d Cir. 2008); Fed R. Evid. 702, Advisory Comm. Notes (2000)).

An analysis under *Daubert* requires the court to consider: "'the qualifications of the expert, (2) the reliability of the process or technique used in formulating the opinion, and (3) the 'fit' between the opinion and the facts.'" *R.D. v. Shohola, Inc.*, Case No. 3:16-cv-01056, 2019 WL 6054223, at *3 (M.D. Pa. Nov. 15, 2019) (Carlson, J.) (citing *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 519 (M.D. Pa. 2009); *Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-47 (3d Cir. 1994)).

Plaintiffs do not argue that Dr. Goldstein is not qualified to testify in this matter or that his testimony would not "fit" within the facts of the case. Instead, Plaintiffs argue that Dr. Goldstein's methodology – the same methodology employed by Dr. Sheehan – is flawed. Plaintiffs' argument is without merit.

### A. Dr. Goldstein Is Fully Qualified To Provide Expert Testimony Regarding Plaintiffs' Psychological Condition.

Dr. Goldstein is more than qualified to provide expert testimony in this matter. The Third Circuit has articulated the "qualification" standard for an expert:

> Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." … We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility if expert testimony "extends to the substantive as well as the formal qualification of experts." … However, "at a minimum, a proffered expert witness … must possess skill or knowledge greater than the average layman. …"

*In re Suboxone*, 2020 WL 6887885, at *2 (citing *Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998)).

An expert's qualifications should be assessed "liberally" and an expert cannot be excluded just

because the court does not deem that expert to be the best qualified or have the most appropriate specialization. *Id*. (citing *Thomas v. CMI Terex Corp.*, No. 07-3597, 2009 WL 3068242, at *5 (D.N.J. Sept. 21, 2009); *Holbrook v. Lykes, Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)). "The focus, instead, is on whether the qualifications that an expert does have provide a foundation for the witness to testify meaningfully on a given matter." *Id*. (citing *Buzzerd*, 669 F. Supp. 2d at 522)).

In *Wichterman v. City of Philadelphia*, Civ. No. 16-5797, 2019 WL 2568340 (E.D. Pa. June 20, 2019), the court engaged in a *Daubert* analysis with respect to defendants' motion to exclude the expert testimony of Robert L. Cohen, M.D. Dr. Cohen is a "correctional health expert" who was being proffered by plaintiffs to opine that defendants violated the standard of care after plaintiff died of a drug overdose in defendants' custody at the City of Philadelphia Police Detention Unit ("PDU"). In discussing the "reliability" factor, the court determined that Dr. Cohen was "highly qualified," being that he was a medical doctor who was board certified in the field of internal medicine and with more than thirty-five years of experience in correctional medicine specifically. Moreover, Dr. Cohen had served as a federal and state court-appointed monitor for compliance with consent decrees and settlement agreements regarding the provision of medical care in prisons and jails in at least seven different jurisdictions. Dr. Cohen had further served as the Director for Rikers Island Health Services, where he supervised the provision of medical services for more than 13,000 prisoners in New York City jails. Based on this experience, the court found that Cohen had the "specialized knowledge" regarding correctional medicine and was therefore qualified to offer an opinion to the standard of care that should be provided to a detainee at PDU. *Id*. at *5. Like, Dr. Cohen, Dr. Goldstein possesses the

9

specialized knowledge that uniquely qualifies him to provide expert testimony in forensic psychology.

Plaintiffs do not dispute Dr. Goldstein's qualifications. Dr. Goldstein is a licensed psychiatrist who has a Ph.D. in clinical psychology, has treated psychiatric patients for over 30 years, supervises the treatment of psychiatric and neuropsychiatric inpatients, provides psychotherapy services to adolescents and adults, and conducts neuropsychological evaluations. Dr. Goldstein has the "specialized knowledge" to offer an opinion as to Plaintiffs' diagnosis and prognosis of their alleged psychological harm arising from the facts alleged in the Second Amended Complaint.

### B. Dr. Goldstein's Methodology Is Reliable.

The methodology employed by Dr. Goldstein was sound and reliable. The reliability standard for proposed expert testimony requires that the testimony be based upon "the methods and procedures of science rather than on subjective belief or unsupported speculation and that the expert have good grounds for his or her belief." *In re Suboxone*, 2020 WL 6887885, at *3 (internal quotations omitted) (citing *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003)). Courts in the Third Circuit look at the following non-exhaustive list of factors to determine reliability:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which this method have been put.

*Id.* (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000)). Critically, this analysis **does not require the party proffering the expert to demonstrate the "correctness" of the**

*expert's opinion*.  *Id*. (emphasis added) (citing *Paoli*, 35 F.3d at 744 (concluding that the "evidentiary requirement of reliability" amounts to a lower burden "than the merits standard of correctness")).  "Rather, the party need only demonstrate 'by a preponderance of the evidence' that the expert's opinion bears adequate indicia of reliability."  *Id*. (citing *Paoli*, 35 F.3d at 744).  "'[A] a judge will often think that an expert has good grounds to hold the opinion … even though the judge thinks the opinion is otherwise incorrect.'"  *Id*. (citing *Paoli*, 35 F.3d at 744.  And therefore, "'[t]he focus … must be solely on principles and methodology, not on the conclusions that they generate.'"  *Id*. (citing *Daubert*, 509 U.S. at 595).  **Disputes about the degree of relevance or accuracy may go to the testimony's weight, but not its admissibility**.  *Id*. (emphasis added) (citing *i4i Ltd. P'ship. v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)).

