IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA MCCOWAN, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **CITY OF PHILADELPHIA, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br><br> **NO. 2:19-cv-03326-KSM** |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                                      **MARCH 30, 2021**

Before the Court is the most recent in a seemingly endless series of discovery disputes in this case. (*See* Doc. Nos. 57, 62, 69, 71, 79, 83, 92, 94, 100, 113, 118, 130.) In their current motion, the City Defendants,[1] on their own behalf and on behalf of non-party law firm, Montgomery, McCracken, Walker & Rhoads, LLP, seek a protective order that will preserve the confidentiality of three categories of documents: (1) Philadelphia Police Department investigation files, which are responsive to Plaintiffs' subpoena directed to Montgomery McCracken; (2) Montgomery McCracken's privilege log; and (3) the memorandum section for each Internal Affairs and/or Equal Employment Opportunity (EEO) file that involves complaints of gender discrimination, sexual assault, or sexual harassment within the Philadelphia Police Department from October 2015 to present, which are responsive to Plaintiffs' second request for production of documents directed to the City. (Doc. No. 130 at pp. 11–12.) Plaintiffs oppose the motion, arguing that the City Defendants have not demonstrated good cause and that the

---

[1] The term "City Defendants" collectively refers to Defendants City of Philadelphia, Deputy Commissioner Christine Coulter, Chief Inspector Daniel MacDonald, Inspector Michael McCarrick, Lieutenant Timothy McHugh, Sergeant Brent Conway, Sergeant Eric Williford, Sergeant Kevin O'Brien, Sergeant Tamika Allen, and Sergeant Herbert Gibbons.

proposed protective order is overbroad.  (*See generally* Doc. No. 131.)  For the reasons discussed below, the motion is granted in part and denied in part.

I. Factual Background and Procedural History

Because the Court writes for the benefit of the parties, our discussion of the underlying facts is brief.  Plaintiff Audra McCowan is a former corporal in the City of Philadelphia Police Department, and Plaintiff Jennifer Allen is an officer with the Department.  Plaintiffs claim that a fellow officer, Defendant Curtis Younger, and numerous supervisors subjected them to unlawful discrimination, retaliation, and a hostile work environment in violation of federal and state law.  This discovery dispute is a continuation of two previous discovery issues, one involving Montgomery McCracken and the other involving only the City Defendants.

A. Montgomery McCracken Dispute

First, on January 1, 2020, the City of Philadelphia Law Department engaged Montgomery McCracken to conduct an internal investigation into sexual harassment and gender discrimination in the Police Department.  (Doc. No. 118-1 at ¶ 2.)  The investigation was headed by A. Nicole Phillips, Esquire, and on July 31, 2020, during discovery in this case, Plaintiffs served a subpoena to produce documents on Ms. Phillips and the law firm, seeking "[a]ll documents relating to [her] investigation."  (Doc. No. 94-1 at p. 2.)  On August 31, 2020, the City Defendants filed a motion to quash the subpoena, which the law firm joined, arguing that documents responsive to the subpoena were protected by multiple privileges, including the attorney-client privilege.  (Doc. No. 94.)  The Court denied that motion, finding in relevant part that the City Defendants had not carried their burden of showing that the attorney-client privilege applied.  (Doc. No. 111 at pp. 6–10; *see also* Doc. No. 112.)

On November 18, 2020, the City Defendants moved for reconsideration or in the alternative, for clarification about whether the Court's previous Order required production of all responsive documents, even those covered by the attorney-client privilege. (Doc. No. 118.) On January 15, 2021, the Court denied the motion to the extent it sought reconsideration but granted the City Defendants' request for clarification. (*See* Doc. Nos. 125–26.) The Court explained that "nothing in our Order prohibits Ms. Phillips or Montgomery McCracken from raising the attorney-client privilege as to specific documents responsive to Plaintiffs' subpoena." (Doc. No. 125 at p. 9.) The Court then ordered Ms. Phillips and Montgomery McCracken to produce all documents and/or privilege logs responsive to Plaintiffs' subpoena by February 15, 2021. (Doc. No. 126 at p. 2.)

Montgomery McCracken has divided its responsive documents into three sets. The first set consists of more than 8,000 pages of documents, all of which were produced in November after the Court initially denied the motion to quash. (Doc. No. 130 at p. 13.) The second set includes documents that Montgomery McCracken has agreed to produce once Plaintiffs sign a confidentiality agreement. (*Id.*) And the third set contains documents that are being withheld on privilege grounds. (*Id.*) This motion relates to the second and third sets. Specifically, the City Defendants ask this Court to enter a protective order preserving the confidentiality of 42 closed Equal Employment Opportunity ("EEO") investigation files that contain allegations of sexual harassment; other internal documents relating to the City's Employee Relations Unit ("ERU"), which conducts these investigations; and Montgomery McCracken's privilege log. (*Id.* at p. 15.)

