**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiffs Audra McCowan and Jennifer Allen*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AUDRA McCOWAN *and* JENNIFER ALLEN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PHILADELPHIA, *et al.*, <br><br> Defendants. | Civil Action No. 19-cv-3326-KSM <br><br> **Plaintiffs' Memorandum of Law in Support of Plaintiffs' Opposition to City Defendants' Motion for Summary Judgment** |

Plaintiffs Audra McCowan and Jennifer Allen oppose the motion for summary judgment

filed by Defendants City of Philadelphia, Christine Coulter, Daniel MacDonald, Timothy

McHugh, Michael McCarrick, Brent Conway, Eric Williford, Kevin O'Brien, Tamika Allen and

Herbert Gibbons ("City Defendants.").

**Plaintiffs respectfully request oral argument**.

Respectfully submitted,

*/s/ Ian M. Bryson, Esquire*
Ian M. Bryson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
*Attorneys for Plaintiffs,*
*Audra McCowan and Jennifer Allen*

## I.     Preliminary Statement

Discovery in this matter has exposed the rank sexism that permeates the Philadelphia Police Department.



## II.     Relevant Procedural History

Plaintiffs bring this action against City Defendants for relief from violations Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"); the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA"); the Pennsylvania Whistleblower Law, 43 Pa.C.S. §§ 1421-1428 ("PWL"); the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"); and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO").

---

[1] Wilkinson, Signe. "Sexual harassment? Call the Philadelphia police!" August 23, 2019, Philadelphia Inquirer, https://www.inquirer.com/opinion/cartoons/philadelphia-police-sexual-harassment-richard-ross-20190823.html

### III.    Facts

Plaintiffs separately filed their Statement of Material Facts that Preclude Summary Judgment (hereafter, "SUMF"), which are incorporated here by reference.

### IV.    Legal Argument

#### A.    Summary Judgment Standard

Summary judgment is to be used sparingly in employment discrimination cases. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008). It may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] The employer retains the burden of persuading the Court that, "even if all the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." Doe, 527, F.3d at 362.

At the summary judgment stage, the role of the trial judge is to determine whether or not there is a genuine issue, as "credibility determinations, weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Leone v. Air Products & Chemicals, Inc., 2008 WL 1944104, *1 (E.D.Pa. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). This standard is to be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Shimell v. De Lage Landen Financial Services, 2008 WL 1774129, *1 (E.D.Pa. 2008) (quoting Stewart v. Rutgers University, 120 F.3d 426, 431 (3d. Cir. 1997)).

"When the defendant's intent has been called into question, the matter is within the sole providence of the factfinder." Jalil v. Avdel Corporation, 873 F.2d 701, 707 (3d Cir. 1988). As

---

[2] Defendants incorrectly cited to Fed. R. Civ. P. 56(c) as the proper standard by which the court should determine whether summary judgment should be granted.

the Third Circuit has noted, "because intent is a substantive element of the cause of action—generally to be inferred from the facts and conduct of the parties—the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility." Ness v. Marshall, 600 F.2d 517, 519 (3d Cir. 1981). At the summary judgment stage, "all that is required [for a non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth." Oakley v. Orthopaedic Associates of Allentown, Ltd., et al., 2010 U.S. Dist. LEXIS 103230, *3 (E.D.Pa. 2019) (citing Jackson v. University of Pittsburgh, 826 F.2d 230, 233 (3d Cir. 1987)).

### B. Defendants are not entitled to summary judgment on Plaintiffs' disparate treatment claims because there are genuine issues of material fact regarding whether Defendants discriminated against Plaintiffs because of their race and sex.

Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Section 1981 prohibits intentional race discrimination in the making and enforcing of public and private contracts, including employment contracts. 42 U.S.C. § 1981. Employers and individuals can be liable under Section 1981. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001).

The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or

employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 P.S. § 955.

The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment." Philadelphia Code §§ 9-1103(1).

Both employers and individual employees can be liable for discrimination under Section 1981, the PHRA and the PFPO. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001); Fleet v. CSX Intermodal, Inc., Civ. A. No. 17-3562, 2018 WL 349245, at * 18 n. 174 (E.D. Pa. July 18, 2018). But when a plaintiff brings a § 1981, PHRA or PFPO claim against an individual, she must also plead the defendant's personal involvement in the alleged discriminatory conduct at issue. Douglas v. Nesbit, No. 1:16-cv-01836, 2017 WL 1021680, at *6 (M.D. Pa. Mar. 16, 2017); see also Johnson v. Res. For Hum. Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994) ("[A] claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must be some affirmative link to causally connect the

actor with the discriminatory action."); <u>Fleet</u>, 2018 WL 3489245, at *18 n.174 ("Individual

liability under the FMLA, PHRA, and PFPO require personal involvement.") (collecting cases).

"[E]mployees may be held individually liable if they were personally involved in the

discriminatory conduct at issue, and either intentionally caused the infringement of plaintiff's §

1981 rights or authorized, directed, or participated in the alleged discriminatory conduct."

