**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUDRA McCOWAN, et al.** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **19-cv-3326-KSM** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**DEFENDANT THE CITY OF PHILADELPHIA'S SUPPLEMENTAL
<u>PRETRIAL MEMORANDUM</u>**

## I.      RESPONSES TO PLAINTIFFS' OBJECTIONS TO PROPOSED EXHIBITS

Defendant renews its authentication objections to Plaintiffs' exhibits 14, 15, 18, 20, 23, 25, 26, 27, 28, 38, 43, 44, 46, and further objects to these exhibits on the related grounds that they contain hearsay that does not meet any of the enumerated exceptions to the rule against hearsay. Plaintiffs have not listed the alleged senders and/or recipients of these messages as trail witnesses.

## II.      RESPONSES TO PLAINTIFFS' OBJECTIONS TO DEFENDANT'S PROPOSED WITNESSES

Plaintiffs object to the inclusion of the following witnesses in Defendant's pretrial witness list: Inspector Kevin Hall, Captain Edward Appleton, Chief Inspector Michael Cochrane, Chief Inspector Christopher Flacco, Captain Matthew Deacon, Lieutenant Ezekiel Williams, and Inspector Michael Gillespie. The following three witnesses are duplicative and will not be called: Inspector Kevin Hall, Captain Edward Appleton, and Chief Inspector Michael Cochrane. The remaining four witnesses (Chief Inspector Christopher Flacco, Captain Matthew Deacon, Lieutenant Ezekiel Williams, and Inspector Michael Gillespie) were listed in Plaintiffs' Rule 26(a) disclosures. Defendant should be permitted to call these witnesses to testify at trial.

If a party fails to disclose or supplement any required information under Rule 26(a), Fed. R. Civ. P. 37 provides: "the party is not allowed to use that information or witness to supply

evidence . . . at a trial, unless the failure was substantially justified or is harmless." <u>Holley v. Port</u> <u>Auth. of N.Y. and N.J.</u>, 2018 WL 11413338, at *3 (quoting Fed. R. Civ. 37(c)(1)). "Although Rule 37 provides a strong inducement for disclosure, exclusion under the rule is not automatic." <u>Id.</u> (internal citations and quotations omitted). Instead, the Third Circuit instructs consideration of the four factors explained in <u>Nicholas v. Pa. State Univ.</u> to determine whether exclusion under Rule 37 is proper:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

227 F.3d 133, 148 (3d Cir. 2000). "Ultimately, the decision as to whether evidence should be excluded is discretionary." <u>Holley</u>, 2018 WL 11413338 at *3. Further, under Rule 26(e), a party is required to supplement her initial disclosures **<u>only if</u>** "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." <u>Nicholas</u>, 227 F.3d at 148.

In <u>Holley</u>, defendants challenged multiple witnesses on plaintiff's pretrial witness list under Rule 37. <u>Id.</u> The Court declined to examine whether plaintiff sufficiently disclosed the identity of these witnesses or whether omission was substantially justified. <u>Id.</u> Instead, the Court determined that any error by plaintiff was harmless under Rule 37 because defendants had included the disputed individuals in their initial disclosures. <u>Id.</u> In determining that the non-disclosing party should be permitted to call the disputed witnesses, the Court found that:

> even if Plaintiff failed to actually disclose these 17 individuals under Rule 26, this failure can hardly have caused "surprise" to Defendants. Defendants were clearly aware of their identities and potential relevance to the dispute at hand since the early stages of litigation. In this regard, the failure to depose these individuals appears to be the result of Defendants' own decision, not any

prejudice stemming from Plaintiff's lack of compliance with Rule
26.

Id. See also, e.g., Kacian v. Brennan, 2017 WL 933142, at *3 (W.D. Pa. Mar. 8, 2017) (holding

that party had no obligation to supplement her initial disclosures with respect to witnesses already

known to opposing party).

Here, Plaintiffs' challenge to the testimony of Chief Inspector Christopher Flacco, Captain

Matthew Deacon, Lieutenant Ezekiel Williams, and Inspector Michael Gillespie demands the same

result: inclusion of the witnesses' testimony at trial. Plaintiffs included each of these four witnesses

in their initial disclosures. See Pls.' Initial Disclosures (attached as **Exhibit A**). Defendant had no

obligation  or responsibility under Rule 26(e) to formally disclose witnesses already identified by

Plaintiffs. And even if it did, Plaintiffs cannot in good faith feign surprise.

Plaintiffs were aware of these four individuals from the outset of this litigation, along with

their potential relevance to the dispute at hand. Plaintiffs listed each of these four witnesses in their

initial disclosures and provided capsule summaries describing each witness' knowledge that align

with Defendant's stated purpose for eliciting that witness' testimony at trial. For example,

Plaintiffs averred that Chief Inspector Christopher Flacco "has knowledge relating to the

allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and

Defendants' policies and procedures." Id. at p. 4, ¶ 37. As stated in its pretrial memo, Defendant

will call Chief Flacco to "testify about the Police Department's Internal Affairs Bureau and its

EEO Investigatory Unit, including best practices, policies, procedures, protocols, and the decision-

making process involved in the conclusions reached in EEO #19-0010, the complaint filed by Ms.

