IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA McCOWAN**, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 19-3326-KSM |
| **CITY OF PHILADELPHIA**, et al. | : |
| Defendant. | : |

### DEFENDANT'S TRIAL BRIEF

Pursuant to the Court's March 10, 2022 Order, Defendant the City of Philadelphia submits the following Trial Brief addressing issues to be resolved before this matter is submitted to a jury:

**I.    THE TESTIMONY OF CONTROLLER REBECCA RHYNHART SHOULD BE PRECLUDED**

Plaintiffs intend to introduce the testimony of City of Philadelphia Controller Rebecca Rhynhart, along with a 2018 audit conducted by the Controller's Office. Controller Rhynhart's testimony should be precluded.

The Controller's Office conducted an audit of complaints of sexual harassment submitted to the City of Philadelphia during the period from July 2012 until April 2018. Rhynhart Dep., 8/3/20, 14:22-24. Plaintiffs' made complaints of sexual harassment on January 31, 2019. Rhynhart Dep., 8/3/20, 97:19-23. The Controller's Office examined the City of Philadelphia's Sexual Harassment Prevention Policy, not the Police Department's Equal Employment Opportunity directive, Directive 8.7. Controller Rhynhart testified that she had no knowledge whatsoever about Police Department Directive 8.7, which provides Police Department-specific procedures and guidance for preventing, reporting, investigating, and remedying sexual harassment. Rhynhart Dep., 8/3/20, 96:3-14.

When questioned about the Police Department during her deposition, Controller Rhynhart stated that any Police Department-specific inquiry was "outside the audit." Rhynhart Dep., 8/3/20, 46:11-24. Controller Rhynhart stated unequivocally that she could not draw any conclusions specific to the Police Department. Rhynhart Dep., 8/3/20, 48:4-21. Controller Rhynhart testified that any conclusions she might be able to draw about the Police Department would be speculative at best. Rhynhart Dep., 8/3/20, 50:6-16. Controller Rhynhart repeatedly testified that she had no knowledge specific to the Police Department and had "no specific knowledge about the quality of the investigations done within the department, Police Department." Rhynhart Dep., 8/3/20, 50:18-51:7. Further, Controller Rhynhart has not reviewed or seen the complaints made by Plaintiffs. Rhynhart Dep., 8/3/20, 78:6-10.

Controller Rhynhart openly admitted that she has only a general understanding of sexual harassment prevention policies – including the City of Philadelphia's policy – and is "not an expert." Rhynhart Dep., 8/3/20, 81:6-14, 82:4-8. In fact, when asked specifically about Plaintiffs' complaints of sexual harassment, Controller Rhynhart explained her opinions as follows: "I'm answering [your questions about whether Plaintiffs were sexually harassed] as a layperson, right? I'm answering as a person that's going by their – I'm going by my gut from the information that I have. I'm not, again, a lawyer or an expert." Rhynhart Dep., 8/3/20, 85:5-15. Controller Rhynhart repeatedly qualified her personal lay opinions about sexual harassment: "Seems to me it could [constitute sexual harassment]. Again, I'm not an expert in this. I'm just going by what I know." Rhynhart Dep., 8/3/20, 90:20-22. As Controller Rhynhart stated in response to a question about whether "any of the problems [her office] identified in [its] audit are present in this investigation [into Plaintiffs' complaints,]" Controller Rhynhart stated: "My audit didn't look at all the departments' investigations and quality of investigations across all departments." Rhynhart Dep.,

8/3/20, 92:20-93:3. Critically, Controller Rhynhart could not identify specific issues with the investigation into Plaintiffs' complaints at all. Rhynhart Dep., 8/3/20, 93:14-19. When prompted, Controller Rhynhart could only offer her personal lay opinion about the Police Department's investigation – an opinion she formulated on the spot during her deposition. Rhynhart Dep., 8/3/20, 97:5-14.

