IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AUDRA MCCOWAN,** et al., | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 19-3326-KSM** |
| **CITY OF PHILADELPHIA**, | |
| Defendant. | |

MEMORANDUM

Marston, J.                                                                                                                July 6, 2022

Plaintiffs Audra McCowan and Jennifer Allen brought claims for gender discrimination, retaliation, and hostile work environment against their former employer, the City of Philadelphia. On May 24, 2022, at the close of trial, a jury found in Plaintiffs' favor on almost all of Plaintiffs' claims, and the Court entered judgment accordingly. (*See* Doc. Nos. 235, 236.) Relevant here are the jury's findings that the City subjected McCowan to a sexually hostile work environment at the hands of Officer Curtis Younger and her supervisors, that the City's actions amounted to intentional sex discrimination in violation of the Fourteenth Amendment, and that this deprivation resulted from an official City policy or custom (the "*Monell* claim"). (Doc. No. 235 at ¶¶ 8, 9.)

At the close of Plaintiffs' case, the City moved for judgment as a matter of law on the *Monell* claim (Morning May 20, 2022 Trial Tr. ("Morning Tr.") at 65:1–9), and it renewed that motion at the close of trial, before the case was sent to the jury (Afternoon May 20, 2022 Trial Tr. ("Afternoon Tr.") at 102:18–103:1) (collectively referred to as the "preliminary motions").

The Court deferred ruling on the preliminary motions and sent the case to the jury. (*See* Morning Tr. at 68:1–3.)

On June 21, 2022, twenty-eight days after judgment was entered, the City filed a renewed motion for judgment as a matter of law, or in the alternative for a new trial or remittitur (the "renewed motion"). (Doc. No. 238.) However, it failed to file a memorandum of law in support of that motion. Instead, the City filed a second motion asking for 30 days to file its supporting memorandum. (Doc. No. 239.) Plaintiffs oppose both the renewed motion and the motion for an extension. (Doc. Nos. 240, 250.) For the reasons discussed below, the City's motions are denied.

## I. MOTION FOR EXTENSION

First, the Court addresses the City's request for a 30-day extension of the deadline for filing a memorandum in support of its renewed motion. (Doc. No. 239.)

Federal Rule of Civil Procedure 6(b) governs requests for extensions of time. Under that Rule, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time," unless the party requests an extension of "the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)," in which case the court "*must not*" grant the extension. Fed. R. Civ. P. 6(b) (emphasis added). Rule 50(b) governs renewed motions for judgment as a matter of law, and Rule 59(b) governs motions for a new trial. Fed. R. Civ. P. 50(b) ("No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."); Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment.").

Because Rule 6(b) precludes an extension of the deadline for filing post-trial motions, the City's request is denied.[1] *See Kull v. Kutztown Univ. of Pa.*, 543 F. App'x 244, 247 (3d Cir. 2013) ("If construed as a request for an extension of time to file a post-trial motion, Kull concedes that the District Court could not grant his motion." (quoting Fed. R. Civ. P. 6(b)(2))).

## II.     MOTION FOR JUDGMENT AS A MATTER OF LAW

That leaves the Court with the City's unsupported renewed motion. (Doc. No. 238.) For the reasons discussed below, the motion is denied for failure to provide argument or authority as required by this Court's local rules. In the alternative, even considering the arguments raised by counsel before and during trial, the motion is denied on the merits.

### A.     *Local Rule 7.1*

Under this Court's local rules, "Every motion not certified as uncontested . . . shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion." E.D. Pa. Local R. 7.1(c). Courts in this District have repeatedly construed this Rule as allowing dismissal of a motion that lacks supporting argument and authority. *See, e.g.*, *LM Gen. Ins. Co. v. LeBrun*, Civil Action No. 19-2144-KSM, 2020 WL 7640927, at *3 (E.D. Pa. Dec. 23, 2020) (Marston, J.) ("The LeBruns' failure to comply with Rule 7.1(c) provides sufficient grounds alone for us to deny their motion."); *Rorrer v. Cleveland Steel Container Corp.*, Civil Action No. 08-671, 2012 WL 138756, at *4 (E.D. Pa. Jan. 18, 2012) (Goldberg, J.) (noting that "Plaintiff's failure to comply with Local Rule 7.1(c) could have justified dismissal of her motion without any further consideration" and collecting cases); *Merk Constr., Inc. v. Jemco, Inc.*, Civil Action No. 09-cv-01636, 2009 WL 10687695, at *1 n.1 (E.D.