      The matter of *R.D. v. Shohola, Inc*, *supra*, is instructive on whether the methodology used by an qualified expert comports with the Rules of Evidence.  In *R.D.*, the Court held that the methods employed by the Plaintiffs' expert in forming her diagnosis of PTSD, borderline personality disorder, and depression was based on a reliable methodology.  The *R.D.* Court noted that the proffered expert testimony was based on the examination of plaintiff and test results, along with a review of plaintiff's medical records and treatment history.  The *R.D.* Court determined that these techniques [methods] were widely accepted within the field of psychiatry, had been subject to peer review over time, were generally regarded as reliable forensic techniques in the field of psychiatry, and were undertaken in ways that complied with professional norms, and that therefore, the proffered testimony was reliable.  *Id.*, 2019 WL 6054223 at *7-8.

Dr. Goldstein employed the same used widely accepted techniques when preparing his evaluation of McCowan. His methodology included interviewing McCowan, conducting diagnostic testing, reviewing past medical history and treatment records. Plaintiffs' expert, Dr. Sheehan, used the same methodology. Dr. Goldstein's methodology was sound and his opinions, whether disputed or not, are reliable for purposes of admissibility under the Federal Rules of Evidence. *See Paoli*, 35 F.3d at 744.[2]

C. **Dr. Goldstein's Testimony Fits The Facts Of The Case.**

To determine whether an expert's testimony "fits" the proceedings, the court must ask whether it "'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Suboxone*, 2020 WL 6887885, at *3 (citing Fed. R. Evid. 702(a); *UGI Sunbury, LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3d Cir. 2020)). "[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for the purposes of the case*." *Id.* at *4.

Plaintiffs do not dispute that Dr. Goldstein's testimony fits the facts of the case. Dr. Goldstein provides expert guidance on the pivotal damages issue in this case – whether McCowan's alleged emotional distress was caused by the Defendant(s) or based on other factors that were gleaned from the data relied upon by Dr. Goldstein in forming his expert opinions.

D. **Dr. Goldstein's Evaluation Rebuts Dr. Sheehan's Evaluation**

Defendant Ross briefly address Plaintiffs' argument that Dr. Goldstein's testimony is not admissible because his evaluation was a rebuttal report (as opposed to an initial report) and that

---

[2] Plaintiffs argue that Dr. Goldstein's methodology is not the result of scientific methodology, because . Dr. Goldstein is "a professional expert for hire who depends on repeat business from the City of Philadelphia and that he has never provided the City of Philadelphia with an unfavorable opinion. These arguments relate to weight or credibility, not to admissibility. *See In re Suboxone*, 2020 WL 6887885, at *3*; Elcock v. Kmart Corp.*, 233 F.3d at 745-46.

12

his evaluation does not directly rebut Dr. Sheehan's evaluation nor does it address her "actual opinions." This argument is meritless.

Dr. Sheehan concludes, in part, that Plaintiffs suffer from mental distress a result of the alleged discrimination in the workplace. Dr. Goldstein concludes that Plaintiffs did not suffer any psychological harm due to the alleged discrimination in the workplace. Dr. Goldstein's proffered expert testimony rebuts Dr. Sheehan's opinion. And, as Dr. Sheehan has yet to testify, Dr. Goldstein would likely be permitted to rebut any testimony that she may present at the time of trial, to the extent necessary. Thus, this argument must be disregarded.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Richard Ross, Jr. respectfully requests that this Court enter an Order denying Plaintiff's Motion to Exclude the Testimony of Dr. Reed Goldstein and permitting Dr. Goldstein to provide expert testimony.

Respectfully submitted,

By:   */s/ Jeffrey M. Scott*
Jeffrey M. Scott, Esquire
jscott@archerlaw.com
Jeffrey M. Kolansky
jkolansky@archerlaw.com
Archer & Greiner, P.C.
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Telephone:    (215) 963-3300
Attorneys for Defendant Richard Ross, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, I served the Brief in Support of Defendant Richard Ross Jr.'s Opposition to Plaintiffs' *Daubert* Motion to Exclude Testimony of Dr. Reed Goldstein, on the Court's ECF Website and is available for download and reviewing.

Daniel R. Unterburger
Erica Kane
Assistant City Solicitor
Labor & Employment Unit
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA  19102

Amy C. Lachowicz
Daniel J. McGravey
Lauri A. Kavulich
Clark Hill PLC
2001 Market Street
Two Commerce Square
Suite 2620
Philadelphia, PA 19103

Ian M. Bryson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
ian@dereksmithlaw.com

Dated:  March 26, 2021

By:     */s/ Jeffrey M. Scott*
Jeffrey M. Scott, Esquire
Archer & Greiner, P.C.
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
Telephone:    (215) 963-3300
Facsimile:    (215) 963-9999
Attorneys for Defendant Richard Ross, Jr.

220548719v3