B.   City of Philadelphia Dispute

On July 29, 2020, Plaintiffs served the City with their second set of requests for production of documents. (*See* Doc. No. 110-6.) The tenth request sought "the memorandum

3

section for each Internal Affairs and/or Equal Employment Opportunity (EEO) file dated 2014 to present, as it pertains to any complaints of gender discrimination, sexual assault, or sexual harassment" (the "Internal Memoranda"). (*Id.* at p. 2.) The City objected to the request as seeking documents "that are not proportional to the needs of this case . . . and as such, the burden or expense of the proposed discovery outweighs its likely benefit." (Doc. No. 100-11 at p. 7.) Plaintiffs then filed a motion to compel a response (Doc. No. 100), which the City Defendants opposed (Doc. No. 102). On January 14, 2021, the Court granted in part Plaintiffs' motion to compel. (*See* Doc. No. 124 at pp. 1–2 (limiting request to responsive documents dated October 2015 to present).) The City Defendants now ask this Court to enter a protective order that allows the City to mark the internal memoranda as confidential. (Doc. No. 130 at p. 15.)

II.   Legal Standard

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue a protective order "to shield a party from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "A protective order is intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quotation marks omitted); *see also McKenna v. City of Philadelphia*, No. Civ.A. 98-5835, 2000 WL1521604, at *1 (E.D. Pa. Sept. 29, 2000) ("Whether th[e] disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public."). The "party seeking a protective order over discovery material must demonstrate that good cause exists for the order." *In re Avandia*, 924 F.3d at 671. "Good cause means that disclosure will work a clearly

4

defined and serious injury to the party seeking closure," and the injury "must be shown with specificity." *Id*. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing." *Pansy*, 23 F.3d at 786.

In determining whether good cause exists, the Third Circuit has instructed us to consider the following factors, which are "neither mandatory nor exhaustive": (1) whether the disclosure will violate any private interests; (2) whether disclosure of the information will cause a party embarrassment; (3) whether the information is being sought for a legitimate purpose or for an improper purpose; (4) whether the sharing of information among the litigants will promote fairness and efficiency; (5) whether confidentiality is being sought over information important to public health and safety; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* at 67–72.

III. Discussion

The City Defendants argue that the *Pansy* factors weigh in favor of granting a limited protective order. Plaintiffs disagree, arguing that the City waived any argument that the internal memoranda should be considered confidential. In addition, Plaintiffs argue that the City Defendants have not shown good cause for issuing the protective order as to any of the documents sought by Plaintiffs' second request and non-party subpoena, that Defendants have failed to rebut the presumption of public access or the First Amendment right of access to judicial proceedings, and that the proposed protective order is overbroad.

For the reasons discussed below, we grant the City Defendants' motion to the extent it seeks a protective order over discovery materials. However, the motion is denied without prejudice to the extent it would automatically seal any document filed with the Court, govern

documents exchanged during settlement discussions, or limit any party's ability to receive legal advice from counsel.

A. Waiver

First, Plaintiffs argue that the City Defendants waived any argument in favor of protecting the internal memoranda, because they "failed to raise these objections in response to Plaintiffs' discovery requests [and] also waited to ask for a protective order until after being ordered to produce the documents." (Doc. No. 131 at p. 7.) For this argument, Plaintiffs rely on Federal Rule of Civil Procedure 33, which governs the "grounds for objecting to an interrogatory" and states that a "ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(4). As should be clear from the text, Rule 33 governs objections to interrogatories, not document requests, which are governed by Rule 34. Plaintiffs urge that there is a similar, "implicit" rule regarding "waiver under Rule 34." (Doc. No. 131 at p. 8.) This Court does not believe such an "implicit" rule necessarily follows. *See PEG Bandwidth PA, LLC v. Salsgiver, Inc.*, Case No. 3:16-cv-178, 2017 WL 2992219, at *3 (W.D. Pa. July 13, 2017) (finding that "[n]otably absent from Rule 34 is an automatic waiver provision as found in Rule 33," and declining to follow cases that applied the waiver provision to document requests); *cf. Barkes v. First Corr. Med.*, C.A. No. 06-104-JJF-MPT, 2010 WL 1962797, at *3 (D. Del. May 17, 2010) ("Rule 34 does not explicitly provide for waiver of objection if responses are not timely filed, but waiver may be found in such a circumstance. A finding of waiver is not mandatory, however.").