<u>Rodrigues v. Motorworld Auto. Grp. Inc.</u>, Civ. A. No. 3:16-CV-1674, 2017 WL 1036477, at *4

(M.D. Pa. Mar. 17, 2017) (quotation marks omitted). A supervisor is personally involved in

discriminatory conduct if he was "grossly negligent in the supervision of his subordinates who

committed the wrongful acts or deliberately indifferent to the rights of plaintiff by failing to act

on information indicating that unconstitutional acts were occurring." <u>Id.</u> (quotation marks

omitted and alterations adopted).

Disparate treatment claims are analyzed under the <u>McDonnell-Douglas</u> burden-shifting

framework. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). First, Plaintiff must

establish a *prima facie* case by showing (1) she is member of a protected class; (2) she suffered

an adverse employment action; (3) under circumstances giving rise to an inference of unlawful

discrimination such as when a similarly situated person outside of the plaintiff's protected class

is treated more favorably. <u>Jones v. Sch. Dist. Of Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999).

Under the <u>McDonnell Douglas</u> formula a plaintiff who proves a prima facie case of

discriminatory treatment raises a presumption of intentional discrimination. <u>See</u> <u>id.</u>

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant

"to articulate some legitimate, nondiscriminatory reason for the employee's rejection." <u>Id.</u>

Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to

prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id.

There is no dispute that Plaintiffs are members of protected classes based on their race and gender. (SUMF ¶¶ 100, 105.)

Second, there is no dispute that Plaintiffs were subjected to a litany of adverse employment actions. Plaintiff Allen was denied training and job assignments in the A&I unit that were received by her male colleagues and she was placed on a rotating schedule between two different units unlike her male coworkers. (SUMF ¶¶ 124-132; 152-53;.) Plaintiff McCowan was transferred out of the HIDTA unit in favor of a less qualified male employee and denied training or job assignments in the A&I unit. (SUMF ¶¶ 133-137; 154-162.) Plaintiff McCowan was disciplined for "failure to supervise" Defendant Younger after she submitted EEO complaints against him. (SUMF ¶ 256.) Defendants denied Plaintiff Allen nursing accommodations. (SUMF ¶¶ 261-275; 374-393) Plaintiff Allen was moved out of the A&I unit and back to a rotating schedule in JET. (SUMF ¶ 262.) Plaintiffs' EEO complaints were deemed "unfounded" and "not sustained" after a sham investigation. (SUMF ¶¶ 225-260.) Plaintiff McCowan was detailed to Police Radio and had her schedule and hours of worked changed without notice. (SUMF ¶¶ 295-346.) Plaintiff Allen was issued a Counseling Memo, which subjected her to progressive discipline. (SUMF ¶¶ 356-373.) Plaintiff Allen was detailed to Police Tow Squad and had her hours and schedule changed without notice. (SUMF ¶¶ 394-408.) Plaintiffs were constructively discharged from employment. (SUMF ¶¶ 410-417.) The City took disciplinary action against Plaintiff Allen's husband. (SUMF ¶¶ 400-408.)

Plaintiffs have shown that the above adverse employment actions were conducted under circumstances giving rise to an inference of unlawful discrimination because Plaintiffs have set forth overwhelming and compelling evidence that the PPD is an organization in which male employees, including at its highest ranks, freely engage in discriminatory conduct without consequence, and that such conduct is encouraged by the PPD's own policies and procedures which aim not to correct sexual harassment, but to discourage female employees from complaining about it. Perhaps best exemplifying Defendants' systemic bias against women—their coverup of sexual harassment, and their seriously flawed policies and procedures. (SUMF ¶¶ 1-68; 69-99; 108-121; 225-260.) Moreover, Plaintiffs have shown that they were denied positions and training opportunities that were freely afforded to their white male coworkers. (SUMF ¶¶ 124-137; 138-140; 152-162; 192-193.) Unlike their white male counterparts, Plaintiffs were not given desks or any work to do in their units. (SUMF ¶¶ 136, 137, 152, 153.)

Plaintiffs have also shown that they were repeatedly subject to inappropriate sex-based comments by Defendant Younger, often in front of his supervisors. (SUMF ¶¶ 141-151; 177-179.) Plaintiffs have shown that these comments escalated into physically aggressive conduct, with Defendant Younger lifting Plaintiff Allen off the ground in an embrace and trying to pull Plaintiff McCowan's wedding rings off of her hand while she screamed at him to stop. (SUMF ¶¶ 170-171; 181-191.) Defendant Younger's conduct continued after Plaintiffs spoke with their supervisors, including then-Police Commissioner Ross, and formally complained about Defendant Younger's conduct. (SUMF ¶ 250.) Plaintiffs have also shown that once their complaints of harassment were submitted, they were not taken seriously by the City and they were subject to biased and an openly hostile investigation by Defendant Conway. (SUMF ¶¶ 225-260.) Finally, Plaintiffs have shown that after they complained, they were transferred to

undesirable positions with undesirable schedules, their colleagues were openly hostile toward them, and they were labeled "troublemakers." (SUMF ¶¶ 248; 297-98; 366; 396; 366; 413-415.)