Allen and Ms. McCowan." ECF No. 203.

Much like in <u>Holley</u>, Plaintiffs' decision not to depose Chief Flacco, Captain Deacon, Lieutenant Williams, or Inspector Gillespie was their own decision to make, and not the result of any prejudice occasioned by Defendant.

Chief Inspector Christopher Flacco, Captain Matthew Deacon, Lieutenant Ezekiel Williams, and Inspector Michael Gillespie should be permitted to testify.

## III. REPLY TO PLAINTIFFS' OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS

<u>Instruction 26 – Punitive Damages</u>

After Plaintiffs dismissed Richard Ross, Jr., Curtis Younger, Christine Coulter, and Michael McCarrick, the City of Philadelphia is the sole remaining defendant in this action. Punitive damages are not available against municipal defendants for Section 1983 claims. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981). Punitive damages are unavailable against a municipal defendant under Title VII. 42 U.S.C. § 1981a(b)(1). Additionally, punitive damages are unavailable against a municipality for claims brought under Pennsylvania law, including Plaintiffs' PHRA and PFPO claims. <u>Richardson v. Solic. Montgomery Cty.</u>, PA, 2022 WL 990895, at *7 (E.D. Pa. Apr. 1, 2022) (citing to <u>City of Phila. Office of Housing Cmty. Dev. v. Am. Fed. of State Cnty. and Mun. Emps.</u>, 876 A.2d 375, 378 (Pa. 2005)). <u>See also</u> <u>Tudor v.</u>

TBGHealth, Inc., 2022 WL 1004874, at *4 n. 5 (M.D. Pa. Apr. 4, 2022) (punitive damages unavailable under the PHRA).

Respectfully submitted,

/s/ Daniel R. Unterburger
DANIEL R. UNTERBURGER
Assistant City Solicitor
ELIZABETH OKAKPU
Assistant City Solicitor
NICOLE S. MORRIS
Chief Deputy City Solicitor
Labor and Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
215.683.5080
Dated: April 21, 2022          daniel.unterburger@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUDRA McCOWAN, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-3326-KSM |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date listed below the foregoing Supplement to Defendant's Pretrial Memorandum was filed electronically and made available for download and viewing.

Respectfully submitted,

**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**

/s/ Daniel R. Unterburger
DANIEL R. UNTERBURGER
Dated: April 21, 2022      Assistant City Solicitor

# EXHIBIT A

**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiffs Audra McCowan and Jennifer Allen*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AUDRA McCOWAN *and* JENNIFER ALLEN, | |
| Plaintiffs, | Civil Action No. 19-cv-3326-KSM |
| v. | **PLAINTIFFS' INITIAL DISCLOSURES FED. R. CIV. P. 26(a)** |
| CITY OF PHILADELPHIA, *et al.*, | |
| Defendants. | |

## I.  INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

1.  **Audra McCowan** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint and Defendants' defenses. Ms. McCowan may only be contacted through counsel.
2.  **Jennifer Allen** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint and Defendants' defenses. Ms. Allen may only be contacted through counsel.
3.  **Keith Brown** is Ms. McCowan's husband and has knowledge related to the allegations contained in Plaintiffs' Verified Amended Complaint. He also has knowledge of Ms. McCowan's damages. Mr. Brown may only be contacted through counsel.
4.  **Edward Allen** is Ms. Allen's husband and has knowledge related to the allegations contained in Plaintiffs' Verified Amended Complaint. He also has knowledge of Ms. Allen's damages. Mr. Allen may only be contacted through counsel.
5.  **Commissioner Richard Ross Jr.** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.
6.  **Deputy Commissioner Christine Coulter** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

1

7. **Chief Inspector Daniel MacDonald** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

8. **Inspector Michael McCarrick** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

9. **Lieutenant Timothy McHugh** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

10. **Sergeant Brent Conway** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

11. **Sergeant Eric Williford** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

12. **Sergeant Kevin O'Brien** likely has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

13. **Sergeant Tamika Allen** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

14. **Sergeant Herbert Gibbons** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

15. **Officer Curtis Younger** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint and Defendants' defenses.

16. **Mayor James Francis Kenney** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint—including Plaintiffs' Monell claims—as well as Defendants' defenses and Defendants' policies and procedures. On August 20, 2019, because of Plaintiffs' complaints, Mayor Kenney announced the resignation of his police commissioner, Defendant Ross, calling himself "disappointed." "New allegations of sexual harassment as well as gender and racial discrimination among the rank and file have recently been brought to my attention," Kenney added. He also said, "I do not believe the Police Department has taken the necessary actions to address the underlying cultural issues that too often negatively impact women—especially women of color." Mayor Kenney's spokesperson, Deana Gamble, said in a statement "Commissioner Ross was aware of [Plaintiffs'] alleged harassment," adding: "Commissioner Ross failed to act adequately after learning about the alleged harassment."

17. **Commissioner Danielle Outlaw** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint—including Plaintiffs' Monell claims—as well as Defendants' defenses and Defendants' policies and procedures. Commissioner Outlaw replaced Defendant Ross who oversaw and took part in the discrimination that Plaintiffs suffered.