Plaintiffs intend to ask Controller Rhynhart – who admitted to possessing only lay knowledge to the issue of sexual harassment – to usurp the role of the jury and make determinations about the alleged misconduct of Curtis Younger, as well as the Police Department's response to Plaintiffs' allegations. Should Controller Rhynhart testify, she cannot be qualified as an expert witness under Fed. R. Evid. 702 because she has no expertise on the issue of sexual harassment or the issue of sexual harassment policies, per her own repeated admissions. Further, any opinion Controller Rhynhart may purport to offer as a lay witness pursuant to Fed. R. Evid. 701 is not based on any first-hand knowledge or observation. Prior to being confronted with Plaintiffs' complaints in a deposition taken as part of this litigation, Controller Rhynhart had no knowledge of Plaintiffs or their complaints. More concerning, Controller Rhynhart had no knowledge of the Police Department's sexual harassment prevention policies contained in Directive 8.7 and no understanding of how the Police Department investigates allegations of sexual harassment. In addition to lacking any knowledge specific to the Police Department and its policies, Controller Rhynhart's audit did not address the Police Department. As Controller Rhynhart herself testified, any inquiry specific to the Police Department was outside the scope of her office's audit. Rhynhart Dep., 8/3/20, 46:11-24.

As demonstrated throughout her deposition testimony, Controller Rhynhart lacks the ability to assist the jury in any meaningful way, inevitably leading to confusion and prejudice to

Defendant. Controller Rhynhart's testimony would unavoidably consist entirely of speculation, personal opinion based on severely limited second-hand knowledge, and would serve only to waste time and "would merely tell the jury what result to reach." Fed. R. Evid. 704 at Commentary.

## II. PLAINTIFFS SHOULD BE PRECLUDED FROM ADVANCING CONSTRUCTIVE DISCHARGE THEORIES THEY DID NOT PLEAD AND WHICH FAILED TO SURVIVE SUMMARY JUDGMENT

Plaintiffs' constructive discharge theories – unpled, undeveloped, and disposed of on summary judgment – should not be submitted to the jury, whether through testimony, jury instructions, or argument.

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must plainly state the claim and "show the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (internal quotations omitted). The absence of well-pled factual content leaves the Court unable to draw a reasonable inference that the defendant is liable for the misconduct alleged. Id.; Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Plaintiffs cannot pursue constructive discharge claims without having pled such claims or otherwise developed such claims during litigation because doing so deprives the City of adequate and fair notice to defend against the claim. Twombly, 550 U.S. at 555.

Beyond failing to plead constructive discharge claims, Plaintiffs have not established the elements of a constructive discharge claim, which require evidence that an employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996). Plaintiffs' constructive discharge claims further fail because "an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013). Critically, Plaintiffs have not established that they considered any possibility of remaining in their positions after filing this

lawsuit, a necessary course of action to establish a cognizable constructive discharge claim in the Third Circuit. See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161–62 (3d Cir. 1993) ("[A] reasonable employee will . . . explore . . . alternative avenues thoroughly before coming to the conclusion that resignation is the only option."). See also DiFiore v. CSL Behring, 879 F.3d 71, 79 (3d Cir. 2016) ("Importantly, DiFiore did not sufficiently explore alternative solutions or means of improving her situation.").

The only "evidence" Plaintiffs rely upon to support their constructive discharge theories comes exclusively from Plaintiffs' Verified Second Amended Complaint. See Plaintiffs' Statement of Undisputed Material Facts at ¶¶ 410-416 (ECF No. 163) (citing exclusively to Plaintiffs' pleading). As this Court ruled, Plaintiffs cannot proceed as though *pro se*, relying solely on unsupported allegations contained in their pleadings. Op., 3/10/22, at 3-5 (ECF No. 171) and Op., 3/10/22, at 3-5 (ECF No. 173) ("[T]he Court will not convert [either plaintiff's] verified second amended complaint into an affidavit or consider the unsupported allegations within it[.]").