---

[1] To the extent the City argues that it timely filed its motion and merely seeks an extension of the deadline for filing a legal memorandum in support of that motion, we decline to allow such an end run around Rule 6(b). For purposes of Rule 6(b), there is no practical difference between a paper labeled "motion" and the memorandum that outlines its legal justification.

Pa. Dec. 9, 2009) (Gardner, J.) ("Plaintiff's Countermotion to Remand was not accompanied by this required brief and therefore does not comply with Local Rule 7.1(c). Accordingly, I deny plaintiff's Countermotion to Remand for failure to comply with Local Rule 7.1(c)."); *Griffin-El v. Beard*, Civil Action No. 06-2719, 2009 WL 678700, at *3 (E.D. Pa. Mar. 16, 2009) (Restrepo, M.J.) ("Courts in this jurisdiction have found that motions and memoranda of law that are not accompanied by citations to legal authority or adequate explanations of the bases for the party's arguments are legally deficient under Local Rule 7.1(c), which can warrant denial of the motion.").

Because the City failed to provide any legal argument or authority in support of its renewed motion, the motion is denied as legally deficient under Rule 7.1(c).[2]

### B. Merits Arguments

In the alternative, the Court denies the renewed motion on the merits. The City seeks judgment in its favor on the *Monell* claim, arguing that: (1) the Court incorrectly admitted into evidence the City Controller's 2018 report auditing the City's sexual harassment policies (the "Audit Report");[3] and (2) there was insufficient evidence to support the jury's finding that

---

[2] The City cannot avoid this result by pointing to its preliminary motions. *See Rose v. Barrett Twp.*, No. 3:09-CV-01561, 2014 WL 2039621, at *6 (M.D. Pa. May 9, 2014) ("Once the Court submits the matter to the jury, the 50(a) motion has effectively been mooted and no further briefing is necessary unless the movant seeks to renew the Motion in accordance with 50(b).").

[3] The City actually argues that "Plaintiffs should have been precluded from introducing the testimony of City Controller Rebecca Rhynhart, the 2018 audit report conducted by her office, Plaintiffs' exhibit 1 [which is a copy of the Audit Report], and any other materials created by the Controller concerning her 2018 audit report." (Doc. No. 238 at p. 2.) In this motion, we consider only the City's argument that the Audit Report should not have been admitted into evidence. To the extent the City's objection goes beyond that limited scope, the City failed to object at any point before the close of trial, and the issue is not properly before us. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172–74 (3d Cir. 1993) ("The district court did not consider the merits of Witco's foreseeability argument because Witco failed to include this point in either its motion for judgment as a matter of law filed at the close of [the plaintiff's] case, or in its renewal of the motion at the close of the evidence. In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion. . . . We therefore find that the district court correctly ruled that Witco waived this argument.").

McCowan's injuries were caused by an official policy or custom. In analyzing the renewed motion, we consider the arguments made by defense counsel before and during trial.

1. **Legal Standards**

    a. **Renewed Motion for Judgment as a Matter of Law**

Renewed motions for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc.*, 4 F.3d at 1166. The court "may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Id*. And "judgment as a matter of law should be granted sparingly . . . ." *Id.*; *see also Rose*, 2014 WL 2039621, at *4 ("[W]e will grant judgment as a matter of law where the record is critically deficient of the minimum quantum of evidence in support of the verdict." (quoting *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004)). After a jury trial, a renewed motion "under Rule 50(b) may be granted only if the movant demonstrates 'that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied by the jury's verdict cannot in law be supported by those findings.'" *Cohen v. Cohen*, C.A. No. 19-1219-MN, 2022 WL 952842, at *2 (D. Del. Mar. 30, 2022) (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998)).