But even if we were to apply Rule 33's waiver rule, we would still find good cause for excusing the City Defendants' failure to ask for a protective order earlier. *Cf. Scaturro v. Warren & Sweat Mfg. Co.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995) ("Rule 34 does not by its terms

6

provide that objections will be deemed waived; rather a waiver appears to be more in the nature of a sanction for more egregious conduct. . . . [T]he party who fails to make a timely objection 'may' be held to have waived his objections."). Until the Court ordered the City to produce the memorandum section of each investigatory file, the City Defendants objected to the entire document request as seeking information that was irrelevant and disproportional to the needs of the case. In other words, the City Defendants did not need a protective order for this category of documents until after the Court overruled their objection because before that point, the City Defendants were objecting to producing any documents, regardless of confidentiality concerns.[2] Although the City Defendants could have, in the alternative, raised their request for a protective order in their original response to Plaintiffs' motion to compel, at this point the Court will not penalize them for failing to do so. We are particularly unwilling to find waiver in this case because, as discussed below, the primary privacy interests at stake belong to non-parties.

---

[2] For similar reasons, we also reject Plaintiffs' argument that the motion for a protective order was untimely. The City Defendants and Montgomery McCracken first proposed the confidentiality order on November 10, 2020, less than a week after the Court denied their motion to quash the non-party subpoena and required Montgomery McCracken to produce documents in this litigation. (*See* Doc. No. 130-2 at pp. 3–6 (explaining that the protective order was first proposed on November 10, and it is not untimely because the "issue has just now become relevant since the Court's denial of the City's Motion to Quash").) At that point, Plaintiffs objected to the entry of a confidentiality agreement as untimely. (*See* Doc. No. 130-2 ("We do not agree to a confidentiality order. Your request is untimely.").) After this exchange, discussions between the parties halted while the Court considered the City Defendants' motion for reconsideration and/or clarification and the Plaintiffs' motion to compel — both of which addressed whether and to what extent the relevant documents would need to be produced at all. The Court granted Plaintiffs' motion to compel on January 14, 2021 and at that time, ordered the City Defendants to produce the memorandum sections of the relevant internal investigatory files. (Doc. No. 124.) The next day, the Court granted the City Defendants' motion for clarification and rejected their motion for reconsideration. (Doc. No. 126.) Three weeks later, the City Defendants filed the motion for protective order after Plaintiffs once again patently refused to enter a confidentiality agreement. (*See* Doc. No. 130-5 (stating without explanation, "We won't be signing the proposed confidentiality agreement.").) Given the contentious and ongoing nature of the discovery disputes surrounding these documents, and the short period of time between the Court's January Orders and the filing of City Defendants' motion for a protective order, we do not agree that the City Defendants' delay was unreasonable.

B.     *Pansy* Factors

Next, we analyze whether the City Defendants have demonstrated good cause for issuing a protective order over the internal memoranda (responsive to Plaintiffs' second request to the City), closed EEO investigatory files containing allegations of sexual harassment, and other internal ERU documents (both responsive to Plaintiffs' subpoena to Montgomery McCracken). Because all the documents involve the City's internal investigations into complaints of sexual harassment and gender discrimination, for simplicity we refer to them collectively as the "investigatory files." For the reasons discussed below, we find that the *Pansy* factors weigh in favor of issuing a discovery protective order over the investigatory files.

In this case, the most important factor is the first: whether disclosure of the documents will violate privacy interests. Public disclosure of the investigatory files would threaten the privacy interests of nonparties. The City Defendants assert that the investigatory files include "statements and/or interviews of complainants and/or witnesses [that] may contain very sensitive and/or graphic details of the alleged conduct of the accused [Department] employee." (Doc. No. 130 at p. 17.) They explain that given the sensitive nature of the allegations, employees "file their complaints with the expectation of privacy, discretion, and even confidentiality due to the risk that exposing their identities as well as the accused employee's identity and the alleged conduct to the public may subject either party to embarrassment, retaliation and unwanted attention." (*Id.*) Given this risk, the City Defendants also argue that unlimited disclosure of the files will have a "chilling effect," deterring future complainants and witnesses from reporting sexual harassment or from being forthcoming with investigators. (*Id.*)

Plaintiffs argue that the first factor weighs against disclosure because the City does not have a valid privacy interest in maintaining the confidentiality of its "unlawful employment

8

practices." (Doc. No. 131 at p. 12.) This oversimplifies the privacy issues implicated by the investigatory files. Although we agree that the City has no privacy interest in shielding unlawful employment practices from public view, the investigatory files primarily implicate the privacy rights of non-parties — they contain confidential statements by private individuals about incidents of a sensitive nature involving other private individuals. *See McKenna*, 2000 WL 1521604, at *2 ("[T]he complaints [of bias, harassment, and discrimination] that the Plaintiffs seek implicate the privacy interests of private individuals who may have filed complaints or witnessed actions leading to complaints."). And the City Defendants' proposed order is aimed at protecting these non-parties, not at "keep[ing] the terms of a settlement agreement confidential, [hiding] an illegal or immoral policy, or shield[ing] a public official from scrutiny." (Doc. No. 130 at p. 21.)