Plaintiffs have shown that they were subjected to a continuous hostile work environment throughout their employment with Defendants and continuing through their resignations. A hostile work environment claim is composed of a series of separate acts that "collectively constitute **one unlawful employment practice**." National R.R. Passenger Corp. v Morgan, 536 U.S. 101, 103 (2002). By their very nature, such claims involve unlawful employment practices that "occur over a series of days or perhaps years." AMTRAK v. Morgan, 536 U.S. 101, 115 (2002). Considering the totality of the circumstances, Plaintiffs have shown that their coworkers and supervisors subjected them to severe and pervasive harassment because of their race and gender. Cf. Aman, 85 F.3d at 1083 (finding that overtly racial comments and seemingly neutral, isolated events, when viewed together, created a "complex tapestry of discrimination").

Moreover, Defendants' motion must be denied because Plaintiff has demonstrated that Defendants' stated reason for firing Plaintiff is pretext. In order to show pretext, a plaintiff must submit evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008). Put another way, to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, that the proffered reason is a pretext). Id.; see also Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) ("To make a

showing of pretext, 'the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.").

The law is clear that a jury can infer pretext for unlawful employment discrimination from an employer's inconsistent reasons for the adverse action. See, e.g., St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Connelly v. Lane Const. Corp., 809 F.3d 780, 792-93 (3d Cir. 2016) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole."). If the plaintiff shows that the decisionmaker was aware of the protected conduct, then the plaintiff may use the temporal proximity between that knowledge and the adverse employment action to argue causation. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).

Plaintiffs can show Defendants' reasons for changing Plaintiff McCowan's assignment to HIDTA was pretext because Defendants did not follow the policies and procedures for transferring Plaintiff out of the unit; and Defendant Williford that if she complained about it, she would be labeled a "troublemaker." (SUMF ¶135, 154.) Plaintiff McCowan can show Defendants' stated reasons for excluding her from meetings were pretext because Defendant Williford admitted to Plaintiff she should have been included in said meetings. (SUMF ¶ 160.) Plaintiff McCowan can show Defendants' reasons for detailing her to Police Radio were pretext

because Plaintiff did not request to have her schedule and hours of work changed, Plaintiff had her schedule and hours of work changed without notice in violation of the collective bargaining agreement, Plaintiff was not afforded training necessary to supervise on the radio floor, and Plaintiff was seated in the hallway for over 800 hours with no work to day. (SUMF ¶¶ 295-331.) Plaintiff McCowan can show that the City's stated reason for its decision to discipline her for filing an EEO complaint against Younger was pretext because Defendants failed to discipline MacDonald, Williford, McCarrick, McHugh or O'Brien for the same "violations." (SUMF ¶ 260) Defendant Conway told Plaintiff the reason she was being disciplined was because "the City is tired of paying out settlement money." (SUMF ¶ 228.)

Plaintiff Allen can show the City's stated reasons for returning her to JET are pretext because the decision occurred immediately after she complained about Defendant Younger, and Inspector McCarrick told Plaintiff that her complaint against Younger was the reason she was being moved back to JET. (SUMF ¶ 248.) Defendants admitted that the arrangement where Plaintiff rotated between two units was "unheard of" in the PPD. (SUMF ¶ 128-129.) Plaintiff Allen can show that Defendants' stated reason for issuing her the Counseling Memo are pretext because Plaintiff was issued the memo for no apparent reason, she was issued the memo immediately upon returning from sick leave, and a third party witness texted Plaintiff after the incident saying "What the hell?!" (SUMF ¶¶ 356-373.) Plaintiff Allen can show Defendants' reasons for detailing her to Tow Squad are pretext because Plaintiff's schedule and hours of work were changed suddenly and without notice immediately after she filed this lawsuit. (SUMF ¶¶ 394-399.) Plaintiff was informed that the decision to detail her to Tow Squad "came from the Deputy Commissioner's Office" and it is unheard of for a Deputy Commissioner to call the Safety Office in reference to manpower. (SUMF ¶ 398.) Moreover, Defendants gave inconsistent reasons for

reassigning Plaintiff—for example, on the one hand, Defendants said it was due to a need for

manpower, but on the other hand Molly O'Neill testified that it was due to "personality

conflicts." (O'Neill Dep., 25:21-26:02.)