18. **City Controller Rebecca Rhynhart** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint—including Plaintiffs' Monell claims—as well as Defendants' defenses and Defendants' policies and procedures. A 2018 audit of Defendant

City of Philadelphia's implementation of its sexual misconduct policies conducted by Ms. Rhynhart concluded that Defendant has "a broken system for reporting, investigating and resolving sexual misconduct complaints," Rhynhart said.

19. **Sergeant Bradford Williams** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, including knowledge of having personally groped Ms. Allen twice in 2012 while on duty. He also supervised her during a portion of the relevant time period.

20. **Officer William Giulian** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, including knowledge of Plaintiff Allen having been groped by Sergeant Williams.

21. **Officer Patrick Fisher** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, including knowledge of having sexually harassed Ms. McCowan in 2015 while on duty.

22. **Lieutenant Karyn Baldini** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, including knowledge of Ms. McCowan having been sexually harassed by Officer Fisher.

23. **Officer James Williams** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, including knowledge of having personally groped Ms. Allen in 2016 while on duty.

24. **Officer Tonetta Dawson** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

25. **Officer Julius Caesar** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

26. **Ta'Nea Jones** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

27. **Officer Shawn Hagan** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

28. **Renee Collier** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

29. **Kevin Thomas** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

30. **John Grasso** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

31. **Officer John Burnett** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

32. **Detective Robert Richardson** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

33. **Officer James Rozier** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

34. **Officer Julius Caesar** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

35. **Officer Lillian Figueroa** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

36. **Officer David Swisher** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

37. **Chief Inspector Christopher Flacco** has knowledge relating to the allegations contained in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

38. **Officer Edweena Ferguson** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

39. **Corporal Christina Linder** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

40. **Officer Victoria Ayers** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

41. **Lieutenant Gonzalez** (first name unknown) has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

42. **Officer Nathan Ramos** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

43. **Timothy Strange, Esquire** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

44. **Corporal Weena Beard** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

45. **Lieutenant Gregory Watkins** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

46. **Captain Matthew Deacon** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

47. **Inspector Michael Gillespie** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

48. **Lieutenant Ezekiel Williams** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

49. **Corporal "Lou" (last name unknown)** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

50. **Melissa Lumpkin** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

51. **Corporal Smith** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

52. **Sergeant Ryan Laskowski** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

53. **Officer Janean Brown** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

54. **Sergeant Sharon Jann** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

55. **Maria Carey**, a civilian worker in Deputy Commissioner Coulter's office in Police Headquarters, has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

56. **Molly O'Neil** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

57. **John McGrody** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

58. **First Deputy Commissioner Myron Patterson** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

59. **Staff Inspector Bailey Davis** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

60. **Heather McCaffrey** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

61. **Patricia Sullivan** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

62. **Dinon Wong**, a certified nurse practitioner at Employee Medical Services, has knowledge relating to Plaintiff Allen's medical treatment and damages.

63. **Officer Ezequiel Cortes** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

64. **Officer Ronald Sneed** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

65. **Officer Brian Ho** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

66. **Officer Charlene Hailey** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

67. **Lieutenant James Muller** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

68. **Officer Haydee Mendez** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

69. **Officer Cassandra Haskins** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

70. **Sergeant Herbert Gibbons** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint, Defendants' defenses and Defendants' policies and procedures.

71. **Officer John Whipple** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

72. **Officer MaryAnn Darden** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

73. **Mary Bibbo** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

74. **Officer Janelle Newsome** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

75. **Officer Tanya Newsome Richardson** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

76. **Officer Tamara Martin** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

77. **Captain Laverne Vann** has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

78. **Lieutenant Joseph Waters** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

79. **Captain Robert Heinzeroth** has knowledge relating to incidents he witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

80. **Kimberly Robb**, a civilian worker in the Safety Office, has knowledge relating to incidents she witnessed while working with Plaintiffs that are described in detail in Plaintiffs' Verified Amended Complaint.

81. **Catherine F. Clarke, M.D., 300 E. Lancaster Avenue, Wynnewood, PA 19096, Suite 100, (610) 649-3456** has knowledge relating to Plaintiff McCowan's medical treatment and damages.

82. **Ralph M. Kaufman, M.D., 107 Rutgers Avenue, Swarthmore, PA 19081, (610) 544-3088** has knowledge relating to Plaintiff McCowan's medical treatment and damages.

83. **P. Lynn Caesar, Ph.D., 212 Williamsburg Road, Ardmore, PA 19003, (610) 809-1079** has knowledge relating to Plaintiff McCowan's medical treatment and damages.

84. **Pamela Brown, Psy.D., 1518 Walnut Street, Suite 601, Philadelphia, PA 19102, (215) 985-1213** has knowledge relating to Plaintiff McCowan's medical treatment and damages.

85. **Lauren Kossler, M.Ed, LPC, 318 W. Baltimore Avenue, 3rd Floor, Media, PA 19063, (610) 557-1657** has knowledge relating to Plaintiff McCowan's medical treatment and damages.

86. **Lauren Gutierrez, CRNP, 510 East Baltimore Pike, Media, PA 19063, (610) 566-3218** has knowledge relating to Plaintiff McCowan's medical treatment and damages.