Additionally, Plaintiffs' poorly-developed constructive discharge theories – to the extent they were pled – failed to survive summary judgment. This Court could not have been more clear or more succinct in disposing of McCowan's and Allen's constructive discharge theories:

> [Plaintiffs] also assert[] that [they] were constructively discharged . . . . But [they] do[] not provide any argument on this issue, nor do[ they] cite record evidence or case law that supports [their] assertion. Moreover, the Court notes that the only allegations of constructive discharge contained in the second amended complaint are in relation to [their] FMLA claims.

Op., 3/10/22, at 36 n. 16, 82 (ECF No. 171). See also Op., 3/10/22, at 36 n. 13 (ECF No. 173) (same). This Court proceeded to grant summary judgment in favor of Defendant on each Plaintiffs' FMLA claims, the only claims to which Plaintiffs' constructive discharge theories were even loosely tethered. See ECF No. 171 at 83; ECF No. 173 at 67.

Because Plaintiffs failed to plead, develop, or argue constructive discharge theories and because this Court granted summary judgment in favor of Defendant on the issue of constructive discharge, Plaintiffs should be precluded from advancing constructive discharge theories in testimony, in jury instructions, and in argument.

### III. PLAINTIFFS ARE NOT ENTITLED TO JURY INSTRUCTIONS ON PUNITIVE DAMAGES

After Plaintiffs dismissed Richard Ross, Jr., Curtis Younger, Christine Coulter, and Michael McCarrick as individual defendants, the City of Philadelphia is the sole remaining defendant in this action. See ECF Nos. 208-211 (stipulating dismissal of all claims against Ross, Coulter, McCarrick, and Younger). Accordingly, Plaintiffs cannot recover punitive damages and are not entitled to jury instructions on the issue of punitive damages.

Punitive damages are not available against municipal defendants for the Section 1983 claims brought by Plaintiff McCowan. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Likewise, punitive damages are unavailable against a municipal defendant under Title VII. 42 U.S.C. § 1981a(b)(1). Additionally, a plaintiff cannot recover punitive damages against a municipality for claims brought under Pennsylvania law, including PHRA and PFPO claims. Richardson v. Solic. Montgomery Cty., PA, 2022 WL 990895, at *7 (E.D. Pa. Apr. 1, 2022) (citing to City of Phila. Office of Housing Cmty. Dev. v. Am. Fed. of State Cnty. and Mun. Emps., 876 A.2d 375, 378 (Pa. 2005)). See also Tudor v. TBGHealth, Inc., 2022 WL 1004874, at *4 n. 5 (M.D. Pa. Apr. 4, 2022) (punitive damages unavailable under the PHRA).

Because the sole remaining defendant – the City of Philadelphia – is a municipal entity against which punitive damages cannot be recovered, Plaintiffs are not entitled to jury instructions on the issue of punitive damages.

                                                      Respectfully submitted,

                                                     <u>/s/ Daniel R. Unterburger</u>
                                                     DANIEL R. UNTERBURGER
                                                     Assistant City Solicitor
                                                     ELIZABETH OKAKPU
                                                     Assistant City Solicitor
                                                     NICOLE S. MORRIS
                                                     Chief Deputy City Solicitor
                                                     Labor and Employment Unit
                                                     1515 Arch Street, 16th Floor
                                                     Philadelphia, PA 19102
                                                     215.683.5080
Dated: April 28, 2022                          daniel.unterburger@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA McCOWAN**, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 19-3326-KSM |
| **CITY OF PHILADELPHIA, et al.** | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below the foregoing Trial Brief was filed electronically and made available for download and viewing.

          Respectfully submitted,

          **CITY OF PHILADELPHIA**
          **LAW DEPARTMENT**

          /s/ Daniel R. Unterburger
Dated: April 28, 2022      DANIEL R. UNTERBURGER
          Assistant City Solicitor