---

Indeed, we question whether the City can object to the Audit Report at this stage given its failure to specifically address that evidentiary concern in its preliminary motions. *See id.*; *Rose*, 2014 WL 2039621, at *3 ("The Court can only address issues raised in a 50(b) Motion which were first raised in the 50(a) Motion. Absent a motion in accordance with Federal Rule of Civil Procedure 50(a), judicial reexamination of the evidence abridges a party's right to a trial by jury." (quotation marks and citations omitted)). Nevertheless, because the City did object to the Audit Report at other stages in the litigation, and for the sake of completeness, we will once again consider its argument that the Audit Report should have been excluded from evidence.

### b.     Motion for a New Trial

"In addition to a motion for judgment as a matter of law, a losing party may also move for a new trial pursuant to Federal Rule of Civil Procedure 59." *Rose*, 2014 WL 2039621, at *4. Our ability to grant a new trial varies with the nature of the alleged error. "[T]he district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, e.g., evidentiary rulings or prejudicial statements made by counsel." *Klein v. Hollings*, 992 F.2d 1285, 1289–90 (3d Cir. 1993) (citations omitted). Where, however, a party seeks a new trial because "it believes the jury's decision is against the weight of the evidence," our discretion is at its lowest. *Id.* at 1290. And we must proceed with caution to ensure we do not substitute our judgment for that of the jury. *See id.* ("[T]he district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand.").

### c.     *Monell* Liability

As mentioned above, the City moves for judgment as a matter of law, or, in the alternative, for a new trial or remittitur, on McCowan's *Monell* claim. She brought that claim under 42 U.S.C. § 1983, alleging that the City subjected her to a hostile work environment in violation of her Fourteenth Amendment rights. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Local governments and municipalities are considered persons under § 1983 and may be sued directly under the Act when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted

6

and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (2018).

"[A] government entity may not be held vicariously liable under § 1983 for the acts of its employees under a *respondeat superior* theory of liability." *Winn & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 459 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 691). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." (quotation marks omitted)).

Therefore, to succeed on her constitutional claim, McCowan had to: (1) put forth evidence of a policy, practice, or custom, (2) attribute it to the City, and (3) show a causal link between execution of the policy and the injury suffered. *Winn & Sons, Inc.*, 162 F. Supp. 3d. at 459 (quotation marks omitted); *accord Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Mulholland*, 706 F.3d at 237 (quotation marks omitted). And a "course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Id.* (quotation marks omitted).

### 2. Discussion

The City seeks judgment as a matter of law on McCowan's *Monell* claim, or in the alternative, a new trial or remitter as to this claim. It argues that the Court erred when it

introduced the Audit Report into evidence and that there was no evidence that McCowan's injuries were caused by a City policy or custom. Because these issues are intertwined, we discuss them together.

Before trial, the City objected to the Audit Report as unfairly prejudicial and irrelevant to McCowan's hostile work environment claim because it analyzed the adequacy of the *City's* sexual harassment policies and procedures and did not consider the *Police Department's* sexual harassment policy, Directive 8.7. The Court overruled that objection. (*See* Doc. No. 218.) We explained that the audit is highly relevant to Plaintiffs' *Monell* claim despite its broad scope:

> Although the report focuses on the City's policies and is not specific to the Police Department, the results have implications for every department at the City, including the Police Department. The Controller's 2018 audit found that one of the major problems with the City's sexual harassment policies and procedures is that the City does not have a centralized procedure for reporting, investigating, and disciplining sexual harassment. Instead, it allows each department to handle these aspects in house. Here, McCowan argues that the Police Department's Equal Employment Office ("EEO") unit failed to adequately investigate her complaint or discipline Officer Younger when the findings against him were sustained, and that this failure is the product of a City policy, procedure, or custom. Rhynhart's findings are highly probative on that issue . . . .