The Court agrees with the City Defendants that public disclosure of the investigatory files — which likely contain sensitive information about the complainants, witnesses, and accused related to alleged incidents of sexual harassment and gender discrimination — would violate the privacy interests of non-parties and open them up to potential censure and embarrassment.[3] *See Rosenblit v. City of Philadelphia*, Civil Action No. 20-3121-KSM, 2021 WL 288887, at *6 (E.D. Pa. Jan. 28, 2021) ("Public disclosure of the City's investigatory file would also threaten the privacy interests of nonparties."); *cf. McKenna*, 2000 WL 1521604, at *2 ("In their request for witness statements, the Plaintiffs did not limit the request to statements

---

[3] In their brief, Plaintiffs mischaracterize the City Defendants' argument on this point. Although the City Defendants acknowledge that disclosure could result in retaliation against complainants and witnesses, this acknowledgment is not an "admi[ssion] that retaliation against complainants is a pervasive issue within the police department." (Doc. No. 131 at p. 12.)

9

made by the parties. Dissemination of such information could jeopardize the privacy interests of private citizens.").

For those reasons, we find that the first *Pansy* factor weighs strongly in favor of a protective order under Rule 26. The remaining factors do not outweigh the first. For the reasons described above, we find under the second factor that unrestricted dissemination of the investigatory files is likely to embarrass the private individuals whose files would be open to the public. Likewise, public disclosure of the files could embarrass Plaintiffs and the individual Defendants to the extent they are mentioned within. Under the third factor, we find that the documents are being sought for a legitimate purpose. Although there is some suggestion that Plaintiffs' counsel may release this information to the public, it is more likely that these documents are sought because they are relevant to Plaintiffs' § 1983 claims and the City's defenses under *Monell v. Department of Social Services*. For that reason, granting a limited protective order also promotes the fair and efficient sharing of this information among the parties. The order will allow the parties to have full access to the information that they need without requiring a page-by-page confidentiality review at this stage of the litigation. *See Pansy*, 23 F.3d at 787 ("The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." (quotation marks omitted)).

The remaining three factors focus on the public's interest in unimpeded disclosure. Under these factors, we note that the City is a public entity and that the public has an interest in seeing unlawful discrimination eradicated from its public employers because employment discrimination could be a sign of more widespread discrimination.[4] *See Pansy*, 23 F.3d at 786

---

[4] Because the City is a party to this suit, we must also consider the effect the confidentiality order will have on the City's obligations under right to know laws. *Pansy*, 23 F.3d at 791 (recognizing this is

("The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official."); *see also McKenna*, 2000 WL 1521604, at *2 ("Evidence of discrimination within the ranks may be an indication of the treatment received by the public at-large.").  That said, the public also has an interest in keeping the City's investigatory process confidential.  *Cf. McKenna*, 2000 WL 1521604, at *2 (explaining that the public has a "wide-reaching interest in maintaining the confidentiality of these documents that involves protecting people who provide information to investigators and protecting the investigative process, itself").  And, as the City points out, public disclosure of the investigatory files, which contain nonparty statements given under the auspices of confidentiality, could discourage future complainants and witnesses from coming forward.  *Cf. id.* ("With such heavy interests of the public at issue, the court will not require disclosure of these documents" including records and witness statements collected by the City's Internal Affairs Department "absent a confidentiality agreement.").

In sum, the first *Pansy* factor weighs strongly in favor of granting the protective order.  The second and fourth factors also weigh in favor; the third and sixth factors weigh against; and the fifth and seventh factors are neutral.  Having weighed the public and private interest factors, the Court finds that good cause exists for entering a protective order over the investigatory files.[5] *See Rosenblit*, 2021 WL 288887, at *6.

---

"another factor which must be considered in the good cause balancing test").  In *Pansy*, the Third Circuit held that "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Id.*  However, "[t]o avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, courts may choose to grant conditional orders." *Id.*  We will grant a conditional order here.