     **C.  Defendants are not entitled to summary judgment on Plaintiffs' harassment claims
because there are genuine issues of material fact regarding whether Defendants
subjected Plaintiffs to a sexually hostile work environment.**

    "To establish the existence of an actionable hostile work environment, a plaintiff must prove

(1) she suffered intentional discrimination because of a protected characteristic; (2) the

discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the

discrimination would detrimentally affect a reasonable person of the same protected class in her

position; and (5) a basis for respondeat superior liability." Cruz-Smith, 2011 WL 3652462, at *4;

see also Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 411 (D.N.J. May 12, 2003)

("Reduced to its most basic components, an actionable hostile work environment requires proof

that Plaintiff was subjected to a level of gender or race-based harassment which was 'severe or

pervasive' enough to create a working environment which is both subjectively and objectively

abusive or hostile to female or African American employees.").

    "The first four elements of this claim establish that a hostile work environment existed."

Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009). In

determining whether harassment rises to the level of an actionable hostile work environment, we

must consider the "totality of the circumstances . . . including the frequency of the discriminatory

conduct, its severity, whether it [was] physically threatening or humiliating or a mere offensive

utterance, and whether it reasonably interfere[d] with an employee's work performance." Harris

v. SmithKline Beecham, 27 F. Supp. 2d 569, 577 (E.D. Pa. 1998) (citing Meritor Sav. Bank, FSB

v. Vinson, 477 U.S. 57, 67 (1986)); Davis, 285 F. App'x at 902 (same). In addition, "the advent

of more sophisticated and subtle forms of discrimination requires that [a court] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim." Cardenas, 269 F.3d at 261–62. The fifth element "establishes the basis on which to hold the employer liable." Huston, 568 F.3d at 104. "When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable." Id. "Rather, employer liability for coworker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Id. "[A]n employer knew or should have known about workplace sexual harassment if management level employees had actual or constructive knowledge about the existence of a sexually hostile environment." Id. at 105; see also Sharp v. Pa. Army Nat'l Guard, No. 1:11–cv–1262, 2013 WL 1703583, at *7 (M.D. Pa. Apr. 19, 2013) ("[I]f a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." (quotation marks omitted)). In this context, an "employee's knowledge of allegations of coworker sexual harassment may typically be imputed to the employer . . . where the employee is sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under him, such as a departmental or plant manager . . . ." Huston, 568 F.3d at 107; cf. Lyles v. District of Columbia, 17 F. Supp. 3d 59, 70 (D.C. Cir. 2014) ("An employer may be held liable for the harassment of a supervisor by a subordinate if the employer knew or should have known of the harassment and failed to implement prompt and appropriate action; but an employer will not be liable for the sexual harassment of a supervisor by a subordinate where the

13

supervisor had the ability to stop the harassment," — by, for example, reporting the harassment to her supervisor or reprimanding the offending subordinate — "and failed to do so.").

Plaintiffs have demonstrated that they were subject to a sexually hostile work environment. As described above, Plaintiffs were denied positions and training opportunities because of their sex. (SUMF ¶¶ 124-137; 138-140; 152-162; 192-193.) Plaintiffs were repeatedly subjected to inappropriate sex-based comments by Defendant Younger, often in front of Younger's supervisors. (SUMF ¶¶ 141-151; 177-179.) Plaintiffs have shown that these comments escalated into physically aggressive conduct, with Defendant Younger lifting Plaintiff Allen off the ground in an embrace and trying to pull Plaintiff McCowan's wedding rings off of her hand while she screamed at him to stop. (SUMF ¶¶ 170-171; 181-191.)

Plaintiffs have demonstrated the inadequacy of the City's avenue for complaint, with Defendant Williford attempting to keep Plaintiffs from filing their EEO complaints with Defendant MacDonald and Defendant Allen reporting some of Plaintiffs' claims but omitting their allegations about Younger. (SUMF ¶¶ 194-207.)

Defendant Younger's conduct continued after Plaintiffs spoke with their supervisors, including then-Police Commissioner Ross, and formally complained about Defendant Younger's conduct. (SUMF ¶ 250.) Plaintiffs have also shown that once their complaints of harassment were submitted, they were not taken seriously by the City and they were subject to biased and an openly hostile investigation by Defendant Conway. (SUMF ¶¶ 225-260.) Finally, Plaintiffs have shown that after they complained, they were transferred to undesirable positions with undesirable schedules, their colleagues were openly hostile toward them, and they were labeled "troublemakers." (SUMF ¶¶ 248; 297-98; 366; 396; 366; 413-415.)

Considering the totality of the circumstances, Plaintiffs have demonstrated that their coworkers and supervisors subjected them to severe and pervasive harassment because of their gender. Cf. Aman, 85 F.3d at 1083 (finding that overtly racial comments and seemingly neutral, isolated events, when viewed together, created a "complex tapestry of discrimination"). Because Ross and other supervisors knew about — and in some instances, directed — the harassment, Plaintiffs have also shown vicarious liability on the part of the City. See Hargrave, 262 F. Supp. at 428–29 ("[A]n employer is, as a general rule, 'subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.'" (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998))); Lyles, 17 F. Supp. 3d at 70 ("An employer may be held liable for the harassment of a supervisor by a subordinate if the employer knew or should have known of the harassment and failed to implement prompt and appropriate action . . . .")