87. **Richard S. Mandel, DO, 2981 Grant Avenue, Philadelphia, PA 19114, (215) 632-4550** has knowledge relating to Plaintiff Allen's medical treatment and damages.

88. **Cassandra Colosimo, PA-C, 2981 Grant Avenue, Philadelphia, PA 19114, (215) 632-4550** has knowledge relating to Plaintiff Allen's medical treatment and damages.

89. **Stephanie Koszarek, ATR-BC, LPC, 200 Jenkintown Commons, Jenkintown, PA 19046, (215) 885-3337** has knowledge relating to Plaintiff Allen's medical treatment and damages.

90. **George T. Hayes, M.D., 1901 Fairmount Avenue, Philadelphia, PA 19130** has knowledge relating to Plaintiff Allen's medical treatment and damages.

## II.    <u>DOCUMENTS PLAINTIFFS MAY USE TO SUPPORT THEIR CLAIMS</u>

1. Verified Amended Complaint, Audra McCowan and Jennifer Allen v. City of Philadelphia, et al. (McCOWAN 0001-0104);
2. Sexual harassment complaint dated 08/17/15 (McCOWAN 0105-0108);
3. Sexual harassment complaint dated 01/30/19 (McCOWAN 0109-0110);
4. Memos dated 03/06/19, 4/29/19 (two), and 05/06/19 detailing ongoing retaliation (McCOWAN 0111-0126);
5. Primary care records from Catherine F. Clarke, M.D. (McCOWAN 0127-0253);
6. Psychiatry records from Ralph M. Kaufman, M.D. (McCOWAN 0254-0260);
7. Psychology records from P. Lynn Caesar, Ph.D. (McCOWAN 0261);
8. Psychology records from Pamela Brown, Psy.D. (McCOWAN 0262);
9. Urgent care records from RediClinic (McCOWAN 0263-0264);
10. Urgent care records from American Family Care (McCOWAN 0265);
11. ER records from Riddle Hospital (McCOWAN 0266-0271);
12. FMLA forms and medical certification (McCOWAN 0272-0275);
13. Plaintiff's handwritten list of medications (McCOWAN 0276);
14. Plaintiff's handwritten list of medical providers (McCOWAN 0277);
15. Plaintiff's handwritten journal notes (McCOWAN 0278-0348);
16. Plaintiff's resignation letter dated 10/02/2019 (McCOWAN 0349);
17. Verified Amended Complaint, Audra McCowan and Jennifer Allen v. City of Philadelphia, et al. (ALLEN 0001-0104);
18. Sexual harassment complaint dated 01/30/19 (ALLEN 0105-0106);
19. Sick Without Pay Warnings (ALLEN 0107-0110);
20. Restricted Duty Paperwork (ALLEN 0111-0114);
21. Primary care records from Ashton Family Medicine & Wellness Center (ALLEN 0117-0252);
22. Psychotherapist records from SRI Psychological Services, P.C. (ALLEN 0253-0259);
23. Disciplinary form dated 03/27/19 and witness text message (ALLEN 0260-0262);
24. Plaintiff's typewritten journal notes (ALLEN 0263-0283).

## III.    <u>COMPUTATION OF DAMAGES</u>

Plaintiffs seek injunctive and declaratory relief, actual damages, compensatory damages, punitive damages, liquidated damages, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of their rights.

1. **Audra McCowan**

Ms. McCowan's medical records indicate that beginning in January 2019 she began to exhibit significant anxiety-related symptoms and emotional distress related to her work environment. A note dated January 31, 2019 indicates "work-related stressor, headache and anxiety, severity began three weeks ago aggravating factors include severe work-related stress due to sexual gender-based harassment." Throughout several notes, Ms. McCowan's level of distress is occasionally be described as "less emotional" or "less distressed", but a great majority of the other notes indicate significant emotional distress during her medical visits. Several records state that Ms. McCowan went to Riddle emergency department due to severe back pain for which she

was treated and released. In March of 2019, she was prescribed Effexor (an antidepressant medication).

A March 26, 2019 note indicates that, during a follow-up and flu shot appointment, Ms. McCowan reported "increased stress due to changes in her job hours and place of service." Ms. McCowan also indicated continued stress-eating and weight gain. On April 24, 2019, she reported experiencing a panic attack, and stated that the episode had not resolved entirely. She was reported to be "emotional" and diagnosed with panic (primary), anxiety and unspecified chest pain. The note continues to state, "refill of Effexor, continue with therapy, continue with strategies to safely leave work or leave and find another place to work."

A subsequent note indicates that Ms. McCowan's "psychiatrist is weaning down the medications" and that she appeared "again emotional" during this appointment. She was diagnosed with intractable chronic migraines, anxiety, panic and stress. This note also states, "Patient continues to be very anxious and upset going to work. The desk she is assigned is isolated and she is required to do no work. This is causing marked anxiety."

A June 27, 2019 note indicates Ms. McCowan was experiencing neck pain, was not sleeping, and was "at the end of her rope." It is further stated that the "psychiatrist is weaning her off of Effexor and now lorazepam." Ms. McCowan was described as "again emotional" and it is noted that her husband accompanied her to her appointment. The doctor's assessment indicates "panic (primary), stress, anxiety, acute intractable tension type headache, neck pain." The note also says Ms. McCowan was seeing Dr. Kaufman every two weeks and "FMLA until August 1st."