(*Id.* at p. 12.) During trial, the City reiterated its relevancy objection when Plaintiffs moved to enter the Audit Report into evidence. (Morning Tr. at 7:24–25, 12:2–3.) The Court again overruled the objection, finding the report probative to McCowan's *Monell* claim. (*Id.* at 12:4–6.)

A review of the testimony and other evidence admitted at trial shows this ruling was not in error. McCowan's hostile work environment claim was premised in large part on the Police Department's internal investigation of her sexual harassment complaint. Viewing the evidence in the light most favorable to the verdict, the jury could have found that the Department's

8

investigation was biased against McCowan, that investigator Sergeant Brett Conway's interviews of McCowan were hostile and differed from his interviews with Officer Younger and similarly situated male supervisors, and that the Department sustained violations against McCowan in retaliation for her complaints.  The Audit Report—which found that across departments, the City lacks proper policies for investigating complaints of sexual harassment and disciplining employees when those complaints are sustained—ties McCowan's hostile investigation to this larger City custom.

As Controller Rhynhart testified, the Audit Report found that the City's "process for reporting complaints was broken, that investigations were decentralized . . . . The City has about 50 departments, and the majority of the complaints during the audit period were being handled within the departments," just as McCowan's claim was handled within the Police Department. (Morning Tr. 12:15–24 (explaining that this resulted in "a lot of disparity in how different departments handled similar types of sexual harassment claims"); *see also id.* at 15:25–16:10 ("There was a lot—the potential for much variation within how complaints were investigated because they were conducted in 50 separate departments.").)

Rhynhart also testified that one of the audit's "main" recommendations to the City was "to centralize the whole process . . . to make one entity outside of the Department responsible for getting the complaints from all of the Departments, for investigating those complaints, and for recommending discipline when complaints were substantiated." (*Id.* at 17:8–18:3.)  She then reinforced that "there are so many issues with having [the process] decentralized." (*Id.*)  Among other things, "it creates all types of conflict[s] and potential conflict[s]" of interest (*id.* at 17:8–18:24)—a specific concern that Sergeant Conway raised at the beginning of his investigation into McCowan's complaints but that his superiors ignored (May 18, 2022 Trial Tr. at 200:6–201:2).

Last, Rhynhart emphasized that although the "City made some changes around training and a few other things" in response to the Audit Report, to date, it "has not implemented the two main recommendations of this audit," suggesting that decentralized and inconsistent investigations remained a problem when McCowan filed her internal harassment complaint in 2019.

In short, when the Audit Report, Rhynhart's testimony, the Department's investigatory report, and the remainder of the evidence presented at trial are viewed "in the light most favorable to [McCowan]" and given "the advantage of every reasonable inference," *see Smith v. Katz*, 696 F. App'x 582, 590 (3d Cir. 2017), they are not only relevant but support the jury's finding that despite the existence of Directive 8.7, the Police Department is one of the many City departments affected by a City-wide custom of failing to appropriately investigate sexual harassment complaints, *see Rose*, 2014 WL 2039621, at *11 ("An unwritten custom can create liability if the relevant practice is so widespread as to have the force of law." (quotation marks omitted)); *id.* at *15 ("The jury could reasonably disbelieve the officers' explanations and could reasonably find that some or all of the evidence listed above showed a pattern of unconstitutional activity that caused the officers to violate Edward Rose's rights and, ultimately, to cause his death. The Court cannot say that such a determination was unreasonable or wrong as a matter of law. Therefore, the relief sought by the Defendants must be denied and the jury's assignment of *Monell* liability must stand.").

The Court finds that the Audit Report was properly admitted into evidence over the City's relevancy objection, and when it and the remainder of the evidence presented at trial are considered in the light most favorable to the verdict, the jury's verdict on McCowan's *Monell* claim must stand. The City has not shown that it is entitled to judgment as a matter of law or to a new trial.

### III. CONCLUSION

The City's motion for extension and renewed motion for judgment as a matter of law, or in the alternative, for a new trial or remittitur are denied. An appropriate Order follows.