[5] In addition, the Court finds good cause at this time for protecting Montgomery McCracken's privilege log, which identifies the "individuals interviewed by [the law firm], as well as other materials that reveal the nature of [the firm's] proprietary investigative activity." (Doc. No. 130 at p. 21 n.2.)

11

C.     Scope of the Proposed Order

Although we find that a protective order is warranted, we will not enter the order proposed by the City Defendants for three reasons.

First, the proposed order requires that any filing containing confidential information be "maintained under seal by the Court." (Doc. No. 130 at p. 5.)  However, "[a] more rigorous standard applies when a party requests to seal judicial documents than applies to protective orders shielding discovery materials." *Three Brothers Supermarket Inc. v. United States*, Civil Action No. 2:19-cv-2003-KSM, 2020 WL 5749942, at *3 (E.D. Pa. Sept. 25, 2020).  Once a document is filed with the Court, it becomes a judicial record, and the common law presumption of the right of public access attaches.  *In re Avandia*, 924 F.3d at 672 ("A 'judicial record' is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." (quotation marks omitted)); *see also Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.").  To rebut this presumption, the proponent must show that the "material is the kind of information that courts

---

Plaintiffs do not challenge the designation of the privilege log as confidential, and as discussed above, we find good cause at this stage of the litigation to protect the names of individuals who participate in internal investigations of sexual harassment and gender discrimination with the understanding that their participation will remain confidential.  In addition, many courts have also recognized the appropriateness of a protective order maintaining the confidentiality of proprietary business information.  *See Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 216 F.R.D. 320, 324 (E.D. Pa. 2003) (concluding that the defendants demonstrated the requisite "good cause" to protect "confidential and sensitive" business information, including the defendants' proprietary information regarding the development of a product line, and explaining that the defendants showed that the release of such information "could result in competitive disadvantage").

12

will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia*, 924 F.3d at 672 (quotation marks omitted).

"In addition to the common law right of access, which attaches to all judicial records, the public also has a First Amendment right of access in civil trials, which attaches to certain judicial documents." *Three Brothers Supermarket Inc.*, 2020 WL 5749942, at *3. To overcome this constitutional right of access, the proponent must satisfy strict scrutiny, showing that there is "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Avandia*, 924 F.3d at 673. "Under either the common law or First Amendment standard, when a court analyzes a request for a sealing order, it must do so on a document-by-document basis, and the proponent of the sealing order must articulate with specificity the injury that would result if the particular document or parts of it were made public." *Three Brothers Supermarket Inc.*, 2020 WL 5749942, at *3. "Merely reciting the *Pansy* factors in a sealing order is insufficient." *Id.*; *see also In re Avandia*, 924 F.3d at 676–77 ("[T]he Pansy factors are not a substitute for the common law right of access standard — which begins with the presumption of access.").

The City Defendants have neither submitted the allegedly confidential documents for *in camera* review, nor have they argued that the presumptions of access under the common law and First Amendment are overcome in this case. Without further review and discussion, the Court will not enter an order that automatically seals all filings containing confidential information.

Second, the proposed order severely limits Plaintiffs' rights to review confidential information and discuss the information with their counsel. The proposed order states that no party may review any discovery materials marked confidential, unless the party is also an outside consultant or expert, or a potential witness who agrees to be bound by the protective order.

(Doc. No. 130 at p. 3 ¶ 5.) Likewise, the proposed order states that "in rendering [legal] advice and in otherwise communicating with his or her client, counsel shall not make any disclosure of Confidential information except as permitted by this Order." (*Id.* at p. 8 ¶ 24.) We agree with Plaintiffs that these provisions are overbroad. Obviously, all parties are bound by a protective order entered by the Court and prohibited from disclosing information designated as confidential. Therefore, we will not preclude any party from reviewing discovery which may be relevant to his or her case, nor will we encroach on any attorney's ability to furnish legal advice in relation to that discovery.

Last, the proposed order also purports to govern documents "used and/or exchanged between the parties during settlement negotiations." (Doc. No. 130 at p. 4 ¶¶ 7–12.) Because this category of documents was not discussed in the City Defendants' motion, we make no ruling as to it at this time.

IV.   Conclusion

In sum, we grant the City Defendants' motion for protective order in part and contemporaneous with this Memorandum, enter an order protecting confidential information exchanged during discovery. However, the motion for protective order is denied without prejudice to the extent the City Defendants' proposed order asks us to automatically seal any filing containing confidential information, to limit any party's ability to review and receive advice about confidential documents, or to protect documents exchanged during settlement negotiations. If necessary, the City Defendants may raise these issues again in the future.

An appropriate order follows.