**D.  Defendants are not entitled to summary judgment on Plaintiffs' First Amendment retaliation claims because Plaintiffs were speaking on matters of public concern.**

Defendants violated the Petition Clause of the First Amendment, which protects s "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. This Clause protects the "right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011). "To make out a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) she engaged in First Amendment protected activity, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising her First Amendment rights, and (3) the adverse action was prompted by the plaintiff's protected activity." Rossiter v. City of Philadelphia, 674 F. App'x 192, 196 (3d Cir. 2016).

"[R]etaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the Petition Clause." <u>Borough of Duryea v. Guarnieri</u>, 131 S. Ct. 2488, 2494 (2011); <u>see</u> <u>also</u> <u>Mack v. Warden Loretto FCI</u>, 839 F.3d 286 (3d Cir. 2016) (holding that an inmate's oral grievance is protected under the Petition Clause).

To be protected under the First Amendment, speech by a government employee "must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" <u>Waters v. Churchill</u>, 511 U.S. 661, 668 (1994). A report of sexual harassment by a government official can constitute speech on a matter of public concern. <u>See</u> <u>Azzaro v. County of Allegheny</u>, 110 F.3d 968, 975 (3d Cir. 1997) (reasoning that the plaintiff's reports "brought to light actual wrongdoing on the part of one exercising public authority."). The plaintiff must show a "causal link" between the protected speech and the adverse employment action. <u>See</u> <u>Azzaro</u>, 110 F.3d at 981 (reversing summary judgment dismissing First Amendment retaliation claim because there existed "a material dispute of fact as to whether [plaintiff's] reports were a motivating factor in the discharge decision"). If the plaintiff shows that the decisionmaker was aware of the protected conduct, then the plaintiff may use the temporal proximity between that knowledge and the adverse employment action to argue causation. <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003). Here, the Court should find Defendants' conclusory allegations insufficient to grant summary judgment.

**E. Defendants are not entitled to summary judgment on Plaintiffs' retaliation claims because there are genuine issues of material facts as to whether Plaintiffs had their job assignments and hours of worked changed as a result of their EEO complaints.**

Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
>
> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

"[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could

constitute actionable retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

"Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management. See Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006).To determine if retaliation plaintiffs sufficiently opposed discrimination, we look to the message being conveyed rather than the means of conveyance." Id.

The Third Circuit has indicated that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("[T]o establish a prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII.").

The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405 (2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed'"); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir. 1995).

The PHRA and PFPO "make it illegal for any 'person' to retaliate against an individual for attempting to enforce his or her rights under the statute or to aid and abet the discriminatory conduct." Phillips v. Heydt, 197 F. Supp. 2d 207, 223 (E.D. Pa. 2002). Under the retaliation provisions, it is unlawful for "any person . . . to discriminate in any manner against any individual because such individual has opposed," made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing related to an unlawful discriminatory practice. 43 Pa. Stat. & Con. Stat. § 955(d); see also Phila. Fair Practices Ordinance § 9-1103(1)(g). To make out a claim for retaliation under the PHRA and PFPO, the plaintiff must allege that (1) she engaged in a protected activity; (2) the individual took an adverse employment action against her; and (3) there is a causal connection between her participation in the protected

activity and the adverse employment action. <u>Nelson v. Upsala Coll.</u>, 51 F.3d 383, 386 (3d Cir.

1995). "Protected activities include informal protests to the employer, so long as they

specifically allege that discrimination occurred," and the plaintiff "had an objectively reasonable

belief that the actions he or she opposed constituted discrimination." <u>Ahern v. Eresearch Tech.</u>,

183 F. Supp. 3d 663, 670 (E.D. Pa. 2016).

Defendants state in a conclusory fashion that "the City Defendants had legitimate non-

retaliatory reasons for all allegedly materially adverse employment actions." The Court should

disregard Defendants' conclusory arguments and deny their motion for summary judgment.

Plaintiff McCowan cam show after she submitted her EEO complaint she was detailed out of

the DVIC to Police Radio, which has a reputation for being a hectic place to work and is viewed

as a punishment. (SUMF ¶¶ 295-346.) <u>Cf</u>. <u>Vandegrift v. City of Philadelphia</u>, 228 F. Supp. 3d

464, 492 (E.D. Pa. 2017) (finding plaintiff's "transfer to an extremely busy and hectic workplace

could reasonably dissuade a reasonable person in [her] position from making a charge of

discrimination" and thereby give rise to a claim for retaliation). Once there, Defendants rejected

Plaintiff's request for steady day work, refused to approve her training, denied her hardship

memo, and rejected her union grievance. (SUMF ¶¶ 295-346.) Plaintiff McCowan can show that

Defendants' asserted reasons for detailing her to Police Radio are pretext because once she was

moved there, she was not given any work to do and sat in the hallway for over 800 hours.