A July 31, 2019 note indicates "Federal lawsuit re job conditions, socially isolated if she returns to work. Panic attack when considering going back to work. Psychiatrist managing meds. On no meds, took Lorazepam 2x since last visit." The treatment section of this note states "Panic - patient unable to perform the high level required for adequate job performance as a police officer due to stress."

The FMLA certification completed by Dr. Clark on June 27, 2019 states, "Patient unable to perform [illegible] to judgements, agitation, anxiety . . . Patient with ongoing anxiety and agitation, job is stressful, poor work environment and using medication. Advised counseling." This certification states Ms. McCowan was unable to work until July 31, 2019 and "Patient unable to fulfill the job requirements. She is too anxious and worried to use the ongoing good judgment required of a police officer."

Dr. Kaufman, who has been providing individual psychotherapy to Ms. McCowan, states she consistently presents with moderate to severe symptoms of anxiety, including panic, and moderate symptoms of depression. Her symptoms also include sleep disturbance, lack of concentration, avoidance of scenarios and bad dreams. Dr. Kaufman also states that symptoms of post-traumatic stress disorder have been present throughout the course of Ms. McCowan's treatment and are primarily related to her experiences at the Philadelphia Police Department. A prior sexual assault event was described as largely repressed, but Dr. Kaufman states they have processed this in therapy.

A review of Dr. Kaufman's records beginning on May 14, 2019 indicate Ms. McCowan related information and symptoms to Dr. Kaufman consistent with her reports to other medical providers. Dr. Kaufman describes her as often tearful with psychomotor agitation. Her mood and affect are described as sad and anxious, and her thought process at times is scattered but can be redirected. Ms. McCowan's energy is described as low and she reports sleep disturbance. She has been eating more and has gained weight. Session notes indicate recurring bad memories, feeling singled out, marginalized and very self-conscious. It is noted that she will frequently blame herself and feels discouraged. She discussed feeling separated from others at work, experiencing a very negative environment, and talked about how her family focuses on her and her work problems which makes her feel uncomfortable. She discussed learning that the commissioner had been getting in the way of redressing her complaints and she felt as though this is in retribution for her breaking off their 2-year affair. She also found the situation at work to be causing the resurgence of prior negative experiences related to an abusive relationship with her boyfriend.

Ms. McCowan consistently discussed her stress and anxiety regarding her work environment as well as the negative consequences both globally and on the relationship with her husband. Dr. Kaufman states Ms. McCowan continues to engage in therapy, remains motivated and that her next appointment has been scheduled.

Lauren Kossler, LPC is a licensed therapist who saw Ms. McCowan for three sessions on April 9, 2019, April 25, 2019 and May 9, 2019. Ms. McCowan was referred through her Employee Assistance Program. She presented with stress, anxiety and feeling overwhelmed. Ms. Kossler states the precipitating factors included numerous shift changes, shifts in her role at work, being promoted and experiencing negative responses from fellow officers. Ms. Kossler notes that Ms. McCowan was trying to cope with sexism and being excluded by males. Ms. McCowan also reported feeling extremely undermined at work.

Ms. Kossler states in March or April of 2019 Ms. McCowan was removed from the role she had been previously engaging in at work and put in a cold server room. Ms. McCowan reported suffering a panic attack and felt as though the department was punishing her for reporting inappropriate behaviors. Ms. Kossler encouraged Ms. McCowan to take medical leave as her emotional trauma was significantly affecting her level of functioning with her family and at work. During that time, focus of therapy was symptom management and Ms. Kossler indicates that Ms. McCowan's symptoms of anxiety were severe enough to warrant medical leave. These symptoms include chest pain, frequent crying, panic, being extremely anxious, sad, worried, and riddled with anxiety. Ms. Kossler states Ms. McCowan provided specific negative situations that had been occurring at work, which Ms. Kessler felt Ms. McCowan did not deserve to endure. Ms. Kossler further states that in the few sessions she saw Ms. McCowan, she assessed Plaintiff's symptoms to be acute. Ms. Kossler states she believes Ms. McCowan was suffering from significant adjustment disorder with anxiety and indicates there was no report of prior symptoms, no pre-existing diagnosis and that Ms. McCowan had previously been very high-functioning and healthy. Ms. Kossler indicates Audra was extremely fearful of negative consequences that could result from her decision to come forward.

Dr. Lynn Caesar saw Ms. McCowan for only one session on February 24, 2019. Nevertheless, Dr. Caesar took copious notes during this initial session. Dr. Cesar states she did not take Ms. McCowan's insurance and Ms. McCowan was unable to afford the sessions. Dr. Cesar states that during the initial session Ms. McCowan reported being involved with Internal Affairs because an officer slapped her on her butt. Ms. McCowan also talked about situations involving sexual abuse. She reported that in 2004 a sergeant propositioned her to have sex. More recently, Ms. McCowan talked about having emotional breakdowns, being harassed, and being transferred. Ms. McCowan discussed how sexual harassment was an epidemic in the police department. Ms. McCowan discussed an officer named "Younger" who had been making sexually inappropriate remarks, which Ms. McCowan reported to "Sergeant Conway." Ms. McCowan further discussed Officer Younger and other officers having been provided with occupational opportunities that she was not. Ms. McCowan reported to Dr. Caesar that she had made great efforts to not feed into the behavior. Dr. Cesar referenced Ms. McCowan's formal EEO complaint on January 30th and Officer Younger having taken her ring from her finger, which was a breaking point.