(SUMF ¶ 330.) Plaintiff Allen can show that her transfer to Police Tow Squad came from the

Deputy Commissioner's Office and occurred the day after she filed a federal lawsuit. (SUMF ¶¶

394-408.) Plaintiffs' EEO complaints were denied, and afterward, Plaintiffs' job assignments

were changed and they were subjected to punishment.

Defendants have grossly failed to meet their burden of showing legitimate nondiscriminatory reasons for their litany of retaliatory actions against Plaintiffs.

**F. Defendants are not entitled to summary judgment on Plaintiff Allen's FLSA retaliation claim because there are genuine issues of material fact regarding causation.**

The FLSA prohibits retaliation by employers against employees for asserting their rights under the Act. 29 U.S.C. § 215(a)(3). Defendants violated the FLSA's anti-relation provision when they took materially adverse employment actions against Ms. Allen for asserting her rights under the Break Time for Nursing Mothers law.

Defendant asserts that "courts tend to focus on two factors in assessing whether a plaintiff has shown causation: (1) the temporal proximity … and (2) the existence of a pattern of antagonism in the intervening period." See Def's Mem. of Law, p. 4 (ECF No. 20). But temporal proximity and a pattern of antagonism "are not the exclusive ways to show causation." Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006). In retaliation cases, the element of causation "is highly context-specific." Id; see also Kachmar, 109 F.3d at 178 ("In concentrating exclusively on the gap between Kachmar's protected activity and her firing, and the sufficiency of Kachmar's allegations of a pattern of antagonism, the district court failed to make the more generalized inquiry into whether Kachmar's protected activity was the likely reason for her termination."); cf. Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir.1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

In assessing causation, the cumulative effect of the employer's conduct must be evaluated: "it matters not whether each piece of evidence of antagonistic conduct is alone sufficient to support

an inference of causation, so long as the evidence permits such an inference when considered collectively." <u>Marra v. Philadelphia Housing Authority</u>, 497 F.3d 286, 303 (3d Cir. 2007).

After Plaintiff Allen requested a private lactation space at the DVIC and NSU, her milk was stolen from the refrigerator (SUMF ¶¶ 163-169); Defendant Allen repeatedly would walk in on Plaintiff to "check on her" (SUMF ¶¶ 245, 247, 149); Plaintiff's vacation requests were denied (SUMF ¶¶ 264); Defendant Allen took away Plaintiff's accommodations (SUMF ¶¶ 266-270); Defendant Conway made negative remarks about Plaintiff Allen's accommodations to Plaintiff McCowan (SUMF ¶ 293); Plaintiff Allen was forced to go on restricted duty (SUMF ¶ 352); Plaintiff Allen was treated with disrespect by her coworkers whenever she needed to pump in the office (SUMF ¶¶ 374-393); Plaintiff Allen was detailed to "Police Tow Squad" (SUMF ¶¶ 394-408.) All of the above events occurred in close proximity to Plaintiff's requests for private lactation space and the retaliatory conduct makes direct reference to Plaintiff's nursing accommodations.

**G. Defendants are not entitled to summary judgment on Plaintiffs' FMLA claims because there are genuine issues of material fact regarding whether Plaintiffs were afforded their rights under the Act.**

The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, specified health and caregiving reasons, including a serious health condition that makes the employee unable to perform the essential functions of her job, as well as pregnancy and caring for a new child. 29 U.S.C. §§ 2601 et seq. A covered employer must provide FMLA benefits and protections to eligible employees and comply with their responsibilities under the FMLA and its regulations at 29 C.F.R. part 825. At all relevant times, Plaintiffs were eligible employees of a covered employer with a qualifying medical condition and/or caregiving reason entitling them to the protections of the FMLA.

The Court should disregard Defendants' conclusory arguments and deny their request for dismissal of Plaintiffs' FMLA claims. As demonstrated by Plaintiffs' responses to Defendants' "Statement of Undisputed Material Facts," Defendants have failed to show that Plaintiff McCowan was afforded FMLA leave—in fact Heather McCaffrey testified that Plaintiff's leave request was never processed. Defendants have further failed to demonstrate that Plaintiff Allen was ineligible for FMLA leave.

**H. Defendants are not entitled to summary judgment on Plaintiff's Pennsylvania Whistleblower Claims**

The Pennsylvania Whistleblower Law prohibits employers from discharging, threatening, discriminating, or retaliating against an employee with regard to his or her "compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 Pa. Stat. Ann. § 1423(a). To make out a claim under the Whistleblower Law, a plaintiff must allege show she reported an instance of wrongdoing or waste to an appropriate authority and a causal connection between the report and the alleged retaliation. Golaschevsky v. Commonwealth, Dep't. of Envtl. Prot., 720 A.2d 757, 758–60 (Pa. 1998); see also Frazier v. City of Philadelphia, F. Supp. 3d 76, 96 (E.D. Pa. 2020) ("Recovery under the Act requires evidence that Plaintiffs: (1) reported an instance of wrongdoing or waste to an appropriate authority; and (2) there is a causal connection between the report and the alleged retaliation.").