Ms. McCowan also reported to Dr. Caesar she attempted to make other complaints, but was warned about being a troublemaker. She reported having been forced to take sick leave. There were consistent reports of similar experiences, that things were getting turned around on her and that her supervisor was berating her. Dr. Cesar noted that Ms. McCowan complained of headaches, anxiety and other stress-related symptoms but that she has a very supportive husband. Ms. McCowan stated to Dr. Cesar that she was "staying strong" and jokingly proclaimed "I won't get fat over this." Clinically speaking, Dr. Cesar found Ms. McCowan to be extremely tearful with some flat affect. There were times that she was brought to anger and discussed feelings of being outraged and very upset. Dr. Cesar states Ms. McCowan was distraught and appeared to have worked hard to move up the ranks. She described Ms. McCowan as being speechless at times due to her level of emotional distress. Dr. Cesar states she found Ms. McCowan to be genuine in her claims and presentation, and states she believes it would have been "too hurtful to draw this type of attention to herself causing alienation and becoming a pariah of sorts if the allegations were not true."

Dr. Cesar Ms. McCowan was experiencing sleep disturbance, disruption in family life, difficulty concentrating, feeling as though the situation was taking over her life, decreased energy, somatic complaints and severe anxiety. Ms. McCowan reportedly demonstrated a vast array of emotions all of which appeared genuine and appropriate to context and content of discussion.

Pamela Brown, Psy.D. is a psychologist who saw Ms. McCowan on one occasion on March 15, 2019 for an initial intake session that was referred through Ms. McCowan's EAP program. Dr. Brown indicates the initial session was broadly focused, with the intent on gathering background history and information. She states Ms. McCowan presented with issues related to her family, the stress of raising teenage children, and particular challenges at work. Dr. Brown states Ms. McCowan's working conditions seemed to be an area that would have been a subject of future focus. Dr. Brown describes Ms. McCowan as an accurate historian, logical and rather easy to interview.

Ms. McCowan's records contain the following medical leave or "return to work" forms completed by her medical providers: out of work note dated 01/29/19 - 02/05/19; absence note

for appointment dated 03/07/19; out of work note dated 03/26/19 - 03/27/19; out of work note dated 04/04/10 - 04/07/19; out of work note dated 04/20/19 - 04/29/19; out of work note dated 05/10/19 - 05/12/19; out of work note dated 06/24/19 - 06/26/19; out of work note dated 06/26/19 - 07/10/19; and FMLA leave 06/26/19-10/02/19.

Ms. McCowan has been receiving individual psychotherapy on a regular basis since March 2019. She has no history of needing psychological services (including counseling, medication management, or need for hospitalization) prior to the recent events unfolding at her job. She has been diagnosed with anxiety and depression and was previously prescribed Effexor 37.5 mgs and Lorazepam .5 mg by her primary doctor.

Ms. McCowan continues to experience significant levels of anxiety and moderate depressive symptoms. Her appetite is getting better but continues to fluctuate and she is more physically active but continues to stress-eat. Her sleep at present is inconsistent with intermittent disturbance including distressing dreams about her previous employment. She continues to avoid social situations and has avoided or cut off relationships with people and friends at the Philadelphia Police Department despite any interpersonal conflict that would have warranted this. Her avoidance is largely due to a desire to avoid discussing the current situation, the case or how she is doing. Heightened startle response remains for situations where her name is identifiable to others. Her symptoms are affecting her functioning at her current job where she tends to stay quiet, struggles being friendly with others and avoids casual conversation in order to avoid feeling vulnerable or potentially judged. She continues to have severe difficulty concentrating, paying attention and is frequently forgetful or disorganized. Her co-workers at her new job are aware of her current circumstances but have reportedly been respectful of her and understand the sensitivity of her boundaries. She experiences significant guilt about being guarded with her new coworkers and desires the ability to form new relationships but is currently unable to. The same fears and behavioral maladaptive responses exist in other contexts such as interacting with her son's coach and other parents. Her stress and anxiety are further exacerbated by severe financial strain.

In support of Ms. McCowan's claim for past and future emotional distress damages, Plaintiff will offer expert testimony about the permanent psychological trauma they suffered as a result of Defendants' conduct. In Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 574 (3d Cir. 2002), the Third Circuit affirmed an emotional distress verdict rendered in 2002 of $1.55 million even though there was no expert or medical testimony that the plaintiff suffered from clinically significant depression or anxiety.

Ms. McCowan's emotional damages are estimated to exceed $9,000,000.00.