In Golaschevsky, the Pennsylvania Supreme Court explained that the Whistleblower Law is implicated when an "employee alleges that there has been illegal activity within his own agency," and in this context, "'wrongdoing' includes . . . violations of any federal or state statute or regulation, other than violations that are 'of a merely technical or minimal nature.'" Id.; see

also Frazier, 441 F. Supp. 3d at 96 ("Ultimately, all a Plaintiff must do is 'demonstrate she made a report of some action by her employer or its agent, which, if proven, would constitute a violation of a law or regulation.'" (quoting Greco v. Myers Coach Lines, Inc., 199 A.3d 426, 434 (Pa. Super. Ct. 2018))).

Plaintiffs can show that they "blew the whistle" on discrimination, harassment, and retaliation within the Department, and that the Defendants transferred them to less-desirable positions after they reported these violations. As such, the Court should disregard Defendants' conclusory arguments about Plaintiffs' PWL claims and deny their motion for summary judgment.

**I.  Defendants are not entitled to summary judgment on Plaintiffs' Section 1981 and Section 1983 claims because Defendants are not immune to suit and Defendants were personally involved in the infringement of Plaintiffs' constitutional rights.**

The Fourteenth Amendment to the United States Constitution protects persons from being subjected to discrimination, by persons acting under color of state law, on the basis of a protected class (e.g., sex, race, or color). U.S. Const. amend. XIV. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

Section 1983 provides a cause of action for unconstitutional employment discrimination by both employers and individuals (i.e., Defendants Coulter, MacDonald, McCarrick, Conway, McHugh, Williford, Allen, and O'Brien), so long as the plaintiff shows that the defendant acted under color of state law. See Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788, 796 (2009) ("The Equal Protection Clause reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities."); see also Andrews, 895 F.2d at 1478.

The Third Circuit has made it clear that sexual harassment can give rise to an equal protection claim. See, e.g., Andrews v. City of Philadelphia, 895 F.2d 1469, 1478-79 (3d Cir. 1990) (upholding verdict for plaintiff on sexual harassment claims against city employees, based on conclusion that evidence supported finding of purposeful discrimination); see also Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1185 (7th Cir. 1986) ("Sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment."); Cheryl L. Anderson, "Nothing Personal:" Individual Liability under 42 U.S.C. § 1983 for Sexual Harassment as an Equal Protection Claim, 19 BERKELEY J. EMP. & LAB. L. 60, 80 (1998) (citing Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986) as support for argument that sex harassment can satisfy the intentional discrimination requirement for equal protection claims).

The Third Circuit has also made clear that a sexual harassment equal protection claim can be made even if the defendant is not the plaintiff's supervisor. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997). **Additionally, a plaintiff can show an equal protection violation by a supervisor who fails properly to address harassment by the plaintiff's co-workers.** Andrews, 895 F.2d at 1479. A defendant can be liable on the theory that it directly

encouraged harassment of the plaintiff, **or on the theory that it did not do enough to prevent the harassment.** See Bohen, 799 F.2d at 1187 ("[A] plaintiff can make an ultimate showing of sex discrimination either by showing that sexual harassment that is attributable to the employer under § 1983 amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination."); cf. Reynolds v. Borough of Avalon, 799 F. Supp. 442, 447 (D.N.J. 1992) (holding that "a reasonable jury might find that the risk of sexual harassment in the workplace is so obvious that an employer's failure to take action to prevent or stop it from occurring--even in the absence of actual knowledge of its occurrence--constitutes deliberate indifference, where the employer has also failed to take any steps to encourage the reporting of such incidents").

Here, Plaintiffs have shown that Defendants implemented discriminatory policies and practices based on sex and race in their supervisory capacities that caused harm to the Plaintiffs as black females, and also had direct involvement in the PPD's mishandling of Plaintiffs' harassment complaints and the retaliation committed against Plaintiffs. Therefore, Plaintiffs' equal protection claims against Defendant Ross must not be dismissed on summary judgment.

**J.      Defendants are not entitled to summary judgment on Plaintiff Allen's FLSA claims because there are genuine issues of material fact regarding whether Plaintiff Allen was provided nursing accommodations.**

Section 4207 of the Patient Protection and Affordable Care Act ("ACA"), which amended Section 7 of the FLSA, 29 U.S.C. § 207, requires employers to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A).

The law further requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(B).

Plaintiff has demonstrated Defendants violated § 207(r). Defendant Allen frequently interrupted Plaintiff Allen while she was pumping in the women's locker room and directed Plaintiff Allen to continue pumping in the locker room despite interruptions because "women nurse in front of women all the time." (SUMF ¶ 162.) The only other room provided by Sergeant Allen was the interview room, which had a window open to the public. (SUMF ¶ 167.) When Plaintiff Allen explained she could not use the interview room because it was too cold and has a window, Sergeant Allen responded that there "is no other room for you to pump," forcing Plaintiff to take sick leave to pump from home. (SUMF ¶¶ 273-74.) Plaintiff Allen experienced similar issues when she transferred to NSU, where Defendant Gibbons instructed Plaintiff and fellow Officer Newsome to pump at the same time in coworkers' offices and eventually to pump in the cafeteria during a specific timeframe. (SUMF ¶¶ 374-393.) In each location, Officer Allen and Officer Newsome experienced pushback from their coworkers who would not allow them to use the designated rooms or would gather outside and knock on the door while asking when they could get inside. (Id.)