Ms. McCowan also seeks to recover the value of lost income (back pay and front pay) and fringe benefits (including health insurance, pension and retirement benefits, unused vacation days, life insurance and sick pay) she would have earned had she not been unlawfully terminated by Defendants. At the time of her termination on October 2, 2019, she was earning $85,000.00 per year with full benefits (due to her diligent efforts, she found new employment earning approximately $28,000.00 per year). Her overtime rate was approximately $57.00 per hour. The estimated value of Ms. McCowan's fringe benefits is approximately $27,000.00 per year. At age

36, Ms. McCowan could reasonably be expected to have worked for Defendants for at least another 14 years until retirement age and her salary would have increased according to Defendants' pay scale. Ms. McCowan's back pay damages are approximately $27,000.00. Her front pay damages are estimated to exceed $1,500,000.00.

Ms. McCowan also seeks to recover attorneys' fees and costs, which currently exceed $50,000.00 (and continue to accrue) and at the time of trial could exceed $250,000.00. Plaintiff's expert witness fees currently equal $3,000.00.

Moreover, the individual defendants who participated in the wrongdoing at issue in this case were high level management employees. Their actions were malicious, willful, outrageous, and conducted with full knowledge of the law. Considering the serial nature of the discrimination at issue, Defendants' utter lack of remorse and the compelling need to deter similar misconduct against victims of modest backgrounds, Ms. McCowan will pursue a claim for punitive damages to punish the individual Defendants, which could exceed $1,500,000.00.

2. **Jennifer Allen**

Ms. Allen's medical records indicate that beginning on February 1, 2019 she was seen by her physician complaining of headaches, chest pain, change in lactation and trouble sleeping. Ms. Allen reported stress at work. She was diagnosed with tension type headaches, gastroesophageal reflux disease and unspecified anxiety disorder, and her doctor recommended yoga and meditation.

A note dated February 28, 2019 indicates Ms. Allen "has work harassment and severe stress." Yoga, meditation and therapy were recommended. It is noted that no medication was prescribed at that time due to the patient breastfeeding. Ms. Allen was advised to drink Ensure or Boost due to weight loss. A note from a follow up visit on March 25, 2019 indicates she was feeling better, focusing on mindfulness and yoga, and had gained two pounds since her last visit. There was no change in diagnosis. Between May and July of 2019 Ms. Allen had gained weight back from previous visits, her energy level seemed better and work environment seemed less stressful, but it was noted she still needs work accommodations.

Cassandra Colosimo, PA is a physician's assistant with Ashton Family Medical Center who has been Ms. Allen's primary care practitioner since August 2, 2019. Ms. Allen first presented with extreme anxiety and depressive symptom and was very tearful to the point of not being able to get her story out. Ms. Allen described difficulties with harassment in her place of work and lack of accommodations for her breastfeeding needs. She reported experiencing emotional breakdowns at work and had a very difficult time coping with the current circumstances. Ms. Colosimo note that Ms. Allen stopped engaging in previous activities, was experiencing sleep disturbance, had a significant decrease in appetite and experienced weight loss. Blood work was ordered to rule out any medical or physiological conditions which may be causing the symptoms. Ms. Allen's bloodwork came back normal.

Ms. Allen was prescribed 20 mg of Prozac and had begun seeing a counselor. Six weeks after being prescribed this medication Ms. Allen reported she found it helpful in conjunction with counseling. Ms. Colosimo states she decided to keep Ms. Allen on the prescribed medication

given the regression of progress previously demonstrated. On December 18, 2019, Ms. Colosimo states she also saw an improvement in Ms. Allen and agreed to discontinue her medication.

Stephanie Koszarek, LPC is a licensed professional clinician who has been providing individual psychotherapy to Ms. Allen since February 25, 2019. Ms. Koszarek had been treating Ms. Allen weekly until recently and is now treating Ms. Allen on a biweekly basis. Upon initiating treatment, Ms. Koszarek notes Ms. Allen presented with depression, severe anxiety and panic. Ms. Koszarek indicates Ms. Allen experienced a difficult pregnancy and childbirth and was currently experiencing severe job-related stress. She described Ms. Allen as having difficulty coping with the anxiety of previous harassment and encountering triggers on a weekly basis at work.

Ms. Koszarek employs cognitive behavioral as well as psychodynamic techniques in helping Ms. Allen gain coping skills and reduce symptomology. Ms. Allen's anxiety is described as severe and has been a consistent focus of therapeutic intervention. The severity of her anxiety diminishes Ms. Allen's capacity to focus on much else other than her current circumstances related to emotional distress.

From a clinical perspective, Ms. Koszarek has notes consistent psychomotor agitation, frequent tearfulness with great effort and attempt to quell or repress, intermittent disturbance in speech such a stuttering, inability to concentrate and focus, rapid heart rate, sleep and appetite disturbance and weight loss.

Initially, Ms. Allen's symptoms caused severe impairment in her daily functioning, including inability to be present emotionally with her family, inability to work and needing to call out of work. Ms. Koszarek states Ms. Allen went on medical leave, which appeared to be helpful in reducing her symptoms. Ms. Koszarek noted an increase in Ms. Allen's stress and anxiety symptoms upon returning to duty, and a fluctuation in severity of symptoms related to experiencing triggers in the workplace. Prominent triggers include Ms. Allen being exposed to people at her job that were involved in or connected to the discrimination. Ms. Koszarek notes a recent incident of panic when Ms. Allen was at the city doctor's office and someone involved in the case entered the room. Ms. Allen reported having had to call a friend to come help her and felt extremely embarrassed about the situation. Ms. Allen reported being fearful to return to law enforcement work on the street.