**K. Defendants are not entitled to summary judgment on Plaintiffs' aiding and abetting claims**.

The PHRA and PFPO o prohibit "any person" from:

> aid[ing], abet[ting], incit[ing], or coerc[ing] the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be unlawful discriminatory practice. 43 Pa. Stat. & Con. Stat. § 955(e); see also Phila. Fair Practices Ordinance § 9-1103(1)(h) (making it unlawful for "any

27

person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice . . . .")

43 Pa. Stat. & Con. Stat. § 955(e); see also Phila. Fair Practices Ordinance § 9-1103(1)(h) (making it unlawful for "any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice . . . .");

Defendants have failed to show they are entitled to summary judgment on Plaintiffs' aiding and abetting claims. Plaintiffs can demonstrate that Defendants (Plaintiffs' supervisors) acquiesced in the sexual harassment Plaintiffs suffered and directed the retaliatory conduct that followed Plaintiffs' complaints. Vandegrift v. City of Philadelphia, 228 F. Supp. 3d 464, 491 (E.D. Pa. 2017) ("In contrast to the vague allegations of online posts by unknown individuals in Van Dyke, Ms. Vandegrift adduces specific evidence of supervisory-level employees advising Ms. Vandegrift's coworkers she made an EEO complaint and to watch what they say around her").

**L.     Defendants are not entitled to summary judgment on Plaintiffs' IIED claims.**

The General Assembly has waived immunity for where an employee's actions "constituted a crime, actual fraud, actual malice or willful misconduct." 42. Pa.C.S. § 8550. In DiSalvio v. Lower Merion High School Dist., 158 F. Supp. 2d 553 (E.D. Pa. 2001), a high school football coach's alleged sex-based discrimination and harassment of a female student manager amounted to willful misconduct for which the coach was not entitled to official immunity under the Political Subdivisions Tort Claims Act ("PSTCA"). **The school officials' alleged failure to take appropriate action after becoming aware of the high school football coach's sexual harassment of the female student manager also were denied immunity under the PSTCA.** Id.

28

Furthermore, federal district courts applying Pennsylvania law have found conduct outrageous in the employment context where an employer engaged in sexual harassment and other retaliatory behavior against an employee. Cox v. Keystone Carbon Co., 861 F.2d 390, 395-96 (3d Cir. 1988); see also Shaffer v. National Can Corp., 565 F.Supp. 909 (E.D.Pa. 1983) (finding allegations sufficient to state a cause of action for IIED where plaintiff suffered sexual harassment and after she complained her supervisor made threats concerning her employment status and made her job difficult to perform); Fawcett v. I.D.S. Financial Services, 41 Fair Empl. Prac.Cas. 589 (W.D.Pa.1986) (finding plaintiff stated IIED claim where she alleged her manager made physical advances on two occasions and conditioned plaintiff's promotion on her submission to sexual relations); Bowersox v. P.H. Glatfelter Co., 677 F.Supp. 307, 311 (M.D.Pa.1988) (finding plaintiff stated IIED claim where she alleged her employer not only sexually harassed her, but also withheld information from her which she needed to perform her job, forbade her from talking to anyone in her office, prohibited her from answering the phone, refused to talk to her and followed her throughout the plant).

Here, Plaintiffs have shown that the individually-named Defendants engaged in sex- and race-based discrimination, harassment and retaliation far worse than the behavior held to constitute extreme and outrageous conduct involved in Shaffer, Fawcett, and Bowersox. After Plaintiffs complained about being sexually assaulted at work, Defendants encouraged and facilitated the verbal and mental abuse that Plaintiffs suffered in a manner that no reasonable person could be expected to endure.

The severe impacts that such retaliatory changes in Plaintiffs' working conditions have had on Plaintiffs' physical and mental health are documented. Plaintiffs have been forced to take prescription antidepressant and antianxiety medication including Venlafaxine, Lorazepam, and

Prozac as a result. Prior to events complained of in this case, Plaintiffs had no history of inpatient mental health intervention, psychotropic treatment or any other history of outpatient counseling. Defendant Ross's actions were clearly done deter Plaintiffs from pursuing their claims. Accordingly, Plaintiffs IIED claims must not be dismissed.

## V.    Conclusion

For the aforementioned reasons, Defendants' motion for summary judgment must be denied.

Respectfully submitted,

*/s/ Ian M. Bryson, Esquire*
Ian M. Bryson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Dated: <u>September 10, 2021</u>          Philadelphia, PA 19103