Ms. Koszarek describes Ms. Allen as emotionally motivated and invested in her therapeutic progress, receptive to therapeutic interpretation and suggested intervention, and making significant attempts to implement recommendations.

Ms. Allen's records contain the following medical leave or "return to work" forms completed by her medical providers: out of work note for 02/12/19 - 02/18/19; out of work note for 02/28/19 - 03/28/10 for anxiety; restricted duty 03/28/2019; out of work note for 05/13/19 - 05/14/19 – restricted duty; out of work note for 07/30/19 - 08/02/19 – restricted duty; restricted duty 08/28/19; out of work note for 07/30/19 - 08/29/19 diagnosis – anxiety; restricted duty 09/27/19 - 12/27/19.

Ms. Allen has been receiving individual psychotherapy since February 2019. She was initially being seen on a weekly basis; but now on a bi-weekly basis. She has no history of needing or receiving any psychological services including counseling, medication management, or need for hospitalization prior to 2019. She was diagnosed with anxiety in early 2019, with no prior mental health diagnoses. While it was initially recommended that Ms. Allen be placed on an antidepressant, she was breastfeeding at the time and therefore did not want to take medication. When she was no longer breastfeeding, she decided to follow the recommendations of her doctor who prescribed Prozac. Counseling services and medication management have been tremendously helpful to Ms. Allen. Recently, her doctor took her off Prozac and prescribed a different anti-anxiety medication, Buspirone.

Ms. Allen continues to experience significant symptoms of stress or trauma-related anxiety, depression, panic and PTSD—evidenced by recurrent, involuntary, and intrusive distressing memories of the traumatic events; intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic events; marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic events; avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic events; avoidance of or efforts to avoid external reminders (people, places, conversations, activities, objects, situations) that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic events; persistent and exaggerated negative beliefs or expectations about oneself, others, or the world (such as the inability to trust others); persistent negative emotional state, markedly diminished interest or participation in significant activities; feelings of detachment or estrangement from others; persistent inability to experience positive emotions; problems with concentration; sleep disturbance causing clinically significant distress or impairment in social, occupational, or other important areas of functioning. Ms. Allen's symptoms exceed the criteria for generalized anxiety disorder and adjustment disorder with mixed mood.

Ms. Allen's experiences of Defendants' actions or omissions further caused her to develop real and warranted fears regarding her safety as a law enforcement officer. A central and basic tenant of this profession entails a sense of security that lies in the camaraderie and faith that fellow officers will protect their own.

Ms. Allen's family has been negatively impacted by her symptoms and she was denied the enjoyment and right to provide for the essential needs of her infant son. Ms. Allen's symptoms have been severe and pervasive and will continue into the foreseeable future so long as she remains employed, and likely far beyond her employment with the Philadelphia Police Department if she chooses to leave. Her desire and contemplation to disengage from this employment in order to find relief is met with severe internal conflict as doing so would cause a drastic decrease in salary. Furthermore, her fears that similar experiences and lack of physical safety may follow her to any subsequent law enforcement position are not unwarranted and represent drastic reduction to future career opportunities.

In support of Ms. Allen's claim for past and future emotional distress damages, Plaintiff will offer expert testimony about the permanent psychological trauma they suffered as a result of Defendants' conduct. In <u>Gagliardo v. Connaught Laboratories, Inc.</u>, 311 F.3d 565, 574 (3d Cir.

2002), the Third Circuit affirmed an emotional distress verdict rendered in 2002 of $1.55 million even though there was no expert or medical testimony that the plaintiff suffered from clinically significant depression or anxiety.

Ms. Allen's emotional damages are estimated to exceed $9,000,000.00.

Ms. Allen also seeks to recover the value of lost income (back pay and front pay) and fringe benefits (including health insurance, pension and retirement benefits, unused vacation days, life insurance and sick pay) she would have earned had she not been unlawfully terminated by Defendants. In March 2019, Ms. Allen was placed on Restricted Duty and therefore was unable to earn the same overtime pay she had earned in previous years of approximately $5,000.00 per year. She has also been forced to use all of her sick and vacation time to obtain medical treatment as a result of Defendants' conduct. Ms. Allen earns approximately $77,000.00 per year with full benefits valued at approximately $25,000.00 per year. At age 39, Ms. Allen could reasonably be expected to work for Defendants for at least another 11 years until retirement age with an annual increase in salary according to Defendants' pay scale. However, if Ms. Allen is forced to resign, her economic damages could exceed $1,000,000.00.

Ms. Allen also seeks to recover attorneys' fees and costs, which currently exceed $50,000.00 (and continue to accrue) and at the time of trial could exceed $250,000.00. Plaintiff's expert witness fees currently equal $3,000.00.

Moreover, the individual defendants who participated in the wrongdoing at issue in this case were high level management employees. Their actions were malicious, willful, outrageous, and conducted with full knowledge of the law. Considering the serial nature of the discrimination at issue, Defendants' utter lack of remorse and the compelling need to deter similar misconduct against victims of modest backgrounds, Ms. Allen will pursue a claim for punitive damages to punish the individual Defendants, which could exceed $1,500,000.00.

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiffs*

Dated: April 16, 2020